**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

Consumer Financial Protection Bureau,

Plaintiff,

v.

Craig Manseth, Jacob Adamo, Darren Turco, United Debt Holding LLC, JTM Capital Management, LLC, UHG, LLC, UHG I LLC (also known as United Holding Group), and UHG II LLC (collectively holding themselves out as United Holding Group, United Holding Group, LLC, and United Holdings Group, LLC)

Defendants.

Case No. 1:22-cv-00029-LJV

**ORAL ARGUMENT REQUESTED**

**Plaintiff's Opposition to Defendants' Joint Motions to Dismiss**

**Table of Contents**

**Introduction** .......... **8**
Summary of Arguments .......... 8
**Standard of Review** .......... **9**
**Arguments & Authorities** .......... **11**
A. Rule 12(b)(1): The Bureau has standing .......... 11
B. Rule 12(b)(6): The Bureau's allegations establish violations of the CFPA. .......... 16
1. The Bureau adequately pleads that Defendants are covered persons. .......... 16
2. The Amended Complaint states a claim for deception. . .......... 20
3. The Amended Complaint states claims for substantial assistance. . .......... 24
4. The Amended Complaint states CFPA claims against the Individual Defendants .......... 31
a. The Individual Defendants are "covered persons" subject to the CFPA .......... 32
b. The Amended Complaint states deception claims against the Individual Defendants .......... 32
c. The Amended Complaint states substantial assistance claims against the Individual Defendants .......... 34
5. The CFPA does not require prior notice before enforcement of its provisions .......... 35
C. Rule 12(b)(6): The Bureau's allegations establish violations of the FDCPA .......... 37
1. The Bureau adequately alleges that UHG and JTM are "debt collectors" under the FDCPA .......... 37
2. The Amended Complaint states claims for debt-collection violations under the FDCPA .......... 39
D. Under Rule 12(b)(6): The Bureau adequately alleges vicarious liability A .......... 41
1. Vicarious liability is available under the CFPA and the FDCPA .......... 41
2. The Bureau adequately pleads that Defendants are liable for the Debt Collectors' legal violations .......... 46
a. The Bureau alleges that the Debt Collectors acted with apparent authority .......... 47
b. The Bureau alleges that the Debt Collectors acted with actual authority. .......... 49
E. Rule 8: The Amended Complaint complies with Rule 8. .......... 51
F. The Bureau's claims are not time-barred .......... 53
1. The CFPA establishes the statute of limitations for the Bureau's FDCPA and derivative claims. .......... 53
2. Defendants have not established that it is clear from the face of the Amended Complaint that the CFPA claims are time-barred.. .......... 55

# Table of Authorities

## Cases

*800 Cooper Fin., LLC v. Liu*, No. CV 16-736 (JHR/JS), 2022 WL 855647 (D.N.J. Mar. 22, 2022) ........ 39
*839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Tr. Co. for First Franklin Mortg. Loan Tr. 2006-FF3, Mortg. Pass-Through Certificates, Series 2006-FF3*, No. 15-CV-4516, 2018 WL 4259867, at *4 (E.D.N.Y. Sept. 5, 2018) ........ 53
*Allee v. Medrano,* 416 U.S. 802 (1974) ........ 13
*Anderson News, LLC v. American Media, Inc.*, 680 F.3d 162 (2d Cir. 2012) ........ 28
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 10, 29
*Assets Recovery Ctr. Invs., LLC v. Smith*, No. 13 CV 253, 2014 WL 3525011 (E.D.N.Y. Mar. 12, 2014) ........ 16
*Astoria Federal Savings & Loan Assn. v. Solimino,* 501 U.S. 104 (1991) ........ 41
*Barbato v. Greystone All., LLC,* 916 F.3d 260 (3d Cir. 2019) ........ 38, 42
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 10, 52
*Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246 (S.D.N.Y.2011) ........ 42, 47
*Bradley v. Selip & Stylianou, LLP*, No. 17-CV-6224-FPG, 2018 WL 4958964 (W.D.N.Y. Oct. 15, 2018) ........ 42
*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) ........ 41, 44
*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ........ 44
*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) ........ 9
*Cava Const. Co. v. Gealtec Remodeling Corp.,* 58 A.D.3d 660 (2009) ........ 39
*CFPB v. CashCall, Inc.*, No. CV 15-7522, 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016) ........ 36
*CFPB v. Chou Team Realty LLC,* No. 8:20-CV-00043, 2021 WL 4895741 (C.D. Cal. Apr. 27, 2021) ........ 14
*CFPB v. Chou Team Realty LLC*, No. 8:20-cv-00043-SB-ADS, 2021 WL 4077110 (C.D. Cal. Aug. 10, 2021) ........ 56, 58
*CFPB v. Commonwealth Equity Grp., LLC*, 554 F. Supp. 3d 202 (D. Mass. 2021) ........ 30
*CFPB v. D & D Mktg.*, No. CV 15-9692, 2016 WL 8849698 (C.D. Cal. Nov. 17, 2016) ........ 36
*CFPB v. Frederick J. Hanna*, 114 F. Supp. 3d 1342 (N.D. Ga. 2015) ........ 29, 30, 55
*CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) ........ 11, 43
*CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878 (S.D. Ind. 2015) ........ 44, 55
*CFPB v. Nat'l Collegiate Master Student Loan Tr.*, No. 1:17-cv-1323, 2021 WL 5936404 (D. Del. Dec. 13, 2021) ........ 17, 43, 45
*CFPB* v. *Nat'l Collegiate Master Student Loan Tr.*, No. 1:17-CV-1323, 2022 WL 548123 (D. Del. Feb. 11, 2022) ........ 17
*CFPB v. Nat'l Collegiate Master Student Loan Tr.*, No. 17-cv-1323, 2021 WL 1169029 (D. Del. Mar. 26, 2021) ........ 12
*CFPB v. Nationwide Biweekly Admin., Inc.,* No. 15-cv-02106-RS, 2017 WL 3948396 (N.D. Cal. Sept. 8, 2017) ........ 56, 57, 58
*CFPB v. Navient Corp.,* No. 3:17-CV-101, 2017 WL 3380530 (M.D. Pa. Aug. 4, 2017) ..... 29, 30, 36

*CFPB v. NDG Fin. Corp.*, No. 15-cv-5211, 2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016) ...... 15, 32, 43
*CFPB v. Nexus Serv., Inc.*, No. 5:21-cv-00016, 2022 WL 848065 ........ 12
*CFPB v. Ocwen Financial Corp.*, No. 17-80495, 2019 U.S. Dist. LEXIS 152336 (S.D. Fla. Sept. 5, 2019) ........ 54
*CFPB v. Prime Mktg. Holdings, LLC,* 2016 WL 10516097 (C.D. Cal. Nov. 15, 2016) ........ 30
*CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729 (S.D.N.Y. 2018) ........ passim
*CFPB v. RD Legal Funding, LLC*, 828 F. App'x 68 (2d Cir. 2020) ........ 19
*CFPB v. Think Fin., LLC*, No. CV-17-127, 2018 WL 3707911 (D. Mont. Aug. 3, 2018) ........ 29, 30
*CFPB v. Universal Debt & Payment Solutions, LLC*, No. 1:15-CV-0859-RWS, 2019 WL 1295004 (N.D. Ga. Mar. 21, 2019) ........ 25
*CFPB v. Universal Debt & Payment Solutions, LLC,* No. 1:15-CV-00859, 2015 WL 11439178 (N.D. Ga. Sept. 1, 2015) ........ 25, 53
*CFPB v. Weltman, Weinberg & Reis Co.*, LPA, No. 1:17-817 CV 817, 2017 WL 4348916 (N.D. Ohio Sept. 29, 2017) ........ 55, 56
*City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687 (1999) ........ 44
*Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162 (9th Cir.2006) ........ 47
*Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) ........ 11
*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009 (2020) ........ 44
*Curtis v. Loether*, 415 U.S. 189 (1974) ........ 44
*Delonte v. Duncan Sols., Inc.*, 606 F. App'x 839 (7th Cir. 2015) ........ 54
*Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122 (S.D.N.Y. 2018) ........ 10
*Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64 (2d Cir. 2003) ........ 48
*Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ........ 23
*EEOC v. KarenKim, Inc.*, 698 F.3d 92 (2d Cir. 2012) ........ 13
*F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) ........ 36
*Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420 (S.D.N.Y. 2013) ........ 53
*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395 (2d Cir. 2015) ........ 31
*Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994) ........ 42
*Fritz v. Resurgent Cap. Servs., LP*, 955 F. Supp. 2d 163 (E.D.N.Y. 2013) ........ 47
*FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 218 (S.D.N.Y. 2002) ........ 13, 14
*FTC v. Fed. Check Processing, Inc.*, No. 14-CV-122, 2016 WL 5956073 (W.D.N.Y. Apr. 13, 2016) ........ 14
*FTC v. Fed. Check Processing, Inc.*, No. 14-CV-122S, 2016 WL 5940485 (W.D.N.Y. Oct. 13, 2016) ........ 14
*FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502 (S.D.N.Y. 2000) ........ 43, 46, 47, 50
*FTC v. Inc21.com Corp.*, 688 F. Supp. 2d 927 (N.D. Cal. 2010) ........ 43
*FTC v. Med. Billers Network, Inc.,* 543 F. Supp. 2d 283 (S.D.N.Y. 2008) ........ 43, 46, 47
*FTC v. Moses,* 913 F.3d 297 (2d Cir. 2019) ........ 14, 20, 30
*FTC v. Partners In Health Care Ass'n, Inc.*, 189 F. Supp. 3d 1356 (S.D. Fla. 2016) ........ 43
*FTC v. Stefanchik,* 559 F.3d 924 (9th Cir. 2009) ........ 43
*FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461 (S.D.N.Y. 2014) ........ 32
*FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006) ........ 15, 20, 30

*FTC v. Wyndham Worldwide Corporation*, 799 F.3d 236 (3d Cir. 2015) ..... 36
*Gerbasi v. NU Era Towing & Serv., Inc.*, 443 F. Supp. 3d 411 (W.D.N.Y. 2020) ..... 24
*Gervais v. Riddle & Assocs., P.C.*, 479 F. Supp. 2d 270 (D. Conn. 2007) ..... 40
*Ghartey v. St. J'hn's Queens Hosp.*, 869 F.2d 160 (2d Cir. 1989) ..... 53
*Gomez v. Resurgent Cap. Servs., LP*, 129 F. Supp. 3d 147 (S.D.N.Y. 2015) ..... 48
*Goodman v. FTC*, 244 F.2d 584 (9th Cir. 1957) ..... 43, 47
*Hallmark v. Cohen & Slamowitz, LLP,* 293 F.R.D. 410 (W.D.N.Y. 2013) ..... 40
*Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104 (2d Cir. 2018) ..... 10
*Haughton v. Cognisight, LLC*, 953 F. Supp. 2d 478 (W.D.N.Y. 2013) ..... 52
*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) ..... 18
*Hollingsworth v. Perry,* 570 U.S. 693 (2013) ..... 11
*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016) ..... 42, 45
*Khon v. Paul Michael Mktg. Serv., Inc.*, No. CV05-2771(SJF)(MDG), 2006 WL 3065588 (E.D.N.Y. Oct. 27, 2006) ..... 40
*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992) ..... 11
*Lynch v. N.Y.C.*, 952 F.3d 67 (2d Cir. 2020) ..... 28
*Mastafa v. Australian Wheat Bd.* Ltd., No. 07 CIV. 7955, 2008 WL 4378443 (S.D.N.Y. Sept. 25, 2008) ..... 12
*McAdory v. M.N.S. & Assocs., LLC,* 952 F.3d 1089 (9th Cir. 2020) ..... 38
*McCrobie v. Palisades Acquisition XVI, LLC*, No. 115-CV-00018, 2019 WL 4023367 (W.D.N.Y. Aug. 23, 2019) ..... 42
*Melendez v. N.Y.C*, 16 F.4th 992 (2d Cir. 2021) ..... 10
*Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) ..... 58
*Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57 (1986) ..... 41
*Merriam v. Demoulas*, No. CIV.A. 11-10577, 2013 WL 2422789 (D. Mass. June 3, 2013) ..... 12
*Meyer v. Holley*, 537 U.S. 280 (2003) ..... 41, 44, 46
*Mullery v. JTM Cap. Mgmt., LLC*, No. 18-CV-549, 2019 WL 2135484 (W.D.N.Y. May 16, 2019) ..... 38
*Mullery v. JTM Cap. Mgmt., LLC*, No. 18-CV-549, 2018 WL 8332821 (W.D.N.Y. Nov. 30, 2018) ..... 38, 42
*Nichols v. Niagara Credit Recovery, Inc.,* No. 5:12-CV-1068 MAD/TWD, 2013 WL 1899947 (N.D.N.Y. May 7, 2013) ..... 47
*Nnebe v. Daus*, 931 F.3d 66 (2d Cir. 2019) ..... 36
*Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158 (2007) ..... 44
*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ..... 53
*Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22 (2d Cir. 1989) ..... 41
*Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484 (S.D.N.Y. 2014) ..... 42, 46, 47
*Precedo Cap. Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 25 (S.D.N.Y. 2014) ..... 49
*Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-cv-1349, 2016 WL 9504253 (M.D. Fla. May 27, 2016) ..... 54
*Reygadas v. DNF Assocs., LLC*, 982 F.3d 1119 (8th Cir. 2020) ..... 38

*Royal v. Ret. Bd. of the Bert Bell/Pete Rozelle NFL Ret. Plan*, No. 20-4184, 2021 WL 4484925 (2d Cir. Oct. 1, 2021) ........ 53
*S.E.C. v. Wyly*, 788 F. Supp. 2d 92 (S.D.N.Y 2001) ........ 56
*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ........ 25
*Sam v. Midland Credit Mgmt., Inc.*, No. 15-cv-1029, 2021 WL 4771274 (W.D.N.Y. Oct. 13, 2021) ........ 22
*Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145 (2013) ........ 12
*SEC v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012) ........ 25
*SEC v. Yorkville Advisors*, LLC, 305 F.Supp.3d 486 (S.D.N.Y. 2018) ........ 31
*Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) ........ 11
*Standard Distributors v. FTC*, 211 F.2d 7 (2d Cir.1954) ........ 43
*Strine v. Marion Cent. Sch. Dist.*, 280 F. Supp. 2d 75, 80 (W.D.N.Y. 2003) ........ 51
*Sw. Sunsites, Inc. v. FTC*, 785 F.2d 1431 (9th Cir. 1986) ........ 42
*Sweeney v. D.C. Credit Servs., Inc.*, No. 05-CV-702A, 2007 WL 981919 (W.D.N.Y. Mar. 30, 2007) ........ 41
*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239 (2d Cir. 2014) ........ 10
*Toretto v. Donnelley Fin. Sols., Inc.*, 523 F.Supp.3d 464 (S.D.N.Y. 2021) ........ 9, 10
*United States v. Dazey*, 242 F. App'x 563 (10th Cir. 2007) ........ 24
*United States v. Fisk*, 70 U.S. 445 (1865) ........ 19
*United States v. Texas*, 507 U.S. 529 (1993) ........ 41
*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) ........ 14
*Vincent v. The Money Store*, 736 F.3d 88 (2d Cir. 2013) ........ 42

**Statutes**

12 U.S.C. § 5481 ........ passim
12 U.S.C. § 5536 ........ 23, 33, 54
12 U.S.C. § 5536(a) ........ 31
12 U.S.C. § 5564 ........ 52, 54, 57
12 U.S.C. § 5565 ........ 12
15 U.S.C § 78 ........ 24
15 U.S.C. § 1692 ........ 53
15 U.S.C. § 1692 ........ passim
15 U.S.C. § 45(a) ........ 42
15 U.S.C.A. § 1692e ........ 39
42 U.S.C. § 1983 ........ 43
Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1761 (2010) ........ 24

**Other Authorities**

CFPB Bulletin 2013-08, "Representations Regarding Effect of Debt Payments on Credit Reports and Scores,"(Fair Debt Collection Practices Act and the Dodd-Frank Act, July 10, 2013) ........ 22

Restatement (Third) Of Agency § 2.01 (2006) ........ 45, 48

**Regulations**

53 Fed. Reg. 50097 (Dec. 13, 1988) ........ 54

## INTRODUCTION

Defendants are a network of closely-held companies and their individual members who, individually and collectively, purchase defaulted consumer debts and either hire third-party Debt Collectors[1] to collect the debt (in other words, placing debt) or resell debts to third-party Debt Collectors. Defendants habitually placed for collection or resold debts to Debt Collectors who repeatedly engaged in some of the most notorious of unlawful debt-collection practices, including making false threats of arrest and lawsuits and lying about the effect that paying the debt (or not paying the debt) would have on consumers' credit reports. Although Defendants had plenty of evidence that their third-party Debt Collectors were violating the law, they turned a blind eye to this information and continued sending debt to these same collectors. By this misconduct, Defendants violated federal consumer financial laws. The Bureau's Amended Complaint adequately alleges systemic, years-long, unlawful conduct by Defendants.

Defendants have now moved to dismiss the Bureau's First Amended Complaint (Amended Complaint) on a series of invalid grounds. Their Joint Motions to Dismiss (Dkt. Nos. 30 & 31) fail to establish any missing elements in the pleading or any other grounds compelling dismissal of the Bureau's claims. For the reasons set forth below, their motions must be denied.

### Summary of Arguments

- As an Executive-branch law-enforcement agency with a statutory mandate to enforce federal consumer financial laws, the Bureau has clear standing to bring

---

[1] The Consumer Financial Protection Bureau (Bureau) incorporates the definitions included in the Amended Complaint at Dkt. No. 16 into this opposition. "Debt Collectors" refers to the debt-collection companies with which the Corporate Defendants placed debt or to which the Corporate Defendants sold debt and any downstream debt collection companies that subsequently received the debt.

this lawsuit. The Bureau adequately pleads injury to numerous consumers that is fairly traceable to Defendants' conduct, and this injury can be redressed by a favorable decision from this Court.

- The Bureau adequately pleads violations of the Consumer Financial Protection Act (CFPA). The Bureau pleads that all Defendants are "covered persons" under the CFPA and states claims for deception and substantial assistance against UDH, JTM and UHG (the "Corporate Defendants") and Manseth, Turco, and Adamo (the "Individual Defendants"). Defendants also had fair notice.

- The Bureau adequately pleads violations of the Fair Debt Collection Practices Act (FDCPA) by UHG and JTM. The Amended Complaint alleges that these two entities are "debt collectors" under the FDCPA and points to specific provisions of the FDCPA that they violated.

- The Bureau adequately pleads that Defendants are vicariously liable for the CFPA and FDCPA violations of others, a theory that is clearly available under both the CFPA and the FDCPA.

- The Amended Complaint complies with Federal Rule of Civil Procedure 8(a). The Bureau has provided a "short and plain statement" showing "plausible" entitlement to relief. Despite Defendants' arguments to the contrary, the Bureau is not required to provide detailed factual allegations at this stage; nevertheless, the Bureau's Amended Complaint details which Corporate Defendants are responsible for each wrongful activity and describes the roles of each Individual Defendant.

- None of the Bureau's claims are time-barred. Defendants cannot show, on the face of the Amended Complaint, that the statute of limitations has run and dismissal on these grounds is inappropriate.

**STANDARD OF REVIEW**

To survive a motion to dismiss for lack of subject matter jurisdiction, the Bureau need only allege "facts that affirmatively and plausibly suggest that [the Bureau] has standing to sue."[2] The Bureau does not need to conclusively establish standing at this stage; rather, the Bureau must plead enough facts to show that each element of standing

---

[2] *Toretto v. Donnelley Fin. Sols., Inc.*, 523 F.Supp.3d 464, 471(S.D.N.Y. 2021) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)).

is "within the realm of possibility."[3] To survive a motion to dismiss for failure to state a claim, a complaint need only allege facts that "raise a right to relief above the speculative level,"[4] not prove a "probability" of success.[5] When considering any motion to dismiss, district courts are required to "take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the [plaintiff or the] party asserting jurisdiction."[6] The Bureau's Amended Complaint meets these standards.

---

[3] *Harry v. Total Gas & Power N. Am., Inc*., 889 F.3d 104, 111 (2d Cir. 2018) ("We do not think the pleadings make that interconnection plausible, but they do place it within the realm of possibility. For standing purposes, that is enough."); *Toretto,* 523 F.Supp.3d at 472 (quoting *Dennis v. JPMorgan Chase & Co*., 343 F. Supp. 3d 122, 156 (S.D.N.Y. 2018)("[T]he standard for Article III standing is not whether the alleged injury is plausibly fairly traceable, but, rather, whether the injury is possibly fairly traceable.").

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556).

[6] *Tandon v. Captain's Cove Marina of Bridgeport, Inc*., 752 F.3d 239, 243 (2d Cir. 2014); *Melendez v. N.Y.C*, 16 F.4th 992, 1010 (2d Cir. 2021).

## ARGUMENTS & AUTHORITIES

### A. Rule 12(b)(1): The Bureau has standing.[7]

Generally, standing requires that the plaintiff establish "a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision."[8] However, as part of the Executive Branch, charged under Article II of the Constitution to enforce federal law, the first requirement of a concrete and particularized injury does not apply to the Bureau.[9] Defendants contend the legal standard for Executive Branch agencies does not apply to this action because the Bureau's enforcement authority is limited to "covered persons" and Defendants are not "covered persons."[10] Whether or not Defendants are "covered persons" is not a jurisdictional question and even if Defendants did not qualify (they

---

[7] Defendants err in suggesting in a footnote that the Bureau lacks standing because it is somehow not "a valid part of the Executive Branch," (Dkt. No. 30-1 at n.3) apparently relying on the Supreme Court's decision in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020). *Seila* held unconstitutional a statutory provision that purported to protect the Bureau's Director from removal except for cause. Contrary to Defendants' argument, however, the Supreme Court has squarely held that an unconstitutional removal restriction does not deprive an Executive Branch agency of the authority to carry out its statutory responsibilities. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787-88 & n.23 (2021). More to the point, the Bureau filed this action long after *Seila* made clear that the removal provision is without effect and that the Bureau's Director can be removed at will. The removal provision is irrelevant, and the Bureau is authorized to bring this action.

[8] *Hollingsworth v. Perry,* 570 U.S. 693, 704 (2013) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).

[9] *See CFPB v. Gordon*, 819 F.3d 1179, 1188–89 (9th Cir. 2016).

[10] Dkt. No. 30-1 at 3-5, Dkt. No. 31-1 at 4-8.

do), that would not be a valid basis to dismiss the Bureau's claims under Rule 12(b)(1).[11] In any event, the Bureau adequately pleads that each Defendant is a "covered person" as explained in detail below.[12]

Defendants also contend that the Amended Complaint "does not assert a causal connection between [Defendants] and any statutory violations."[13] This contention is plainly belied by the allegations in the Bureau's Amended Complaint. The Bureau pleads an injury that is fairly traceable to Defendants because the Bureau alleges that the injury (e.g. consumers being falsely threatened with litigation, lied to about the effect paying would have on their credit report, and, for Manseth and UDH, falsely threatened with jail) was caused by Defendants' agents who were collecting on Defendants' behalf.[14] The Bureau also alleges, separately, that Defendants aided and abetted (or, in the language of the CFPA, substantially assisted) the violations that caused the injury.[15]

---

[11] *See CFPB v. Nat'l Collegiate Master Student Loan Tr.*, No. 17-cv-1323, 2021 WL 1169029, at *3-4 (D. Del. Mar. 26, 2021) (finding that "covered persons" is not a jurisdictional question); *CFPB v. Nexus Serv., Inc.*, No. 5:21-cv-00016, 2022 WL 848065, at *2 n.1 (declining to consider the defendants' arguments under Rule 12(b)(6) because "Defendants have filed only a 12(b)(1) motion to dismiss for lack of jurisdiction and the court will consider only the motions before it") and *4 (W.D. Va. Mar. 21, 2022) ("Here, plaintiffs bring a claim under a federal statute, the CFPA; therefore, this court has federal question jurisdiction. As in *Holloway*, whether plaintiffs have adequately pleaded all elements of their claim, such as whether defendants are "covered persons" under the CFPA, is not a jurisdictional question."). *See also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013).

[12] *See infra*, 16-20.

[13] Dkt. No. 31-1 at 11-13.

[14] Dkt. No. 16 at ¶¶ 17, 30, 46, 138-168.

[15] Dkt. No. 16 at ¶¶ 102, 105-110, 127-137. *See Mastafa v. Australian Wheat Bd.* Ltd., No. 07 CIV. 7955, 2008 WL 4378443, at *2 (S.D.N.Y. Sept. 25, 2008) (aiding and abetting liability "is sufficient for purposes of Article III"); *Merriam v. Demoulas*, No. CIV.A. 11-

Contrary to Defendants' contentions,[16] the Bureau also alleges that the injury to consumers is likely to be redressed by a decision in the Bureau's favor. As described in detail below, the Bureau is authorized by statute to seek injunctive and monetary relief, including civil money penalties and disgorgement,[17] and the Bureau adequately pleads allegations that support this relief.

First, in support of injunctive relief, the Bureau pleads that UHG, Manseth, Turco, and Adamo are still in the debt-collection business.[18] Although Defendants claim UDH and JTM have ceased operations, that is not what the Bureau pleads in its Amended Complaint. Even if UDH and JTM were to stop operating, the Bureau's request for injunctive relief would not automatically become moot: "[A]n action for an injunction does not become moot merely because the conduct complained of was terminated, if there is a possibility of recurrence, since otherwise the defendants 'would be free to return to' (their) old ways."[19] Here, the Bureau pleads that UDH and JTM were owned by Manseth and Adamo, respectively, and the two companies effectively merged to form UHG and entered into agreements for UHG to manage all of their

---

10577, 2013 WL 2422789, at *4 (D. Mass. June 3, 2013) ("Article III is satisfied because the plaintiff's injury is fairly traceable to acts for which the defendant may be held liable, even if the defendant did not directly cause or commit those acts. In other words, Article III's causation requirement does not eliminate all forms of vicarious liability.").

[16] Dkt. No. 30-1 at 7-11; Dkt. No. 31-1 at 8-10.

[17] 12 U.S.C. § 5565 (a).

[18] Dkt. No. 16 at ¶¶ 42, 49, 63-64, 78-82, 89-93.

[19] *FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 218, 222 (S.D.N.Y. 2002), quoting *Allee v. Medrano,* 416 U.S. 802, 811 (1974); *EEOC v. KarenKim, Inc.*, 698 F.3d 92, 100 (2d Cir. 2012) ("[T]he court's power to grant injunctive relief survives discontinuance of the illegal conduct.").

affairs.[20] The Bureau also alleges that Defendants' Debt Collectors have been violating the CFPA and FDCPA for years with Defendants' knowledge or reckless disregard and that Defendants took affirmative acts to conceal the violations from original creditors.[21] These allegations show a "cognizable danger of recurrent violation[s]" by all Defendants, and that makes injunctive relief proper.[22] It is particularly important that the Court include UDH and JTM in any injunctive relief because, as the Bureau alleges, Defendants have changed names and corporate forms.[23] Even if UDH and JTM are not operating now, absent injunctive relief, they would be free to resume operations and their violative conduct.[24]

Second, the Bureau sufficiently pleads that the violations are redressable by monetary relief. "The CFPA authorizes the Court to grant relief on behalf of consumers, including a refund of moneys, restitution, and disgorgement or compensation for unjust enrichment."[25] And Courts can order disgorgement of profits obtained from activity that

---

[20] Dkt. No. 16 at ¶¶ 4, 6, 7, 56, 73, 111-114, 116-125.

[21] Dkt. No. 16 at ¶¶ 138-158, 160, 162, 164.

[22] *See FTC v. Fed. Check Processing, Inc.*, No. 14-CV-122, 2016 WL 5956073, at *14 (W.D.N.Y. Apr. 13, 2016), *report and recommendation adopted*, No. 14-CV-122S, 2016 WL 5940485 (W.D.N.Y. Oct. 13, 2016), *aff'd sub nom. FTC v. Moses,* 913 F.3d 297 (2d Cir. 2019);*see also United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953).

[23] Dkt. No. 16 at ¶¶ 111-125. *See also* Dkt. No. 16 at ¶ 167 (Debt Collectors also changing names but then continuing to operate as before).

[24] *See 1263523 Ontario*, 205 F. Supp. 2d at 222.

[25] *CFPB v. Chou Team Realty LLC,* No. 8:20-CV-00043, 2021 WL 4895741, at *5 (C.D. Cal. Apr. 27, 2021) (citing 12 U.S.C. § 5565(a)(2)).

violates the CFPA.[26] The Bureau alleges that, when UDH, JTM, and UHG hired Debt Collectors to collect on the accounts they owned, these three Defendants received a percentage of the amount the Debt Collectors took in from each consumer.[27] And, of course, when UDH, JTM, and UHG resold debt to Debt Collectors,[28] it is reasonable to infer that the Debt Collectors paid UDH, JTM, and UHG as part of that sale. The Debt Collectors then made false threats of litigation, false statements about credit reports, and, for debt received from UDH and Manseth, false threats of jail or arrest.[29] Despite knowledge of the Debt Collectors' violations, Defendants continued sending debt to those same Debt Collectors and continued "seeking and accepting payments" for debt Defendants had previously placed with or resold to them.[30]

---

[26] *See CFPB v. NDG Fin. Corp*., No. 15-cv-5211, 2016 WL 7188792, at *21 (S.D.N.Y. Dec. 2, 2016); *see also FTC v. Verity Int'l, Ltd*., 443 F.3d 48, 67 (2d Cir. 2006).

[27] Dkt No. 16 at ¶ 133. *See also* Dkt. No. 16 at ¶¶ 27, 44 (majority of JTM and UHG's revenue was from debt collection).

[28] Dkt. No. 16 at ¶¶ 16, 29, 45, 98, 101, 141-142, 150-153, 158, 162, 166.

[29] Dkt. No. 16 at ¶¶ 106, 138-152.

[30] Dkt. No. 16 at ¶¶ 158, 162. Defendants allege several facts in their argument that go outside the complaint. Although those facts are not properly before the Court, the Bureau notes that even if it were true that "UDH and JTM handled consumer complaints and provided refunds or redress on its own initiative," Dkt. No. 31-1 at 9, which the Bureau does not concede, the Bureau has seen no evidence, and Defendants do not assert, that they took any steps to redress consumers who did not complain but whose phone call with a collector was reviewed and determined to be a violation. The Bureau has also seen no evidence that Defendants took any steps to identify the scope of the harmed population of consumers after identifying a pattern of violations by a Debt Collector. If the court determines that the Bureau pleaded insufficient facts to support its claims, the Bureau requests that it be given an opportunity to seek leave to amend.

Finally, in support of civil penalties, the Bureau states claims for violations of the CFPA and the FDCPA.[31] When a defendant violates the CFPA, the defendant "shall forfeit and pay a civil penalty."[32] Thus, the Amended Complaint has adequately stated a claim that is redressable by penalties, monetary relief, and injunctive relief, and Defendants' motions should be rejected.[33]

**B. Rule 12(b)(6): The Bureau's allegations establish violations of the CFPA.**

**1. The Bureau adequately pleads that Defendants are covered persons.**

To properly plead that Defendants are "covered persons," the Bureau must show that (1) Defendants are "persons" under the CFPA, and (2) Defendants "[engage] in offering or providing a consumer financial product or service."[34] The CFPA defines "person" as an "individual, partnership, company, corporation, association (incorporated or unincorporated),. . . or other entity."[35] The Bureau alleges that UDH, JTM, and UHG are all limited liability companies, and, under the plain language of the

---

[31] *See infra* at 16-37 (CFPA) and 37-41 (FDCPA).

[32] 12 U.S.C § 5565(c)(1).

[33] Defendants' request to strike the Bureau's requests for penalties, monetary, and injunctive relief from the Amended Complaint pursuant to Rule 12(f) (Dkt. No. 30-1 at 34-35) should be rejected as meritless for the same reasons, and because it is improper. Rule 12(f)'s plain language only authorizes a court to strike "redundant, impertinent, or scandalous matter" or an ""insufficient *defense*" from a pleading, but provides no such authority for dismissing an insufficient claim from a complaint, which is appropriately addressed under Rule 12(b)(6). *See Assets Recovery Ctr. Invs., LLC v. Smith*, No. 13 CV 253, 2014 WL 3525011, at *10 (E.D.N.Y. Mar. 12, 2014), *report and recommendation adopted,* No. 13-CV-0253, 2014 WL 3528460 (E.D.N.Y. July 15, 2014).

[34] 12 U.S.C. § 5481(6)(A).

[35] 12 U.S.C. § 5481(19).

statute, companies qualify as "persons."[36] The Individual Defendants qualify as "persons" because they are "individuals."[37]

The Bureau alleges that UDH, JTM, and UHG are engaged in "collecting debt related to any consumer financial product or service," which is a consumer financial product or service under the CFPA.[38] "Engages in" is a broad term that includes hiring agents to conduct an entity's main business.[39] Here, the Bureau alleges that UDH, JTM and UHG purchased portfolios of defaulted consumer debt and either placed it with Debt Collectors who collected on the defaulted debt on behalf of these three Defendants ("Placement Debt Collectors"), or sold it to Debt Collectors who further collected on the debt.[40] When UDH, JTM, and UHG placed debt, they received a percentage of the amount collected from each consumer.[41] This activity was these Defendants' primary business, and these payments made up the majority of JTM and UHG's revenue.[42] This is sufficient to plead that UDH, JTM and UHG are covered persons. Moreover, the Court

---

[36] Dkt. No. 16 at ¶¶ 14, 26, and 39-42.

[37] 12 U.S.C. § 5481(19).

[38] Dkt. No. 16 at ¶¶ 15-24, 27-37, 43-53. *See* 12 U.S.C. § 5481(5); 12 U.S.C. § 5481(15)(A)(x).

[39] *CFPB v. Nat'l Collegiate Master Student Loan Tr.*, No. 1:17-cv-1323, 2021 WL 5936404, at *4 (D. Del. Dec. 13, 2021), *motion to certify appeal granted CFPB* v. *Nat'l Collegiate Master Student Loan Tr.*, No. 1:17-CV-1323, 2022 WL 548123 (D. Del. Feb. 11, 2022)("'Engage' means to "to embark in any business" or to "enter upon or employ oneself in an action." . . . That definition is broad enough to encompass actions taken on a person's behalf by another, at least where that action is central to his enterprise.").

[40] Dkt. No. 16 at ¶¶ 16-17, 29-30, 45-46, 127.

[41] Dkt. No. 16 at ¶ 133.

[42] Dkt. No. 16 at ¶¶ 28, 44.

should reject Defendants' request to read into the statute words such as "*directly* collecting debt" or "collecting debt *on behalf of another*."[43] Congress did not include these limitations.[44]

Defendants also contend that debt buyers cannot be debt collectors, so therefore they cannot be covered persons.[45] They cite the Supreme Court's decision in *Henson v. Santander Consumer USA Inc.*,[46] but that case interpreted the FDCPA and did not address what constitutes a covered person under the CFPA.[47] Moreover, *Henson* focused on only one of two prongs of the FDCPA definition of "debt collector": the prong limited to those who collect debt *owed to another*, and that limitation is absent in the CFPA definition.[48] Thus, the analysis in *Henson* is completely irrelevant to the CFPA definition of "covered persons." And, as will be discussed later, the Bureau alleges that JTM and UHG qualify as "debt collectors" under the other, independent prong of the FDCPA.[49]

---

[43] Dkt. No. 30-1 at 4, Dkt. No. 31-1 at 5-7.

[44] Congress clearly knew how to so limit the statute if it intended to do so; for example, Congress did limit statutory coverage in this way for an exception to another potential covered persons - merchants. *See,* 12 U.S.C. § 5481(15)(A)(vii)(I)(for the merchant exception, "such nonfinancial good or service sold **directly** by such person to the consumer") (emphasis added).

[45] Dkt. No. 31-1 at 4-7.

[46] 137 S. Ct. 1718 (2017).

[47] *See id*. at 1721.

[48] *See id.;*12 U.S.C. § 5481(15)(A)(x).

[49] *See infra* at 37-39.

The Bureau also alleges that Defendants are engaged in "extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit . . . "[50], which also qualify as "consumer financial products or services" under the CFPA.[51] Defendants contend that the definition cited above does not apply to them because they do not buy, sell, or issue credit, and Defendants interpret "credit" to exclude delinquent loans.[52] But Congress did not limit the definition in this way. Moreover, Defendants ignore the second part of the definition that relates to servicing loans (not necessarily "credit") and specifically includes acquiring, purchasing, and selling loans. The "and" in "extending credit and servicing loans" must be read disjunctively to avoid creating an absurd gap in the Bureau's authority.[53] Because Defendants clearly service, acquire, purchase, and sell loans (indeed, that is their business model), they meet this definition of "covered persons."

Finally, the Bureau adequately pleads that Manseth, Adamo, and Turco are covered persons. Under the CFPA, a "related person" is deemed to be a covered

---

[50] Dkt. No. 16 at ¶¶ 15-24, 27-37, 43-53.

[51] *See* 12 U.S.C. § 5481(5); 12 U.S.C. § 5481(15)(A)(i).

[52] Dkt. No. 31-1 at 7-8. *See also* Dkt. No. 30-1 at 4 (purchasing defaulted debt and selling it or placing it for collection is "neither 'credit' nor a 'service' offered to consumers").

[53] *See CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 767 (S.D.N.Y. 2018), *aff'd in part, rev'd in part and remanded*, 828 F. App'x 68 (2d Cir. 2020)("Here, interpreting the term 'and' disjunctively does not defy common sense. Not infrequently, the party that originates or makes a loan is different from the party that services that loan. Given this fact, it would make little sense for Congress to grant the CFPA jurisdiction only over loan originators that service their own loans. Such an interpretation would not capture a large section of the market that the CFPA expressly seeks to regulate."); *see also United States v. Fisk*, 70 U.S. 445, 447 (1865)("[C]ourts are often compelled to construe '*or*' as meaning '*and*,' and again '*and*' as meaning '*or*'" when interpreting statutes).

person.[54] A related person is defined as "any director, officer, or employee charged with managerial responsibility for, or controlling shareholder of . . . " a covered person.[55] And the Bureau alleges that Manseth, Adamo, and Turco are all directors, officers, or employees charged with managerial responsibility for either UDH, JTM, or UHG.[56]

**2. The Amended Complaint states a claim for deception.**

Defendants contend that the Amended Complaint fails to state a claim for deception. An act or practice is deceptive if it makes: (1) material misrepresentations that are (2) likely to mislead consumers, who are (3) acting reasonably under the circumstances.[57] The Bureau alleges that the Debt Collectors, collecting on debt received from Defendants, falsely threatened consumers with lawsuits, gave consumers false information about credit reporting, and falsely threatened consumers with arrest or jail.[58] Further, the Amended Complaint alleges that Defendants are vicariously liable for the acts of their agents and have substantially assisted the Debt Collectors in the violations.[59]

Defendants contend that the Bureau does not sufficiently allege that the Debt Collectors misled consumers because the Amended Complaint lacks the precise contents

54 12 U.S.C. § 5481(25)(B).

55 12 U.S.C. § 5481(25)(C)(i).

56 Dkt. No. 16 at ¶¶ 56-61, 63-68, 73-75, 77-82, 88-93.

57 *See Moses*, 913 F.3d at 306 (quoting *Verity*, 443 F.3d at 63; *RD Legal Funding, LLC,* 332 F. Supp. 3d at 772-73.

58 Dkt. No. 16 at ¶¶ 138-152.

59 Dkt. No. 16 at ¶¶ 171, 175, 196 (vicarious liability allegations); *id.* at ¶¶ 105-110, 153-58, 162-67 (substantial assistance).

of each alleged statement concerning legal action and credit reporting.[60] Defendants rely on mischaracterized and selective quotes from the Amended Complaint and unsupported factual speculation to support their contentions. For example, Defendants claim that the following statements from a Debt Collector about impending litigation may not have been deceptive because they could be an accurate reflection of state law:

> I'm the one who is assigned to this case, in accordance with Texas state law you do have the right to be notified prior to any action or judgment being filed against you ah in state supreme court. So we have been retained concerning a breach of contract. We handle mediation ah for a group of investing attorneys . . .[61]

Yet Defendants ignore the paragraphs *immediately following* the paragraph quoted above, which show why these statements are misleading even if they accurately portrayed state law:

- "None of the Debt Collectors referenced above were authorized by UDH, JTM, or UHG to sue consumers."[62]
- "None of the Debt Collectors referenced above sued consumers on debts they were collecting for UDH, JTM, or UHG."[63]
- "UDH, JTM, and UHG had no imminent plan to sue the consumers threatened by the Debt Collectors when these statements were made."[64]

Defendants also argue that they authorized some Debt Collectors to file suit, and because the Bureau does not provide account numbers and dates for each deceptive statement, Defendants may have had an imminent plan to sue consumers when the

[60] Dkt. No. 30-1 at 15-18; Dkt. No. 31-1 at 29-31.

[61] Dkt. No. 30-1 at 16 (citing Dkt. No. 16 ¶ 143(b)).

[62] Dkt. No. 16 at ¶ 144.

[63] Dkt. No. 16 at ¶ 145.

[64] Dkt. No. 16 at ¶ 146.

Debt Collectors made the threats alleged in the Amended Complaint.[65] These conjectures specifically contradict the Bureau's allegations that Defendants did not authorize suit and had no imminent plan to sue,[66] and they are insufficient to defeat such allegations at this stage, when the court must "accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff."[67]

Defendants also challenge the sufficiency of the Bureau's allegations that the Debt Collectors falsely threatened credit reporting. The Amended Complaint alleges that the Debt Collectors falsely represented "that consumers' credit scores or credit histories would be impacted positively if they paid the debt or, conversely, would be impacted negatively if they did not pay the debt."[68] Defendants assert that the Bureau's allegations regarding credit reporting are not deceptive because, if an original creditor had initially furnished information to consumer reporting agencies (CRAs), then the consumers could later take it upon themselves to contact the CRAs and get them to report their debts as paid or settled, and their credit might actually improve.[69] Defendants'

---

[65] Dkt. No. 31-1 at 28-29; Dkt. No. 30-1 at 19.

[66] Dkt. No. 16 at ¶¶ 144-146.

[67] *Sam v. Midland Credit Mgmt., Inc.*, No. 15-cv-1029, 2021 WL 4771274, at *4 (W.D.N.Y. Oct. 13, 2021) (quotation marks and citations omitted). *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ("Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.") (quotation marks and citation omitted).

[68] Dkt. No. 16 ¶¶ 147-49.

[69] *See* Dkt. No. 31-1 at 30; *see also* Dkt. No. 30-1 at 17, n.8.

assertions are both speculative on their face and rely on facts not found in the Bureau's Amended Complaint. They also ignore the core of the Bureau's allegation: that the Debt Collectors falsely claimed that the consumers' credit would improve (without mentioning any activity required on the consumer's part), when in fact the *Debt Collectors* and *Defendants* were not actually reporting payments to the CRAs.[70] Further, Defendants fail completely to address the allegations that collectors threatened to report *negative* credit reporting information when Defendants had no intent to report such information.[71]

The Bureau also alleges that "Defendants have received hundreds of complaints from consumers that the Debt Collectors collecting on debt placed by Defendants or sold by Defendants have made express or implied misrepresentations" about lawsuits, arrest, or credit reporting.[72] Defendants protest that these allegations lack necessary details about "the identity of the complainant and debt collector or anything about Defendants' verification and response to those complaints," and are insufficient to establish that the complaints are about "actionable" or "germane" misrepresentations."[73] Defendants

---

[70] *See generally* CFPB Bulletin 2013-08, "Representations Regarding Effect of Debt Payments on Credit Reports and Scores,"(Fair Debt Collection Practices Act and the Dodd-Frank Act, July 10, 2013) (warning creditors and debt collectors not to make any representations about the effect of debt payments on consumers' credit scores or histories because it is highly unlikely such statements could be substantiated).

[71] Dkt. No. 16 ¶¶ 147-49. *See Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1035 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.").

[72] Dkt. No. 16 at ¶ 153.

[73] Dkt. No. 31-1 at 31; *see also* Dkt. No. 30-1 at 18.

conveniently overlook that the Amended Complaint not only alleges that Defendants "received" these complaints, but also that Defendants forwarded them to the relevant Debt Collectors and that the Individual Defendants often communicated about and "handled" escalated complaints.[74] And once again, Defendants misconstrue the Bureau's burden at this stage – a complaint need only contain a short and plain statement, not a detailed accounting of the facts, and all inferences must be construed in favor of the Bureau.[75]

Thus, the Amended Complaint sufficiently alleges deceptive misrepresentations regarding credit reporting and impending litigation, and the motion to dismiss on this basis should be rejected.[76]

**3. The Amended Complaint states claims for substantial assistance.**

The CFPA provides that any person who "knowingly or recklessly provide[s] substantial assistance to a covered person or service provider" in violation of the CFPA or "any rule or order issued thereunder" may be held liable for that violation "to the

[74] Dkt. No. 16 at ¶¶ 60, 75, 81, 91-92, 106, 124, 150, 153-55, 157.

[75] *See Gerbasi v. NU Era Towing & Serv., Inc.*, 443 F. Supp. 3d 411, 412 (W.D.N.Y. 2020) (standard for judgment on the pleadings is same as motion to dismiss – the court must accept allegations in complaint as true and draw reasonable inferences in plaintiff's favor).

[76] Defendants do not contest the sufficiency of the allegations of misrepresentations about arrest or jail. *See* Dkt. No. 30-1 at 15-20. Although Defendants' sub-heading (at 15) asserts that the Amended Complaint omits essential facts about all misrepresentations, including those about "arrest," Defendants fail to make any arguments in the text about the jail and arrest allegations, and thus any such contention should be deemed waived. *See United States v. Dazey*, 242 F. App'x 563, 566 n.1 (10th Cir. 2007) (declining to address argument raised in heading but not addressed in text of brief).

same extent as the person to whom such assistance is provided."[77] Because the CFPA's substantial assistance provision mirrors a parallel provision establishing aiding and abetting liability under the Securities Exchange Act, courts look to securities cases for guidance in interpreting the CFPA's provision.[78] Accordingly, courts have found that the Bureau states a claim for a violation of the CFPA's substantial assistance provision when it properly alleges (1) a primary violation, (2) knowledge or reckless disregard of the violation, and (3) substantial assistance by the defendant.[79] "Courts in this Circuit have defined 'reckless' as behavior that is 'highly unreasonable' or represents an 'egregious refusal to see the obvious or to investigate the doubtful.'"[80] In other words, a defendant's conduct is reckless where it "entail[s] an unjustifiably high risk of harm that is either known or so obvious that it should be known."[81]

---

[77] 12 U.S.C. § 5536(a)(3).

[78] *CFPB v. Universal Debt & Payment Solutions, LLC,* No. 1:15-CV-00859, 2015 WL 11439178, at *12 (N.D. Ga. Sept. 1, 2015) (noting that court looked to securities law and cases in construing the CFPA's substantial assistance provision). *See* 15 U.S.C § 78t(e). In 2010, Congress amended the Securities Exchange Act to make it unlawful for a person to "knowingly *or recklessly* provide[] substantial assistance." Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1761, 1862 (2010) (emphasis added).

[79] *See RD Legal Funding*, 332 F. Supp. 3d at 772; *CFPB v. Universal Debt & Payment Solutions, LLC*, No. 1:15-CV-0859-RWS, 2019 WL 1295004, at *6, 12 (N.D. Ga. Mar. 21, 2019) (citing aiding and abetting standard of *SEC v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012)).

[80] *RD Legal Funding*, 332 F. Supp. 3d at 770; *see also Universal Debt*, 2015 WL 11439178, at *7 (requiring the Bureau to allege "highly unreasonable" conduct involving "an extreme departure from the standards of ordinary care" that "present a danger" to consumers "which is either known to the defendant or is so obvious that the defendant must have been aware of it").

[81] *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) (internal quotations and citations omitted).

Here, despite Defendants' claims to the contrary,[82] the Bureau adequately pleads all three elements. The Amended Complaint alleges that Defendants substantially assisted the Debt Collectors' false threats of suit and misrepresentations about credit reporting when they were collecting on debts received from Defendants (whether placed or sold) and that Defendants Manseth and UDH substantially assisted the Debt Collectors' false threats of arrest when they were collecting on debts received from Manseth or UDH (whether placed or sold).[83]

First, as is described above, the Bureau alleges facts to show that the Debt Collectors committed the primary violation by engaging in deceptive acts in violation of the CFPA.[84]

Second, the Bureau's Amended Complaint includes multiple, specific allegations about Defendants' knowledge or reckless disregard of the Debt Collectors' deceptive acts: Defendants received hundreds of consumer complaints alleging that the Debt Collectors engaged in the deceptive acts;[85] Defendants had recorded telephone calls in which the Debt Collectors falsely threatened lawsuits and made false statements about credit reporting;[86] several of the Debt Collectors were sued by state and federal regulators for deceptive acts;[87] and UDH's compliance manager raised concerns about

---

[82] Dkt. No. 30-1 at 24-29.

[83] Dkt. No. 16 at ¶¶ 176-184 (Count II) and ¶¶ 185-189 (Count III).

[84] *See supra* at 20.

[85] Dkt. No. 16 at ¶¶ 153-155, 157.

[86] Dkt. No. 16 at ¶¶ 156-157.

[87] Dkt No. 16 at ¶ 163.

JTM's debt-collection practices long before the companies joined forces to create UHG.[88] Moreover, on several occasions, Defendants instructed the Debt Collectors to supply only legally-compliant calls for audits and refused to give original creditors call notes or phone call recordings, strongly suggesting that Defendants knew about the Debt Collectors' illegal practices.[89]

Even though Defendants knew of or recklessly disregarded the Debt Collectors' recurrent illegal conduct, Defendants continued to do business with those Debt Collectors. Defendants had the ability to control the Debt Collectors and terminate relationships with the Debt Collectors.[90] Yet Defendants took no meaningful action to prevent or preclude further false statements by the Debt Collectors.[91] To the contrary, for years, Defendants tried to maintain the veneer of compliance by playing a shell game with the Debt Collectors: at various times Defendants claimed to have terminated relationships with certain problematic Debt Collectors, but Defendants' own internal records show that some of these Debt Collectors had merely changed their names but Defendants continued to do business with them.[92] In other instances, UDH terminated relationships with problematic Debt Collectors but JTM or UHG later began working

[88] Dkt. No. 16 at ¶ 107. *See also* Dkt. No. 16 at ¶¶ 184, 189 (specifically alleging that Defendants acted "knowingly or recklessly").

[89] Dkt. No. 16 at ¶ 164.

[90] Dkt. No. 16 at ¶¶ 134-137.

[91] Dkt. No. 16 at ¶¶ 159, 161.

[92] Dkt. No. 16 at ¶¶ 165-167.

with those same Debt Collectors.[93] Meanwhile, Defendants continued to benefit financially from the Debt Collectors' illegal acts and practices.[94]

Defendants claim—without any citations to relevant caselaw—that the Bureau is required to plead many more facts to support its substantial assistance claims. Defendants want to require that the Bureau allege facts showing, for example, that consumer complaints mentioned in the Amended Complaint were related to the cited FDCPA or UDAAP violations and that consumer complaints "inevitably led to subsequent violations."[95] The Bureau is not required to plead this level of detail in order to adequately state a claim.[96]

Defendants also claim that the Bureau does not adequately plead they possessed the required degree of knowledge because, for example, the Bureau does not identify which of the hundreds of consumer complaints were legitimate, and the Bureau does not compare the number of complaints that Defendants received to the number of complaints that are typical for the debt-collection industry.[97] These arguments may or may not assist a factfinder in weighing the evidence once the facts are before the Court,

---

93 Dkt. No. 16 at ¶ 168.

94 Dkt. No. 16 at ¶ 162.

95 Dkt. No. 31-1 at 25.

96 *Lynch v. N.Y.C.*, 952 F.3d 67, 75 (2d Cir. 2020), (quoting *Anderson News, LLC v. American Media, Inc.*, 680 F.3d 162, 184-85 (2d Cir. 2012)("[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side: 'Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible. . . . The choice between or among plausible inferences or scenarios is one for the factfinder . . . .'").

97 Dkt. No. 30-1 at 28.

but they do not contradict the fact that the Bureau clearly and plausibly alleges Defendants had knowledge of (or recklessly disregarded) the unlawful conduct.[98]

Finally, Defendants incorrectly suggest that the Bureau's substantial assistance claims, which are not fraud claims and are contained in a remedial statute, must also satisfy Rule 9(b). The vast majority of courts, including several in the Second Circuit, have held that Rule 9(b) does not apply to deception claims under the CFPA.[99] These courts have explained there are at least three reasons why the 9(b) pleading requirements should not apply to deception claims: (1) "Rule 9(b) expressly applies only to claims alleging 'fraud or mistake,' and . . . consumer protection claims are not claims of fraud, even if there is a deceptive dimension to them," (2) "the United States Supreme Court has consistently cautioned against extending this heightened pleading standard beyond claims for fraud or mistake," and (3) applying 9(b) pleading standards to consumer protection claims is inconsistent with both the "remedial nature of consumer protection statutes" and the reason for the 9(b) standard, which is to ensure that the element of intent is clearly alleged. Intent is not required for consumer protection

[98] The details in the Amended Complaint are more than sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And "[a]t this stage of the proceedings, the Government is not required to plead specific details as to which entity did what during the alleged course of misconduct." *RD Legal Funding*, 332 F. Supp. 3d at 771.

[99] *See, e.g., CFPB v. Think Fin., LLC*, No. CV-17-127, 2018 WL 3707911, at *8 (D. Mont. Aug. 3, 2018); *RD Legal Funding, LLC*, 332 F. Supp. 3d at 768 ; *CFPB v. Navient Corp.*, No. 3:17-CV-101, 2017 WL 3380530, at *25 (M.D. Pa. Aug. 4, 2017); *CFPB v. Frederick J. Hanna*, 114 F. Supp. 3d 1342, 1373-74 (N.D. Ga. 2015).

claims.[100]

The Bureau is aware of only two unreported decisions that have held otherwise, neither of which are in the Second Circuit.[101] *CFPB v. Commonwealth Equity Grp., LLC* applied Rule 9(b) without analyzing, or even mentioning, legal authority to the contrary, but instead noting that "claims that rely on allegations of intentional and malicious false statements" must be alleged under the heightened pleading standard.[102] But deception claims do not rely on allegations of intentional and malicious false statements.[103] *CFPB v. Prime Mktg. Holdings, LLC* also applied Rule 9(b) to a deception claim but failed to discuss the cases or analyses finding Rule 9(b) does not apply, [104] even though those cases have been characterized as the "overwhelming weight of precedent" indicating Rule 9(b) should not apply to matters such as this one.[105]

Only one court has specifically addressed whether a heightened pleading standard applies to a substantial assistance claim under the CFPA, and that court declined to apply the Rule 9(b) standard.[106] In *RD Legal Funding*, which was

---

[100] *RD Legal Funding, LLC*, 332 F. Supp. 3d at 768 (collecting and explaining reasoning of decisions declining to apply 9(b) to CFPA claims); *see also Navient Corp.,* 2017 WL 3380530, at *24-25; *Hanna*, 114 F. Supp. 3d at 1371-1373.

[101] *See, e.g., CFPB v. Commonwealth Equity Grp., LLC*, 554 F. Supp. 3d 202, 209-10 (D. Mass. 2021); *CFPB v. Prime Mktg. Holdings, LLC,* 2016 WL 10516097, at *6 (C.D. Cal. Nov. 15, 2016)

[102] 554 F. Supp. 3d at 209-10 (D. Mass. 2021).

[103] *Moses*, 913 F.3d at 306 (quoting *Verity*, 443 F.3d at 63 ("deception need not be made with intent to deceive").

[104] 2016 WL 10516097, at *5-6.

[105] *Think Fin., LLC,* 2018 WL 3707911, at *7–8.

[106] *See RD Legal Funding*, 332 F. Supp. 3d at 769–70.

subsequently affirmed in part and reversed on other grounds and remanded, the United States District Court for the Southern District of New York explained that a showing of recklessness under the CFPA requires "behavior that is 'highly unreasonable' or represents 'an egregious refusal to see the obvious, or to investigate the doubtful.'"[107] By contrast, the *scienter* associated with fraud requires the plaintiff to prove the defendant knew the material misrepresentation was false and that the defendant made the misrepresentation with the "intent to defraud."[108]

The Court should adopt the majority position and decline to apply the Rule 9(b) standard.

**4. The Amended Complaint states CFPA claims against the Individual Defendants.**

The Bureau's Amended Complaint alleges that all three Individual Defendants are liable for deceiving consumers through the actions of their Debt Collectors and for substantially assisting the violations of the Debt Collectors with whom Defendants placed debt.[109] The Bureau also alleges that Manseth substantially assisted the Debt Collectors who threatened consumers with arrest and jail when collecting on debt placed by UDH or sold by UDH.[110]

---

[107] *Id.* at 770 (citing *SEC v. Yorkville Advisors*, LLC, 305 F.Supp.3d 486, 511 (S.D.N.Y. 2018)).

[108] *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015) (citations omitted).

[109] Dkt. No. 16 at ¶¶ 169-175 (Count I), 176-184 (Count II).

[110] Dkt. No. 16 at ¶¶ 185-189 (Count III).

**a. The Individual Defendants are "covered persons" subject to the CFPA.**

As explained above, the Individual Defendants are "related persons" under the CFPA because each of them is a "director, officer, or employee charged with managerial responsibility for, or controlling shareholder of, or agent for" a covered person.[111] Because each of them is a "related person," they are deemed "covered persons" under the CFPA and can be liable for violations of the CFPA.[112] Contrary to Defendants' assertions,[113] this Court can impose liability on the individuals using the plain language of the statute and without piercing the corporate veil or finding that a common enterprise exists. No such requirement is found in the statute or case law.

**b. The Amended Complaint states deception claims against the Individual Defendants.**

As Defendants concede, the Bureau states a claim that an individual engaged in unfair, deceptive, or abusive acts or practices where the Bureau alleges: "(1) that the individuals participated directly in the wrongful acts or practices" or "had the authority to control the corporate defendants," and "(2) that the individuals had some knowledge of the acts or practices."[114] The Individual Defendants assert that the Bureau did not adequately plead that the Individual Defendants directly participated in the wrongdoing, controlled the Debt Collectors, saw a pattern of illegal activity, or knew

---

[111] Dkt. No. 16 at ¶¶ 56-69, 73-83, 88-94; *see supra* at 19-20.

[112] *See* 12 U.S.C. § 5536(a)(1), (a)(3); 12 U.S.C. § 5481(25)(B).

[113] Dkt. No. 30-1 at 33.

[114] *Id., see NDG Fin. Corp.*, 2016 WL 7188792, at *17 (quoting *FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471 (S.D.N.Y. 2014)).

when Debt Collectors would violate the law.[115]

As to the question of control, the Bureau specifically alleges that the Individual Defendants, through their pivotal roles as owners and managers of the closely-held Corporate Defendants, controlled both the Corporate Defendants[116] and the Debt Collectors they hired to collect debt owned by the Corporate Defendants.[117] Indeed, the Corporate Defendants (by virtue of the control exercised by the Individual Defendants) provided written guidance to the Debt Collectors and had the authority to (a) instruct the Debt Collectors on issues relating to consumer complaints and collection behavior, (b) require the Debt Collectors to discipline their employees, and (c) remove accounts from the Debt Collectors and terminate relationships with the Debt Collectors.[118]

As to the question of knowledge, the Bureau alleges that at various points each Individual Defendant personally handled escalated consumer complaints.[119] In fact, UDH's compliance manager warned Manseth and Turco to stop placing debt with JTM due to consumer complaints.[120] Further, Adamo and Turco monitored the Debt Collectors' activities and compliance on behalf of UHG,[121] and all three Individual

---

[115] Dkt. No. 30-1 at 30-31.

[116] Dkt. No. 16 at ¶¶ 56-61, 63-68, 73-75, 77-82, 88-93, 125, 127.

[117] Dkt. No. 16 at ¶¶ 134, 136-137.

[118] Dkt. No. 16 at ¶¶ 135-137.

[119] Dkt. No. 16 at ¶¶ 60, 81, 91, 153.

[120] Dkt. No. 16 at ¶¶ 106-107.

[121] Dkt. No. 16 at ¶¶ 81, 91.

Defendants oversaw UHG's workforce.[122] In short, the Bureau alleges many facts showing that each Individual Defendant knew about the Debt Collectors' repeated violations.

Defendants incorrectly assert that these allegations are insufficient. They suggest that the Bureau must point to more than the hundreds of consumer complaints against these particular Debt Collectors and the recorded phone calls showing violations by these Debt Collectors to adequately plead knowledge on the part of the Individual Defendants.[123] The Court should reject Defendants' argument. The facts in the Amended Complaint render plausible its allegations of the Individual Defendants' knowledge, especially when combined with Defendants' role in concealing violations[124] and reinstating relationships with Debt Collectors (sometimes under new names) after terminating them for compliance reasons.[125]

**c. The Amended Complaint states substantial assistance claims against the Individual Defendants.**

The CFPA prohibits any person from "knowingly or recklessly provid[ing] substantial assistance to a covered person" in violation of the prohibition against unfair, deceptive, and abusive acts and practices.[126] The Bureau's allegations satisfy the

---

[122] Dkt. No. 16 at ¶¶ 68, 82, 93.

[123] Dkt. No. 30-1 at 32.

[124] Dkt. No. 16 at ¶ 164.

[125] Dkt. No. 16 at ¶¶ 165-168. If the Court disagrees with the Bureau's interpretation and rules that more details are required, the Bureau requests that it be given the opportunity to amend and add information as directed by the Court.

[126] 12 U.S.C. § 5536(a)(3).

"knowingly or recklessly" element by describing the Individual Defendants' active roles at each of the Corporate Defendant companies as well as each individual's responsibility for managing consumer complaints and monitoring the Debt Collectors.[127] The Bureau's allegations also satisfy the "substantial assistance" component: the Amended Complaint alleges that Manseth and Adamo decided which Debt Collectors could receive placed debt (and, in the case of Manseth, which Debt Collectors could buy debt) from the Corporate Defendants.[128] And all three of the Individual Defendants had the authority to remove accounts and to refuse to send any additional accounts from Debt Collectors, yet they permitted Debt Collectors who violated the law to continue collecting on the debts and placed additional accounts with them.[129] Moreover, Manseth continued to allow debt to be resold to violating Debt Collectors.[130] Thus, the Bureau adequately pleads that the Individual Defendants are liable for substantially assisting the Debt Collectors' deceptive conduct.

**5. The CFPA does not require prior notice before enforcement of its provisions.**

Defendants argue that the Bureau's action violates due process because Defendants did not know that they had to take action to prevent illegal conduct by anyone who collected debt on their behalf or collected on accounts they sold.[131]

---

[127] Dkt. No. 16 at ¶¶ 59-62, 65-69, 73-83, 87-94, 157, 160.

[128] Dkt. No. 16 at ¶¶ 59, 65-66, 73-75, 80.

[129] Dkt. No. 16 at ¶¶ 137, 158, 162, 184, 189.

[130] Dkt. No. 16 at ¶¶ 59, 66, 158, 161, 189.

[131] Dkt. No. 30-1 at 29-30.

Defendants do not contest that to the extent that Debt Collectors falsely threatened litigation, falsely threatened arrest or jail, or told consumers false information about credit reporting, such actions violated the CFPA. Instead, Defendants claim they had no notice of the legal duty required of them and what they should have done differently.[132]

Essentially, Defendants assert that they were unaware of the scope of their liability: they did not realize that it was illegal for them to place consumers' debt with, or sell consumers' debt to, Debt Collectors whom Defendants knew, or but for their reckless disregard, should have known had engaged in previous illegal collection behavior. While due process requires that "laws which regulate persons or entities must give fair notice of conduct that is forbidden or required,"[133] it does not require the Bureau to spell out every action that could violate the CFPA before the Bureau can bring an enforcement action. As the Third Circuit has explained, the correct inquiry is whether Defendants "had fair notice of what *the statute itself* requires."[134] Here, it was reasonably foreseeable to Defendants that a court could construe their conduct as falling within the meaning of "substantial assistance" under the CFPA.[135] Because Defendants

---

[132] Dkt. No. 30-1 at 30.

[133] *Nnebe v. Daus*, 931 F.3d 66, 90 (2d Cir. 2019), quoting *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

[134] *Navient Corp.*, 2017 WL 3380530, at *8 (quoting *FTC v. Wyndham Worldwide Corporation*, 799 F.3d 236, 253-54 (3d Cir. 2015))(emphasis in original)(Defendants are not entitled to fair notice "of what acts or practices the CFPB has interpreted as unlawful under the Act," only what the Act requires.). *See also CFPB v. CashCall, Inc.*, No. CV 15-7522, 2016 WL 4820635, at *12 (C.D. Cal. Aug. 31, 2016) (the CFPA uses language or terms that have established meaning under other consumer-protection statutes).

[135] *See CFPB v. D & D Mktg.*, No. CV 15-9692, 2016 WL 8849698, at *7 (C.D. Cal. Nov. 17, 2016)("the law provides adequate notice if defendants can 'reasonably foresee' that a

had fair notice of the statute itself, the Court should reject Defendants' argument.

Defendants also argue, without evidence or citation to the pleadings, that they did not know that they must take affirmative actions to prevent or correct violations by their agents, the Debt Collectors.[136] But even if true, this does not mean the Bureau has failed to state a claim. Neither the deception claim nor the substantial assistance claim requires the Bureau to show that Defendants failed to correct a wrong. Here, the Bureau provides context and additional details by explaining that Defendants did not take reasonable steps to fix the problem, but this detail is not required. In any event, Defendants' arguments on this topic go to the merits of the case rather than the question of whether the Bureau has sufficiently pleaded its claims.

### C. Rule 12(b)(6): The Bureau's allegations establish violations of the FDCPA.

#### 1. The Bureau adequately alleges that UHG and JTM are "debt collectors" under the FDCPA.[137]

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business

[1.] the principal purpose of which is the collection of any debts, **<u>or</u>**

---

court could construe its conduct as falling within the statute") (quotations and citations omitted).

[136] Dkt. No. 30-1 at 30.

[137] Defendants argued UDH is not a debt collector under the FDCPA. Dkt. No. 31-1 at 17-18. The Amended Complaint does not include FDCPA claims against UDH, and, as a result, that argument is irrelevant at this point. Dkt. No. 16 at ¶¶ 190-201 (Counts IV and V against JTM and UHG). Although it does not appear Defendants have argued UHG is not a debt collector under the FDCPA, the Bureau nevertheless has addressed why UHG's status as a debt collector was sufficiently pleaded in case the court construes Defendants' argument as applying to UHG given the similar abbreviations.

> [2.] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[138]

JTM and UHG qualify as debt collectors under the first prong because, as the Bureau alleges in its complaint, their businesses are sustained by revenue from the collection of debts without other significant purposes or sources of revenue.[139] Both JTM and UHG purchase debts for the principal purpose of collecting on them[140] – the fact that they hired "middlemen" to do the actual collection does not change that.[141] A debt buyer "does not shed its essential character as a debt collection business or convert itself into something other than a debt collector simply because it outsources the work of collecting outstanding debts."[142]

Although JTM argues it is no longer a debt collector because it is no longer operating—which JTM inexplicably seems to contend should result in the dismissal of

---

[138] 15 U.S.C. § 1692a(6) (emphasis supplied).

[139] Dkt. No. 16 at ¶¶ 28, 44. *See Mullery v. JTM Cap. Mgmt., LLC*, No. 18-CV-549, 2018 WL 8332821, at *4 (W.D.N.Y. Nov. 30, 2018), *report and recommendation adopted*, 2019 WL 2135484 (W.D.N.Y. May 16, 2019); *see also Barbato v. Greystone All., LLC,* 916 F.3d 260, 268-69 (3d Cir. 2019) (principal purpose established where debt buyer acknowledges it would "cease to exist" but for the funds collected on debts).

[140] Dkt. No. 16 at ¶¶ 27-30, 43-46.

[141] *Barbato,* 916 F.3d at 267; *McAdory v. M.N.S. & Assocs., LLC,* 952 F.3d 1089, 1093 (9th Cir. 2020) (debt buyer is collector where complaint alleges that debt buyer's principal purpose "was to buy consumer debts in order to collect on them," even if others did the collecting); *Reygadas v. DNF Assocs., LLC*, 982 F.3d 1119, 1125 (8th Cir. 2020) (entity's principal purpose is debt collection where its "primary objective is to collect on debt accounts it purchased in order to turn a profit" and it hired a debt collection agency to actually collect the debts).

[142] *Mullery*, 2018 WL 8332821, at *4 (citations omitted).

FDCPA claims against it that span years [143]—as was described above, there is no basis in the Amended Complaint to conclude JTM has ceased operations.[144] The Amended Complaint does not allege JTM has ceased operations but states that JTM continued engaging in the debt collection business until "at least 2019" and then transitioned its business operations to UHG.[145] And, even if JTM had stopped operating, that would not alone require dismissal.[146]

**2. The Amended Complaint states claims for debt-collection violations under the FDCPA.**

The Amended Complaint adequately pleads that UHG and JTM are liable under the FDCPA for using false, deceptive, or misleading representations or means in connection with the collection of any debt; making threats to take action that cannot legally be taken or that is not intended to be taken; using false representations or deceptive means to collect or attempt to collect a debt; and falsely representing or implying that documents are legal process.[147]

---

[143] Dkt. No. 31-1 at 18-19.

[144] *See supra* at 13.

[145] Dkt. No. 16 at ¶¶ 33, 114.

[146] *Cf. 800 Cooper Fin., LLC v. Liu*, No. CV 16-736 (JHR/JS), 2022 WL 855647, at *4 (D.N.J. Mar. 22, 2022)(a valid certificate of cancellation of an LLC would result in the LLC being unable to be sued but merely ceasing operations is not enough); *Cava Const. Co. v. Gealtec Remodeling Corp.,* 58 A.D.3d 660, 661 (2009) ("A corporation continues to exist after dissolution for the winding up of its affairs, and a dissolved corporation may sue or be sued on its obligations, including contractual obligations and contingent claims, until its affairs are fully adjusted.").

[147] Dkt. No. 16 ¶ 190-98 (Count IV) (alleging violations of 15 U.S.C. § 1692e, e(5), e(10), & e(13)).

Defendants object that the Amended Complaint "does not allege that the Debt Collectors identified themselves as lawyers."[148] This is not a requirement for pleading false threats of filing suit under the FDCPA.[149] Defendants appear to have confused the FDCPA subsections in the Amended Complaint with a different subsection of the FDCPA that specifically prohibits collectors from pretending to be an attorney,[150] which is a subsection the Bureau does not plead. Equally unpersuasive and unsupported is Defendants' contention that even the least sophisticated consumer would not believe a lawsuit threat unless it was made by an attorney, a conclusion Defendants support by citing cases which, in fact, reached no such conclusion.[151]

When it comes to asserting facts involving false threats of suit, the Bureau adequately pleads its claim under the FDCPA's catch-all prohibition: "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," and under the more specific subparts prohibiting "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken"

---

[148] Dkt. No. 30-1 at 18; Dkt. No. 31-1 at 30.

[149] *Khon v. Paul Michael Mktg. Serv., Inc.*, No. CV05-2771(SJF)(MDG), 2006 WL 3065588, at *1-2 (E.D.N.Y. Oct. 27, 2006) (rejecting Defendant's contention that letter was not threatening because it did not indicate matter was referred to lawyer).

[150] 15 U.S.C. § 1692e(3) (specifically prohibiting "false representation or implication that any individual is an attorney or that any communication is from an attorney").

[151] *See* Dkt. No. 30-1 at 17-18; Dkt. No. 31-1 at 30. *Gervais v. Riddle & Assocs., P.C.,* 479 F. Supp. 2d 270, 275 (D. Conn. 2007) does not require the mention of an attorney and holds that even vague language regarding possibility of filing suit can violate § 1692e(5). *Hallmark v. Cohen & Slamowitz, LLP,* 293 F.R.D. 410, 414 (W.D.N.Y. 2013) does not state that "even the 'least sophisticated' consumer knows that only lawyers file lawsuits," and does not suggest in any form that reference to attorneys must be alleged to make a claim under § 1692e(5).

and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."[152]

### D. Under Rule 12(b)(6): The Bureau adequately alleges vicarious liability.

#### 1. Vicarious liability is available under the CFPA and the FDCPA.

When Congress enacts a statute, it legislates against a legal background of common law principles that are presumed to be incorporated in the legislation unless Congress specifically states otherwise.[153] It is "well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for the acts of their agents or employees in the scope of their authority or employment," which the Supreme Court has concluded makes it available under numerous federal statutes.[154] Congress did not exclude vicarious liability in the CFPA or the FDCPA and it follows that vicarious liability is available under both statutes.

---

[152] 15 U.S.C.A. § 1692e and e(5) and e(10), respectively. *See Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25-26 (2d Cir. 1989); *Sweeney v. D.C. Credit Servs., Inc.*, No. 05-CV-702A, 2007 WL 981919, at *4 (W.D.N.Y. Mar. 30, 2007). *See also* Dkt. No. 16 at ¶¶ 190-98 (Count IV). *See also* Dkt. No. 16 at ¶¶ 138-49.

[153] *United States v. Texas*, 507 U.S. 529, 534 (1993) ("longstanding" principle that "[s]tatutes which invade the common law … are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident") (quotation marks and citations omitted); *Astoria Federal Savings & Loan Assn. v. Solimino,* 501 U.S. 104, 108 (1991) ("courts may take it as a given that Congress has legislated with an expectation that the [common law] principle will apply except when a statutory purpose to the contrary is evident") (quotation marks and citations omitted).

[154] *Meyer v. Holley*, 537 U.S. 280, 285 (2003); *Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742, 754-55 (1998) (deciding an employer's vicarious liability under Title VII based on traditional agency principles); *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57 (1986) ("Congress wanted courts to look to agency principles for guidance").

Although the Second Circuit has not addressed whether vicarious liability is available under the FDCPA, other courts, including district courts within the Second Circuit, have recognized vicarious liability under the FDCPA.[155] Defendants incorrectly argue that the Second Circuit warned against vicarious liability for FDCPA violations in *Vincent v. The Money Store*.[156] *Vincent* addressed whether a creditor could be held liable under an exception to the FDCPA's general exclusion of first-party creditors.[157] Neither the FDCPA provision excluding creditors, nor the holding of *Vincent*, are relevant to the allegations in this case, nor is *Vincent's* dicta about how the provision excluding creditors relates to vicarious liability.[158]

---

[155] *See, e.g., Barbato,* 916 F.3d at 269; *Janetos v. Fulton Friedman & Gullace,* 825 F.3d 317, 325 (7th Cir. 2016); *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994*); Bradley v. Selip & Stylianou, LLP*, No. 17-CV-6224-FPG, 2018 WL 4958964, at *5 (W.D.N.Y. Oct. 15, 2018) (vicarious liability available under FDCPA)*; McCrobie v. Palisades Acquisition XVI, LLC*, No. 115-CV-00018, 2019 WL 4023367, at *4 (W.D.N.Y. Aug. 23, 2019) (complaint sufficiently pleaded vicarious liability under FDCPA); *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 516 (S.D.N.Y. 2013) (vicarious liability available under FDCPA); *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 258-59 (S.D.N.Y.2011) (vicarious liability available under FDCPA if principal exercised control over agent); *Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 494 (S.D.N.Y. 2014) (finding vicarious liability available under FDCPA, disagreeing with other district courts' imposition of "control" requirement); *Mullery*, 2018 WL 8332821, at *3 ("Although the FDCPA is silent on the issue of vicarious liability, district courts in this circuit, as well as the majority of courts nationwide have determined that 'entities that meet the FDCPA's definition of 'debt collector' may be held vicariously liable for the wrongful collection activity of another carried on for its behalf.")(citations omitted).

[156] Dkt. No. 30-1 at 22.

[157] *Vincent v. The Money Store*, 736 F.3d 88, 97 (2d Cir. 2013) (examining whether original creditor could be held liable under the "false name" exception to the FDCPA's general exclusion of creditors) (discussing 15 U.S.C. §1692a(6)).

[158] *Id.* at 99. (concluding that exception providing for creditor liability did not lead to "backdoor vicarious liability").

As for the CFPA, at least one court has recognized that parties may be vicariously liable.[159] Also, the Second Circuit and many other courts have recognized that vicarious liability exists under a similar statute, the Federal Trade Commission Act,[160] which also prohibits deceptive conduct and which courts frequently look to when interpreting deception under the CFPA.[161]

Defendants, nevertheless, baldly assert that vicarious liability is not available under the CFPA because vicarious liability is a "creature of tort" and the CFPA is not a "tort statute."[162] As noted above, however, the Supreme Court has repeatedly held that the common law rules are the "background against which Congress is normally presumed to have legislated when creating its own new causes of action," and "[a]bsent

---

159 *See Nat'l Collegiate Master Student Loan Tr.*, 2021 WL 5936404, at *4 (passive securitization trusts can be liable under the CFPA for contracting with a third party to collect debts on its behalf).

160 *See Standard Distributors v. FTC*, 211 F.2d 7, 15 (2d Cir.1954)("since the principal has selected the agent to act in a venture in which the principal is interested, it is fair, as between him and a third person, to impose upon him the risk that the agent may exceed his instructions- subject, indeed, to limits, vaguely left open, upon his 'apparent authority."). *See, e.g., FTC v. Stefanchik,* 559 F.3d 924, 930 (9th Cir. 2009); *Sw. Sunsites, Inc. v. FTC*, 785 F.2d 1431, 1438 (9th Cir. 1986); *Goodman v. FTC*, 244 F.2d 584, 591–593 (9th Cir. 1957); *FTC v. Med. Billers Network, Inc.,* 543 F. Supp. 2d 283, 319-20 (S.D.N.Y. 2008); *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 527–28 (S.D.N.Y. 2000) (citing *Standard Distrib.*, 211 F.2d at 13); *FTC v. Partners In Health Care Ass'n, Inc.*, 189 F. Supp. 3d 1356, 1365 (S.D. Fla. 2016); *FTC v. Inc21.com Corp.*, 688 F. Supp. 2d 927, 939 (N.D. Cal. 2010).

161 *See* 15 U.S.C. § 45(a)(1); *see, e.g., Gordon,* 819 F.3d at 1192–94 (looking to FTC case law to interpret deception under the CFPA); *NDG Fin. Corp,* 2016 WL 7188792, at *14 (same).

162 Dkt. No. 30-1 at 20-24; Dkt. No. 31-1 at 22-23.

express language to the contrary," such common law principles apply.[163] A court need not conclude that a federal statute creates an action sounding in tort to conclude that common law principles such as vicarious liability are still available.[164] Moreover, the test for whether a federal cause of action "sounds basically in tort" could be interpreted to include the CFPA – the Supreme Court has looked to whether a statute creates a "cause of action analogous to tort actions available at common law" and whether the available relief is traditionally available at common law.[165] In any event, there is no need for this Court to decide that question because vicarious liability is frequently applied to federal causes of action.[166] And other courts have relied on common law and tort concepts in interpreting the plain language of the CFPA.[167]

---

[163] *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020) (concluding common law causation rules apply to federally created causes of action such as anti-discrimination suits); *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165–66 (2007) (elements of cause of action under Federal Employers' Liability Act are "determined by reference to the common law" absent contrary language).

[164] *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016), as revised (Feb. 9, 2016) ("under federal common-law principles of agency, there is vicarious liability for TCPA violations" without reaching whether action sounded in tort).

[165] *Curtis v. Loether*, 415 U.S. 189, 195-96 (1974) (fair housing action under Civil Rights of 1968 sounds in tort); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999) (actions under 42 U.S.C. § 1983 "provides relief for invasions of rights protected under federal law," claims under that statute "sound in tort").

[166] *Meyer*, 537 U.S. at 285 (vicarious liability incorporated as legal background under Federal Housing Act); *Burlington*, 524 U.S. at 760 (deciding an employer's vicarious liability under Title VII based on common law agency principles).

[167] *CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 920 (S.D. Ind. 2015) (interpreting "reasonable reliance" requirement in CFPA in accord with its meaning as a "familiar concept in tort law").

Defendants' general contentions that vicarious liability is not available to the federal government in civil enforcement actions are similarly without merit.[168] There is simply no support for this proposition in the single case cited by Defendants.[169] Defendants are also incorrect that federal agencies cannot use vicarious liability under the FDCPA because Congress did not explicitly recognize this theory in the statute. As explained above, courts assume vicarious liability is authorized unless Congress has explicitly excluded it from a statute.[170] Likewise, Defendants' arguments that vicarious liability could result in multiple recoveries and inconsistent judgments are at best premature.[171] To the extent there is any genuine risk of multiple recoveries, this issue can be sorted out in later stages of the litigation when the scope of Defendants' conduct is established. After discovery, the parties (and the Court) will be in a better position to determine whether Defendants made full refunds to any harmed consumers and assess any other facts relevant to avoiding multiple recoveries.

Finally, Defendants assert that the CFPA's "substantial assistance" clause would be rendered superfluous if vicarious liability is applied to the CFPA.[172] Not only do Defendants fail to cite any legal authority for this principle, elsewhere in their brief,

---

[168] Dkt. No. 30-1 at 21-22. In fact, courts have applied vicarious liability to government enforcement actions. *See supra* n. 159. *Cf. Nat'l Collegiate Master Student Loan Tr.*, 2021 WL 5936404, at *4 (denying defendants' motion to dismiss because they are covered persons despite being a trust that can take no action on its own).

[169] *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016).

[170] *See supra* at 41.

[171] Dkt No. 30.1 at 22-23.

[172] Dkt. No. 30-1 at 23-24; Dkt No. 31-1 at 22.

Defendants acknowledge that substantial assistance and vicarious liability are "two very different theories,"[173] with different requirements and applications.

Defendants have thus failed to establish that the Bureau cannot, as a matter of law, plead vicarious liability under the CFPA and FDCPA.

**2. The Bureau adequately pleads that Defendants are liable for the Debt Collectors' legal violations.**

In the Amended Complaint, the Bureau alleges that Defendants are liable for legal violations by their agents, the Debt Collectors with whom Defendants placed debt for collection (the Placement Debt Collectors).[174] Defendants incorrectly suggest that the Bureau is alleging vicarious liability for the conduct of the Debt Collectors to whom they sold debt.[175] The Bureau does not make that allegation.[176]

"'[T]raditional vicarious liability rules' ordinarily make principals liable for acts of their agents merely when the agents act 'in the scope of their authority.'"[177] The

[173] Dkt No. 30.1 at 20-21.

[174] Dkt. No. 16 at ¶¶ 171, 175, 196.

[175] Dkt No. 31.1 at 20.

[176] Dkt. No. 16 at ¶¶ 171, 175, 196 (referencing placement Debt Collectors).

[177] *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 517 (S.D.N.Y. 2013) (quoting *Meyer,* 537 U.S. at 285). *See also Plummer*, 66 F. Supp. 3d at 493 ("Under traditional agency principles, vicarious liability does not require specific acts of control, but rather allows for principals to be held liable for the acts of their agents when the agents are acting 'in the scope of their authority.'") (citations omitted); *Med. Billers Network, Inc.,* 543 F. Supp. 2d at 319 ( "[t]he law is clear that under the FTC Act, a principal is liable for misrepresentations made by his/her agents (i.e., those with the actual or apparent authority to make such representations)"); *Five-Star*, 97 F. Supp. 2d at 527 ( "The law is clear that under the FTC Act, a principal is liable for misrepresentations made by his/her agents (i.e., those with the actual or apparent authority to make such representations)"). This is consistent with the Ninth Circuit's application of agency law to the FTC Act. *See Goodman*, 244 F.2d at 592 (" the principal

agents' authority could be apparent or actual.[178] At the pleadings stage, some courts have noted that "it is a reasonable inference that one debt collector undertaking debt collection activities on behalf of another is acting within the scope of its authority."[179] Here, as is described *supra* at 26-28, the Bureau has done just that. The Amended Complaint alleges that UHG and JTM are "debt collectors" under the FDCPA. The Placement Debt Collectors are also "debt collectors" because they "regularly collect[] or attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[180] Further, as described below, the Bureau also specifically alleges that the Debt Collectors acted with apparent and actual authority.[181]

**a. The Bureau alleges that the Debt Collectors acted with apparent authority.**

The Amended Complaint specifically alleges that the Placement Debt Collectors

---

is bound by the acts of the salesperson he chooses to employ, if within the actual or apparent scope of his authority, even when unauthorized."). There is a second line of cases regarding vicarious liability under the FDCPA that state "[t]o be vicariously liable under the FDCPA, however, "the 'principal' must exercise control over the conduct or activities of the 'agent.'" *See Bodur*, 829 F. Supp. 2d at 259 (quoting *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1173 (9th Cir.2006)). This line of cases appears to follow *Clark,* which was a fundamentally different case since the plaintiff was attempting to hold an agent liable for the conduct of a principal. *Clark,* 460 F.3d at 1173. Further, it overstates that the important feature in an agency is the right to control, not that it the control is exercised. *See* Restatement (Third) Of Agency § 1.01 comment(c) (2006).

[178] *See Med. Billers Network, Inc.,* 543 F. Supp. 2d at 319; *Five-Star,* 97 F. Supp. 2d at 527; *Goodman*, 244 F.2d at 592.

[179] *Plummer,* 66 F. Supp. 3d at 493-94 (citing *Fritz v. Resurgent Cap. Servs., LP*, 955 F. Supp. 2d 163, 177 (E.D.N.Y. 2013)). *But see Nichols v. Niagara Credit Recovery, Inc.,* No. 5:12-CV-1068, 2013 WL 1899947, at *5 (N.D.N.Y. May 7, 2013).

[180] 15 U.S.C. § 1692a(6).
[180] 15 U.S.C. § 1692a(6).
[181] *See* Dkt. No. 16 at ¶¶ 99-101, 103, 105-106, 127-137, 156, 158, 162.

acted with apparent authority. "Apparent authority arises from the 'written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him."[182] Contrary to Defendants' contentions,[183] the doctrine does not require that a Placement Debt Collector pretend to be one of the Defendants. A Placement Debt Collector merely has to appear to be acting on its principal's behalf because of Defendants' actions or words.[184] The Bureau alleges that Defendants contracted with the Debt Collectors to collect debt on behalf of UDH, JTM, and UHG and supplied the Debt Collectors with information necessary to discuss debt with consumers.[185] The Placement Debt Collectors then used that information to collect from consumers.[186] In some instances, the Placement Debt Collectors told consumers they were collecting on behalf of UDH, JTM or UHG, and in some instances Defendants directed consumers back to the Placement Debt Collectors to resolve matters,[187] which

---

[182] *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 69 (2d Cir. 2003) (citations and quotations omitted).

[183] Dkt. No. 30.1 at 25; Dkt. No. 31.1 at 21.

[183] Dkt. No. 30.1 at 25; Dkt. No. 31.1 at 21.

[184] *See Gomez v. Resurgent Cap. Servs., LP*, 129 F. Supp. 3d 147, 157 (S.D.N.Y. 2015) ("Where a ground-level debt collector contacts a consumer, claiming that it **is acting on behalf of an assignee** that has purchased his or her debt, the collector acts on behalf of assignee and represents to the consumer that it has the assignee's permission to do what it does. The assignee, as the party whose authority the ground level debt collector is utilizing and the party who stands to benefit from any aggressive tactics, can be held liable under traditional common-law principles.")(emphasis supplied).

[185] Dkt. No. 16 at ¶¶ 127-128.

[186] Dkt. No. 16 at ¶ 130.

[187] Dkt. No. 16 at ¶¶ 131-132.

signaled to consumers that those Placement Debt Collectors were acting on behalf of Defendants. Thus, the Bureau adequately alleges the Placement Debt Collectors acted with apparent authority.

**b. The Bureau alleges that the Debt Collectors acted with actual authority.**

The Amended Complaint also adequately alleges that the Placement Debt Collectors acted with actual authority. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."[188] The Bureau alleges that the Corporate Defendants, at the direction of the Individual Defendants, entered agreements with the Placement Debt Collectors to collect on behalf of UDH, JTM, and UHG.[189] The Corporate Defendants authorized the Placement Debt Collectors to contact consumers directly.[190] The Bureau further alleges that, over a series of years, UDH, JTM and UHG placed debt with Placement Debt Collectors who made false threats of litigation and false statements about credit reporting during conversations with consumers.[191] The Placement Debt Collectors made these misrepresentations during the calls that they had actual authority to make on the Corporate Defendants behalf (since they were hired and

---

188 Restatement (Third) Of Agency § 2.01 (2006). *Precedo Cap. Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 253 (S.D.N.Y. 2014) ("[C]onsent for actual authority may be either express or implied from the parties' words and conduct as construed in light of the surrounding circumstances.")(quotation marks and citations omitted).

189 Dkt. No. 16 at ¶ 127.

190 Dkt. No. 16 at ¶ 129.

191 Dkt. No. 16 at ¶¶ 138-149.

authorized to make these calls). Further, the Bureau alleges that despite receiving evidence of these violations, Defendants continued to place debt with the same Placement Debt Collectors.[192] As a result, the Placement Debt Collectors were acting with actual authority and within the scope of this authority when they made the misrepresentations.[193] Indeed, the Amended Complaint goes even further and alleges that Defendants had the right to control the Placement Debt Collectors. Specifically, the Amended Complaint alleges that Defendants gave the Placement Debt Collectors written guidance and had the authority to provide interim instructions, and to terminate their work on Defendants' debt.[194] In sum, there can be no question that the Bureau adequately pleads that the Placement Debt Collectors acted with actual authority.

Finally, UHG contends that the Amended Complaint contains no facts that connect UHG with the illegal conduct, so it cannot be vicariously liable.[195] UHG apparently ignores the paragraphs in the Amended Complaint that allege that UHG placed debt with the Debt Collectors who made misrepresentations about lawsuits and false statements about credit reporting.[196]

---

192 Dkt. No. 16 at ¶ 158.

193 *See Five-Star*, 97 F. Supp. 2d at 527-28 (principal liable for misrepresentations made by those it authorized to distribute marketing material while they were conducting those activities).

194 Dkt. No. 16 at ¶¶ 134-137.

195 Dkt. No. 30-1 at 6, 25.

196 Dkt. No. 16 at ¶¶ 142, 147.

**E. Rule 8: The Amended Complaint complies with Rule 8.**

Defendants object that the Amended Complaint does not provide adequate notice of the Bureau's claims under Federal Rule of Civil Procedure 8.[197] Defendants both overstate the requirements of Rule 8 and understate the contents of the Amended Complaint, thus their objections are without merit. Even assuming, without conceding, that Defendants were entitled to more information, the appropriate request would be for a more definite statement pursuant to Rule 12(e), not, as Defendants would have it, a dismissal under Rule 8.[198]

In the Amended Complaint, the Bureau describes Defendants as a group of entities that collectively placed more than 6.5 million accounts from September 2017 through April 2020, and sold still more accounts.[199] Since 2015, Defendants have received hundreds of consumer complaints about the misrepresentations alleged in the Amended Complaint, as well as recorded phone calls containing the misrepresentations (all of which Defendants sent to the Bureau in pre-suit discovery).[200] Despite the volume of this information and Defendants' ability to access the complaints and calls themselves, Defendants incorrectly contend that Rule 8 requires the Bureau to plead the dates of the misrepresentations, the names of the individual Debt Collectors, and the specific words used in the false and misleading statements.[201] Defendants overstate the

---

[197] Dkt. No. 31-1 at 26-31; Dkt. No. 30-1 at 11-20.

[198] *Strine v. Marion Cent. Sch. Dist.*, 280 F. Supp. 2d 75, 80 (W.D.N.Y. 2003).

[199] Dkt. No. 16 at ¶¶ 16, 29, 45, 115.

[200] Dkt. No. 16 at ¶¶ 150, 153, 156.

[201] Dkt. No. 31-1 at 27-29; Dkt. No. 30-1 at 14-16, 19-20.

burden of Rule 8, which requires that a complaint contain a "short and plain statement" showing "plausible" entitlement to relief, "*not* detailed factual allegations."[202] The Bureau alleges the types of misrepresentations, the general content of the misrepresentations, and the time frame during which those misrepresentations were made.[203] The Amended Complaint also contains facts showing Defendants' ability to control the Debt Collectors and Defendants' knowledge of, or reckless indifference to, the Debt Collectors' ongoing misrepresentations.[204] The Bureau's allegations thus satisfy Rule 8.

Defendants, nonetheless, assert that the Amended Complaint is impermissibly vague because it lumps all or some of the Defendants together in various allegations.[205] To the contrary, a closer reading of the Amended Complaint shows that it carefully sets out which Corporate Defendants are alleged to be responsible for which conduct despite the fact that the Corporate Defendants are almost inextricably intertwined and "have operated as a single entity under control of the Individual Defendants since at least mid-2017."[206] As to the Individual Defendants, the Amended Complaint devotes pages to

---

[202] *Haughton v. Cognisight, LLC*, 953 F. Supp. 2d 478, 483 (W.D.N.Y. 2013) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

[203] Dkt. No. 16 ¶¶ 138-43, 147-49, 150-51.

[204] Dkt. No. 16 ¶¶ 134-37, 153-57, 160. Although the Bureau does not believe further amendment is needed, if the Court disagrees, the Bureau requests that it be given an opportunity to seek leave to amend.

[205] Dkt. No. 30-1 at 12-14; Dkt. No. 31-1 at 26-27.

[206] Dkt. No. 16 at ¶¶ 125, 138, 141-42, 147, 152. *See RD Legal Funding*, 332 F. Supp. 3d at 770-71 (refusing to dismiss a complaint on the basis of "lumping" the corporate defendants together and noting that the corporate defendants shared significant characteristics, including shared ownership and similar purposes); *Universal Debt,*

specific allegations about their roles in the businesses and other facts indicating each individual knew about the Debt Collectors' deceptive statements.[207]

**F. The Bureau's claims are not time-barred.**

In a motion to dismiss, a defendant may raise the affirmative defense that a claim is time-barred only if that defense is apparent from the face of the complaint.[208] Here, Defendants[209] cannot show based on the face of the Amended Complaint itself that the statute of limitations has run.

**1. The CFPA establishes the statute of limitations for the Bureau's FDCPA and derivative claims.**

Both the Bureau's FDCPA claim and its derivative claim (that is, the claim that the violation of the FDCPA also violated the CFPA) are subject to the CFPA's three-year

2015 WL 11439178, at *19 (allowing the Bureau to lump defendants together for purposes of the counts as long as the complaint contains particular allegations as to each defendant).

[207] Dkt. No. 16 at ¶¶ 55-96, 107-108, 157, 160-61.

[208] *Royal v. Ret. Bd. of the Bert Bell/Pete Rozelle NFL Ret. Plan*, No. 20-4184, 2021 WL 4484925, at *1 (2d Cir. Oct. 1, 2021) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.") (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) and *Ghartey v. St. J'hn's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)). *See also 839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Tr. Co. for First Franklin Mortg. Loan Tr. 2006-FF3, Mortg. Pass-Through Certificates, Series 2006-FF3*, No. 15-CV-4516, 2018 WL 4259867, at *4 (E.D.N.Y. Sept. 5, 2018) (quoting *Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 427 (S.D.N.Y. 2013).

[209] Defendants argued that some of the Bureau's claims are time-barred: the FDCPA and CFPA claims against JTM and UDH, Dkt. No. 31-1 at 31-35, and the CFPA claims against the Individual Defendants, Dkt. No. 30-1 at 33 (incorporating JTM and UDH's arguments by reference). UHG did not assert that any of the claims against it are time-barred. It is also worth noting that the Amended Complaint does not allege that UDH violated the FDCPA.

statute of limitations.[210] JTM and UDH incorrectly argue that the Bureau's FDCPA and derivative claims are subject to the one-year statute of limitations in Section 813 of the FDCPA, 15 U.S.C. 1692k (d).[211] Section 813, titled "Civil liability," specifically governs private actions under the FDCPA.[212] A different section, titled "Administrative enforcement," governs Bureau actions to enforce the FDCPA, and that section sets no limitations period for the Bureau's enforcement actions.[213] In addition, the FDCPA specifies that when the Bureau enforces violations of the FDCPA under the CFPA, those violations are "deemed" to be violations of the CFPA.[214]

Against this statutory backdrop, the district court in *CFPB v. Ocwen Financial Corp.* held that FDCPA claims brought by the Bureau are subject to the CFPA's three-year statute of limitations.[215] Courts in two other Bureau cases have also suggested that the "deeming" language in the FDCPA means that the CFPA's three-year statute of limitations applies when the Bureau enforces the FDCPA (though neither court ruled on

---

[210] 12 U.S.C. § 5564(g)(1).

[211] Dkt. No. 31-1 at 32-33.

[212] 15 U.S.C. § 1692k. Numerous courts have noted that the one-year statute of limitations is for FDCPA claims by private litigants. *See, e.g.*, *Delonte v. Duncan Sols., Inc.*, 606 F. App'x 839 (7th Cir. 2015) ("Private actions under the Fair Debt Collections Practices Act must be brought within one year of the date of the violation."); *Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-cv-1349, 2016 WL 9504253, at *2 (M.D. Fla. May 27, 2016) ("The statute of limitations for a private FDCPA claim is 'one year from the date on which the violation occurs.' 15 U.S.C. § 1692k(d).").

[213] 15 U.S.C. § 1692*l*.

[214] 15 U.S.C. § 1692*l*(c) .

[215] *CFPB v. Ocwen Financial Corp.*, No. 17-80495, 2019 U.S. Dist. LEXIS 152336, at *67-70 (S.D. Fla. Sept. 5, 2019).

the issue).[216] This interpretation is also consistent with longstanding guidance provided by the Federal Trade Commission on the FDCPA.[217]

The Bureau asserts a derivative claim under 12 U.S.C. § 5536(a)(1)(A). This provision makes it unlawful under the CFPA for Defendants to violate other federal consumer-financial laws. The FDCPA is a federal consumer-financial law.[218] Thus, the Bureau clearly alleges a violation of the CFPA, which is subject to the three-year statute of limitations in the CFPA.[219] This claim, while premised on an underlying FDCPA violation, would be available to the Bureau even if the FDCPA claim were time-barred (which it is not).

**2. Defendants have not established that it is clear from the face of the Amended Complaint that the CFPA claims are time-barred.**

The CFPA specifies that the Bureau may bring a CFPA-enforcement action within three years "after the date of discovery of the violation to which the action relates."[220] JTM, UDH, and the Individual Defendants erroneously argue that this language can mean either the actual date of discovery or "when a reasonably diligent plaintiff would

---

[216] *See CFPB v. Weltman, Weinberg & Reis Co.*, LPA, No. 1:17-817 CV 817, 2017 WL 4348916, *6-7 (N.D. Ohio Sept. 29, 2017); *Hanna*, 114 F. Supp. 3d at 1380. *But see ITT Educ. Servs.*, 219 F. Supp.3d at 922 (considered whether the statute of limitations in the Truth in Lending Act (TILA) or the CFPA applied to a Bureau action, and concluded that TILA's statute of limitations applied).

[217] *See* Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50109 (Dec. 13, 1988) (explaining that FDCPA's "one year statute of limitations applies only to private lawsuits, not to actions brought by a government agency").

[218] 12 U.S.C. § 5481(12)(H).

[219] 12 U.S.C. § 5564(g)(1).

[220] *Id.*

have discovered the violation."[221] Federal courts that have recently considered this question have squarely held that "the date of discovery" refers to the date the Bureau actually discovered the violation.[222]

Defendants have not established that it is clear on the face of the Amended Complaint that the Bureau discovered the CFPA violations more than three years before the Bureau filed this lawsuit. JTM, UDH, and the Individual Defendants cite two bases for claiming the CFPA's statute of limitations has run: the dates of certain complaints upon which the JTM, UDH, and the Individual Defendants allege that the Bureau's case is based[223] and various dates that appear in the Amended Complaint.[224] Their argument fails on both counts.

[221] Dkt. No. 31-1 at 33 (arguing that the claims against JTM and UDH are time-barred) (citing to *S.E.C. v. Wyly*, 788 F. Supp. 2d 92, 103 (S.D.N.Y 2001), which involves the discovery rule in fraud litigation generally and does not involve the CFPA). Dkt No. 30-1 at 33 (incorporating JTM and UDH's arguments by reference).

[222] *See Weltman*, 2017 WL 4348916, at *6 (concluding that the CFPA three-year statute of limitations "began to run when the Bureau discovered facts constituting the violation."); *CFPB v. Chou Team Realty LLC*, No. 8:20-cv-00043-SB-ADS, 2021 WL 4077110, at *5 (C.D. Cal. Aug. 10, 2021) ("[T]here is no 'constructive discovery' rule set forth in the statute—and Nesheiwat has not shown that the Court is free to engraft one onto it"). *But see CFPB v. Nationwide Biweekly Admin., Inc.,* No. 15-cv-02106-RS, 2017 WL 3948396, at *10 (N.D. Cal. Sept. 8, 2017) (applying the reasonably diligent plaintiff standard to CFPA without discussion of whether that is the appropriate standard).

[223] Dkt. No. 31-1 at 34; Dkt. No. 30-1 at 33 (incorporating JTM and UDH's arguments by reference).

[224] Dkt No. 31-1 at 31-32, 35; Dkt. No. 30-1 at 33 (incorporating JTM and UDH's arguments by reference).

First, JTM, UDH, and the Individual Defendants argue that "it appears that the Bureau's case was based on consumer complaints."[225] But the Bureau's Amended Complaint does not provide any basis for this assumption. Neither of the two paragraphs (paragraphs 143 and 151) cited by Defendants in making this argument refer to consumer complaints submitted to the Bureau or specify dates that the Bureau discovered the complaints.[226]

In any event, it is unlikely that the Bureau's receipt of consumer complaints alone would provide sufficient information to trigger the CFPA's limitations period. District courts that have considered this issue have concluded that consumer complaints submitted to the Bureau did *not* provide sufficient information for the Bureau to "discover" the violation for statute-of-limitations purposes. [227] The District Court for the Northern District of California noted, when applying the inquiry notice standard advocated by Defendants:

> "[f]or the statute of limitations to be running, the CFPB necessarily would have to be in possession of sufficient facts to file suit. Had [the] CFPB rushed into court .

[225] Dkt. No. 31-1 at 34; Dkt. No. 30-1 at 33 (incorporating JTM and UDH's arguments by reference).

[226] Dkt. No. 31-1 at 34; Dkt. No. 30-1 at 33 (incorporating JTM and UDH's arguments by reference). Paragraph 143 of the Amended Complaint includes quotations made by Debt Collectors during *phone calls* with consumers and paragraph 151 includes examples of complaints that *Defendants* received, as indicated in paragraph 150. Dkt. No. 16 at ¶¶ 143, 150, and 151.

[227] *Nationwide Biweekly*, 2017 WL 3948396, at *10 ("The notion that mere receipt of a consumer complaint can trigger the statute of limitations against the CFPB is unsupported by any authority and would be unworkable. At most, a credible and specific consumer complaint might in some circumstances serve as a 'storm warning' and put the CFPB on 'inquiry notice' that it should begin investigating.'" (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010)). *See also Chou Team Realty*, 2021 WL 4077110, at *5 (holding that consumer complaints submitted to the CFPB and FTC did not trigger the CFPA statute of limitations period).

> . . with a complaint based on no information other than the consumer complaint received the prior day, it would have been a clear violation of Rule 11. Plainly, the statute was not yet running."[228]

Even if it were possible that a particularly detailed and well-documented consumer complaint or collection of consumer complaints could start the statute of limitations period, the Amended Complaint does not contain, and Defendants do not supply, any details about any such consumer complaints that supposedly triggered the limitations period. Without those details, it is not possible for the Court to conclude that the Bureau's claims are time-barred.

Second, JTM, UDH, and the Individual Defendants assert that allegations in the Amended Complaint addressing when their illegal conduct occurred establishes that the Bureau's CFPA claims are time-barred.[229] But the relevant reference point for purposes of the CFPA's statute of limitations is when the Bureau discovered the violations, not when the violations occurred.[230] Defendants have not argued, much less established, that it is clear from the face of the Amended Complaint when the Bureau actually discovered Defendants' violations of law. Thus, the Court should reject Defendants' arguments for dismissal.

---

[228] *Nationwide Biweekly*, 2017 WL 3948396 at *10.

[229] Dkt No. 31-1 at 31-32, 35; Dkt. No. 30-1 at 33 (incorporating JTM and UDH's arguments by reference).

[230] 12 U.S.C. § 5564(g)(1). *See Chou Team Realty LLC*, 2021 WL 4077110, at *5 (C.D. Cal. Aug. 10, 2021) (C.D. Cal. Aug. 10, 2021) (CFPA statute of limitations period "begins to run only after the date of discovery of the violation to which an action relates") (citations omitted).

Dated: April 21, 2022

Respectfully submitted,

Eric Halperin
*Enforcement Director*

Richa S. Dasgupta
*Deputy Enforcement Director*

James T. Sugarman
*Assistant Litigation Deputy*

/s/ Vanessa Buchko
Lindsay Castanien
Vanessa Buchko
Stephanie Brenowitz
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Castanien): 202-435-9372
Telephone (Buchko): 202-435-9593
Telephone (Brenowitz): 202-435-9005
Fax: 202-435-7722
E-mail: Lindsay.Castanien@cfpb.gov
E-mail: Vanessa.Buchko@cfpb.gov
E-mail: Stephanie.Brenowitz@cfpb.gov
*Attorneys for Consumer Financial Protection Bureau*