UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Consumer Financial Protection Bureau

Plaintiff,

Case No.: 1:22-cv-29-LJV

vs.

Craig Manseth, Jacob Adamo, Darren Turco, United Debt Holding, LLC, JTM Capital Management, LLC, UHG, LLC, UHG I, LLC (also known as United Holding Group) and UHG II, LLC (collectively holding themselves out as United Holding Group, United Holding Group, LLC and United Holdings Group, LLC)

Defendants.

**DEFENDANTS UHG LLC, UHG I LLC, UHG II LLC, MANSETH, ADAMO, AND TURCO'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

Dated: Denver, Colorado
May 12, 2022

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**

Sarah J. Auchterlonie (pro hac vice)
410 Seventeenth Street
Suite 2200
Denver, CO 80202
Telephone: 303.223.1100
Facsimile: 303.223.1111
Email: sja@bhfs.com

**LIPPES MATHIAS LLP**

Brendan H. Little, Esq.
Richard M. Scherer, Jr., Esq.
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: 716-853-5100
Facsimile: 716-853-5199
Email: blittle@lippes.com
Email: rscherer@lippes.com

*Attorneys for UHG LLC, UHG I LLC, UHG II LLC, Manseth, Adamo, and Turco*

# TABLE OF CONTENTS


TABLE OF CONTENTS .......... III

TABLE OF AUTHORITIES .......... **ERROR! BOOKMARK NOT DEFINED.**

DEFENDANTS UHG LLC, UHG I LLC, UHG II LLC, MANSETH, ADAMO, AND TURCO'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS .......... 1

I. INTRODUCTION. .......... 1

II. THE FAC DOES NOT ESTABLISH STANDING FOR THE CFPB'S CLAIMS. .......... 1

A. The CFPB Fails to Plead Violations Traceable to UHG or the Individual Defendants. .......... 1

B. The CFPB Fails to Plead Redressability. .......... 3

III. THE FAC DOES NOT ALLEGE PLAUSIBLE AND ACTIONABLE CLAIMS. .......... 4

A. The FAC Does Not State Actionable Third-Party Liability Claims. .......... 6

1. The FDCPA Does Not Allow Vicarious Liability for an Uninjured Third-Party Plaintiff. .......... 6

2. The CFPA's Substantial Assistance Provision and Covered Person Requirements Preclude Vicarious Liability under the Act. .......... 7

B. The FAC Fails to Plead the Elements of the CFPB's Claims. .......... 9

1. The FAC Fails to Plausibly Allege the Agency Relationships between the Defendants and the Unnamed "Debt Collectors" Required for Vicarious Liability. .......... 9

2. The FAC Fails to Plausibly Allege Any, Let Alone All Three, Elements of Substantial Assistance under the CFPA. .......... 10

a. There are no primary violations alleged against UHG. .......... 10

b. The FAC pleads the wrong scienter and pleads facts disproving the applicable scienter. .......... 11

c. The FAC fails to plead that UHG and the individuals "facilitated" illegal conduct and, indeed, demonstrates the opposite of substantial assistance. .......... 12

C. The CFPB's Claims Also Fail because UHG and the Individual Defendants are Not "Covered Persons." .......... 13

D. The Claims Fail for Lack of Fair Notice and Violation of Due Process. .......... 13

IV. THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED. .......... 14

V. THE CFPB'S PLEA FOR REMEDIES IS IMPROPER. .......... 15

VI. CONCLUSION. .......... 15




24079535.10
DRAFT 05/12/22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angiulo v. Cty. of Westchester*,
No. 11-CV-7823 CS, 2012 WL 5278523 (S.D.N.Y. Oct. 25, 2012)........................................5

*SEC v. Apuzzo*,
689 F.3d 204 (2d Cir. 2012)..........................................................................................13

*Armstrong v. Jin*,
No. 18-CV-01380S(F), 2020 WL 1172168, at *2 (W.D.N.Y. Jan. 30, 2020), No. 18-CV-1380-JLS, *report and recommendation adopted*, 2020 WL 1171287 (W.D.N.Y. Mar. 10, 2020)............................................................................5

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983)........................................................................................................4

*Bodur v. Palisades Collection, LLC*,
829 F. Supp. 2d 246 (S.D.N.Y.2011)...............................................................................7

*CFPB v. Nat'l Collegiate Master Student Loan Tr.*
No. 1:17-CV-1323-SB, 2021WL 5936404, (D. Del. Dec. 13, 2021)...................................7, 8

*CFPB v. The Nat'l Collegiate Master Student Loan Tr.*,
Order at 2, No. 22-8010, ECF No. 19 (3d Cir. Apr. 29, 2022)..............................................8

*CFPB v. RD Legal Funding, LLC*,
332 F. Supp. 3d 729 (S.D.N.Y. 2018)........................................................................2, 11

*Clapper v. Amnesty Intern. USA*,
568 U.S. 398 (2013)........................................................................................................4

*Clark v. McDonald's Corp.*,
213 F.R.D. 198 (D.N.J. 2003)..........................................................................................4

*Consumer Fin. Prot. Bureau v. Universal Debt & Payment Sols., LLC*,
No. 1:15-CV-00859-RWS, 2015 WL 11439178 (N.D. Ga. Sept. 1, 2015)...........................8, 9

*In re Elan Corp. Sec. Litig.*,
543 F. Supp. 2d 187 (S.D.N.Y.2008)...............................................................................13

*SEC v. Espuelas*,
579 F. Supp. 2d 461 (S.D.N.Y. 2008)..............................................................................12

*FTC v. Five–Star Auto Club*,
97 F. Supp. 2d 502 (S.D.N.Y. 2000)....................15

*Frey v. Bekins Van Lines, Inc.*,
748 F. Supp. 2d 176 (E.D.N.Y. 2010) ....................3

*Gomez v. Resurgent Cap. Servs., LP*,
129 F. Supp. 3d 147 (S.D.N.Y. 2015)....................10

*Gracey v. J.P. Morgan Chase & Co., (In re Amaranth Natural Gas Commodities Litig.)*,
730 F.3d 170 (2d Cir. 2013)....................13

*United States v. Halper*,
490 U.S. 435 (1989)....................14

*Lanza v. Drexel & Co.*,
479 F.2d 1277 (2d Cir. 1973) (en banc)....................8

*SEC v. Lum's, Inc.*,
365 F. Supp. 1046 (S.D.N.Y. 1973)....................8

*Mastafa v. Australian Wheat Bd. Ltd.*,
No. 07 CIV. 7955, 2008 WL 4378443 (S.D.N.Y. Sept. 25, 2008)....................3

*McBeth v. Porges*,
171 F. Supp. 3d 216 (S.D.N.Y. 2016)....................5

*McCrobie v. Palisades Acquisition XVI, LLC*,
No. 115-CV-00018, 2019 WL 4023367 (W.D.N.Y. Aug. 23, 2019) ....................7

*Merriam v. Demoulas*,
No. CIV. A. 11-10577, 2013 WL 2422789 (D. Mass. June 3, 2013) ....................3

*Meyer v. Holley*
537 U.S. 280 (2003)....................6, 7

*SEC v. Mgmt. Dynamics, Inc.*,
515 F.2d 801 (2d Cir. 1975)....................5

*Miles v. Levac*,
No. 11–CV–671S, 2014 WL 1338808 (W.D.N.Y. 2014)....................3, 13

*Mullery v. JTM Cap. Mgmt., LLC*,
No. 18-CV-549, 2018 WL 8332821, at *4 (W.D.N.Y. Nov. 30, 2018), *report and recommendation adopted*, 2019 WL 2135484 (W.D.N.Y. May 16, 2019) ....................7

*Okyere v. Palisades Collection, LLC*,
961 F. Supp. 2d 508 (S.D.N.Y. 2013)....................................................................7

*Plummer v. Atl. Credit & Fin., Inc.*,
66 F. Supp. 3d 484 (S.D.N.Y. 2014)....................................................................7

*Privado Mktg. Grp. LLC v. Eleftheria Rest Corp.*,
No. 13-CV-3137-ER, 2014 WL 3377107 (S.D.N.Y. July 7, 2014)..................................11, 12

*Ramos v. Patrician Equities Corp.*,
765 F. Supp. 1196 (S.D.N.Y. 1991)....................................................................2

*Rapay v. Chernov*,
16-CV-4910 (DLC), 2017 WL 892372 (S.D.N.Y. Mar. 6, 2017) ..........................................15

*FTC v. Tax Club, Inc.*,
994 F. Supp. 2d 461 (S.D.N.Y. 2014)....................................................................15

*Whiteside v. Hover-Davis, Inc.*,
No. 19-CV-6026 CJS, 2020 WL 979785 (W.D.N.Y. Feb. 28, 2020), *aff'd*, 995 F.3d 315 (2d Cir. 2021)....................................................................5

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998)....................................................................11

*Youngs v. Comm'r of Soc. Sec.*,
No. 18-CV-119-FPG, 2019 WL 3083045 (W.D.N.Y. July 15, 2019)....................................15

*Zanotti v. Invention Submission Corp.*,
No. 18-CV-5893 (NSR), 2020 WL 2857304 (S.D.N.Y. June 2, 2020)....................................2

**Statutes**

12 U.S.C. § 5481....................................................................9

12 U.S.C. § 5536(a)(3)....................................................................9, 10

15 U.S.C § 78t(e) ....................................................................8

SEC Act Section 20 ....................................................................8, 9

SEC Act Section 20(e)....................................................................8

**Other Authorities**

Fifth Amendment....................................................................14

Rule 8(a)....................................................................4

Rule 9(b) ....................................................................................................11

Rule 12(b)(1)....................................................................................................3, 14

Rule 12(b)(6)....................................................................................................4, 6, 14

Rule 12(e)....................................................................................................4, 6

Rule 12(f) ....................................................................................................15

U.S. Const. Article III ....................................................................................................2, 3

**DEFENDANTS UHG LLC, UHG I LLC, UHG II LLC, MANSETH, ADAMO, AND TURCO'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants UHG LLC, UHG I LLC, and UHG II LLC, (collectively, "UHG")[1] and individual defendants Manseth, Adamo, and Turco (collectively, "individual defendants") submit this Reply to Plaintiff's Opposition to Defendants' Joint Motions to Dismiss, docket item 37 ("Opposition" or "Opp.") related to the First Amended Complaint, docket item 16 ("FAC") and UHG and individual defendants' Motion to Dismiss ("Dkt. 30"), docket item 30-1.

## I. INTRODUCTION.

The Opposition says nine times that the Bureau is "*not require[d]*" to identify any of the primary violators (i.e., the Debt Collectors), the existence or duration of their relationships (if any) with each defendant, the dates of any alleged violations, or each defendant's intentional participation in the alleged violation in order to support its third-party liability claims against the UHG companies and the individual defendants.[2] The Bureau is wrong. No Federal Rule of Civil Procedure exempts the government from satisfying the federal pleading requirements in this case. Due to the vague FAC and the Bureau's unwillingness to elucidate further, defendants are in the dark about which debt placements, sales, or consumer interactions the Bureau alleges were improper. This is despite the fact that the Bureau has already amended its complaint. As established in UHG's Mot. to Dismiss, Dkt. 30, this lack of clarity requires dismissal of all claims, and some claims must be dismissed with prejudice as a matter of law.

## II. THE FAC DOES NOT ESTABLISH STANDING FOR THE CFPB'S CLAIMS.

### A. The CFPB Fails to Plead Violations Traceable to UHG or the Individual Defendants.

The CFPB doubles down on its refusal to demonstrate a "causal nexus" that traces

[1] UHG LLC is the corporate parent of UHG I LLC and UHG II LLC.
[2] Opp. 9, 28, 29, n. 98, 36, 37, n. 151, n. 177, 48.

redressable injury to UHG and the individual defendants. It maintains that it need not name the primary violators or these entities' or persons' connection to each of the eight defendants. Opp. at 12. It also insists that it can lump defendants together to establish standing. The CFPB's cited authority, [3] however, is inapposite. Unlike in *RD Legal Funding*, where it argued that, "each Defendant engaged in the wrongdoing alleged in the Complaint," 332 F. Supp. 3d at 770, the corporate defendants here have different sets of owners with offices in different states, had different relationships with different collectors, and operated during different periods. Dkt. 30 at 13. For example, allegations about consumer complaints from 2014 shows that, because UHG did not exist until 2017, UHG definitely *did not* have a connection to at least some of the alleged actors. Dkt. 30 at 6. It is both impossible and implausible that all defendants engaged in the wrongdoing, thus the FAC's "lumping" fails to meet the standards under Rule 12(b)(1).

The CFPB says it pleads an injury traceable to each of the eight defendants because the FAC alleges that defendants' agents caused injury when collecting on defendants' behalf. Opp. at 12. First, this covers only the "Placement Collectors," and offers no nexus to the "Buyer Debt Collectors." And since the allegations of wrongdoing fail to distinguish between the two sets of Debt Collectors, it's impossible to trace a line between each defendant and each violator, much less to trace a line between a single defendants and a particular violation. Mere connectedness is insufficient to create standing. *E.g.*, *Ramos v. Patrician Equities Corp*., 765 F. Supp. 1196, 1199–1200 (S.D.N.Y. 1991) (plaintiff cannot avoid standing doctrine by alleging that all defendants were in a conspiracy and therefore a business relationship with one means that all can be sued). Second, the alleged agency relationship is a conclusion, which may not support standing. *Zanotti v. Invention Submission Corp*., No. 18-CV-5893 (NSR), 2020 WL 2857304, at

[3] *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729 (S.D.N.Y. 2018).

*8 (S.D.N.Y. June 2, 2020) ("Plaintiffs' broad allegations of conspiracy with no factual underpinning are nothing more than conclusory assertions that cannot give rise to Article III standing.").

Next, the CFPB argues that merely pleading "aiding and abetting liability 'is sufficient for purposes of Article III'".[4] First, note that the FAC does not use the phrase "aiding or abetting," so the argument is inapt. Rather, its claims arise under the CFPA's "substantial assistance" provisions, which require scienter *and* proof of a predicate violation by a "covered person." Opp. 25. It cites *Mastafa v. Australian Wheat Bd. Ltd.*, wherein victims of the Saddam Hussein regime sued defendants on a common-law aiding and abetting theory for paying to Hussein wheat transport fees that were subject to sanctions. *Id.* It also cites *Merriam v. Demoulas*, which involved a failure of "co-fiduciary" duty under federal ERISA law. *Id*. These cases prove the contra to the CFPB's argument: they identify the primary violators and the violators' relationship to defendants; and they also identify the duty required by the defendant—one was to honor the sanctions against Iraq and the other was to follow ERISA that conferred co-fiduciary duty. *Infra* n. 4. In comparison, the FAC lacks these facts and also fails to plead a violator who is a "covered person," as required to state a CFPA substantial assistance claim. Accordingly, the FAC must be dismissed under Rule 12(b)(1).

**B. <u>The CFPB Fails to Plead Redressability.</u>**

The Bureau does not allege any facts from which the Court could plausibly infer that UHG poses a concrete risk of future harm to consumers. Indeed, its Opposition does not address

[4] Opp. 12, n. 15, citing *Mastafa v. Australian Wheat Bd. Ltd.*, No. 07 CIV. 7955, 2008 WL 4378443, at *2 (S.D.N.Y. Sept. 25, 2008); *Merriam v. Demoulas*, No. CIV. A. 11-10577, 2013 WL 2422789, at *4 (D. Mass. June 3, 2013).

how UHG's continued operation entitles the Bureau to injunctive relief against the company.[5] Opp. 13. Likewise, the FAC and Opposition never state that violations enriched the defendants—the CFPB only alleges that defendants *generally* received payments on accounts they owned or sold. FAC ¶ 133. But it does not state that UHG profited from a violation. Courts cannot assume that a plaintiff can prove facts beyond those alleged in the complaint. *See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Standing for injunctive relief fails because the FAC shows that future injury is too speculative. *See Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 401 (2013). The CFPB invites the Court to accept that merely contracting with someone who previously—and possibly only once—received an unadjudicated, informal complaint from a consumer will automatically lead to further violations or caused harm *by defendants*. FAC ¶¶ 158-159. The Court should decline this invitation and dismiss the CFPB's injunctive and monetary relief claims for lack of standing.

## III. <u>THE FAC DOES NOT ALLEGE PLAUSIBLE AND ACTIONABLE CLAIMS.</u>

The FAC is impermissibly vague and fails under Rule 8. The Bureau contends that the FAC meets Rule 8(a)'s requirements because it outlines a seven-year period of business activity, and the eight defendants have fair notice of claims because they have the "ability to access the complaints and calls themselves." Opp. at 51. But the Bureau bears the burden to plead actionable claims; it cannot require each defendant to guess as what the Bureau thinks it or he did wrong. *See, e.g.*, *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 234 (D.N.J. 2003) (considering defendants' alternative 12(b)(6) and 12(e) motions and holding that without

[5] Therefore, for purposes of this motion, that argument is conceded. *See Miles v. Levac*, No. 11–CV–671S, 2014 WL 1338808, *3 (W.D.N.Y. 2014) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them"); *Frey v. Bekins Van Lines, Inc*., 748 F. Supp. 2d 176, 182 (E.D.N.Y. 2010) ("Plaintiffs have not responded to this argument, and the court therefore deems the matter to be conceded.").

amendment, "McDonald's is simply left to guess as to which of its remaining 2945 restaurants are alleged to violate the ADA"). Guessing games violate Rule 8 and require dismissal.

The Opposition does not contradict UHG's assertions that the FAC's allegations are conclusory. Nor does it support why the Bureau's *ipse dixit* is sufficient or that its conclusions are entitled to more deference than what a private litigant would receive. To illustrate, the Opposition entreats the Court to accept as facts myriad conclusory statements: unnamed Debt Collectors "made false threats of litigation" and made "false statements about credit reports"; the predicate violators were "the same" as previous violators; and that defendants had "no imminent plan to sue the consumers threatened." Opp. at 15, 21. No private plaintiff could advance a case to discovery on such threadbare assertions, and courts often dismiss complaints like the one before this Court.[6] Conclusory allegations are not entitled to deference and do not establish a plausible claim for relief. *Armstrong v. Jin,* No. 18-CV-01380S(F), 2020 WL 1172168, at *2 (W.D.N.Y. Jan. 30, 2020), *report and recommendation adopted*, No. 18-CV-1380-JLS, 2020 WL 1171287 (W.D.N.Y. Mar. 10, 2020). A federal agency with three years of administrative discovery is not entitled to more leniency on the pleading requirements than an individual consumer with no such discovery. *See SEC v. Mgmt. Dynamics, Inc*., 515 F.2d 801, 808 (2d Cir. 1975) ("We scarcely mean to imply that judges are free to set to one side all notions of fairness because it is the SEC, rather than a private litigant, which has stepped into court.").

---

[6] "[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Whiteside v. Hover-Davis, Inc.*, No. 19-CV-6026 CJS, 2020 WL 979785, at *3 (W.D.N.Y. Feb. 28, 2020), *aff'd*, 995 F.3d 315 (2d Cir. 2021) (citing *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted)); *see also, McBeth v. Porges*, 171 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) (under *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal*).

The use of generalized allegations prejudices UHG because the FAC alleges violations spanning from 2015 to 2021, but according to the FAC, UHG did not begin placing accounts for collection until 2017 or 2018. FAC ¶¶ 49, 142. Furthermore, the FAC does not connect UHG to the few telephone calls with consumers alleged in the complaint. And those few calls alleged with detail raise more questions than answers. Dkt. 30 at 15-20. Finally, each consumer call is inherently unique. One cannot extrapolate the elements of deception—a representation, omission or practice that is likely to mislead the consumer—from a handful of undated and anonymous complaints and two isolated examples. Dkt. 30 at 18-19. Whether addressed under Rule 12(b)(6) or 12(e), the FAC is fatally vague and cannot stand as pleaded.

**A. The FAC Does Not State Actionable Third-Party Liability Claims.**

The Bureau admits in its Opposition that neither of its vicarious liability theories under the FDCPA or CFPA are established in the statutes it enforces. Opp. at 41.

1. The FDCPA Does Not Allow Vicarious Liability for an Uninjured Third-Party Plaintiff.

The Bureau seeks to apply "extraordinary" principles of common law to the FDCPA, which contradicts the precedent it cites. The Bureau argues that common law principles are presumed to be incorporated into the FDCPA—and that if vicarious liability is not excluded from a statute, it is included. Opp. at 41. It cites *Meyer v. Holley* for the proposition that statutes are legislated against the background of ordinary tort principles. 537 U.S. 280, 285 (2003); Opp. at 41, n. 154. But the CFPB omits that the Supreme Court expressly held that Congress intended to apply *ordinary* background tort principles, which the Court expressly states as, "in the absence of special circumstances, it is the corporation, not its owner or officer, who is the principal or employer subject to vicarious liability for the torts of its employees or agents." *Id.* at 285-86 (emphasis added). Specifically, Congress presumes *respondeat superior*. Here, the CFPB seeks

to impose vicarious liability on a company (and owners of said company) that did not have a contractual or employment relationship *with a third party's* deleterious employee. *Id.* at 285-86.

While the Bureau cites some authority where district courts found vicarious liability in private FDCPA lawsuits, these cases can be distinguished because the alleged "principal" had performed a negligent act that led to the harm, or the primary actor was an attorney representing the alleged principal.[7] These situations represent relationships and scopes of authority that differ from this case. Most importantly, none of those plaintiffs were government filers or an uninjured third-party suing on behalf of another. This distinction is critical because vicarious liability by a government plaintiff raises standing, inconsistent judgement, and multiple recovery issues. Opp. at 45. Here, the Bureau's refusal to identify a single predicate violator deprives both defendants and this Court of the ability to evaluate standing, inconsistent judgement, and multiple recovery issues. In fact, the Bureau's omission of primary violators may be designed specifically to obfuscate these serious issues. *See* FAC ¶163.

2. <u>The CFPA's Substantial Assistance Provision and Covered Person Requirements Preclude Vicarious Liability under the Act.</u>

The Bureau asserts that the CFPA allows vicarious liability despite the statute's express provisions for "related persons" and "substantial assistance." Opp. at 43. Yet, the Bureau overstates the authority in support of its argument. At page 43, n. 159, the Opposition says the

[7] *Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 493 (S.D.N.Y. 2014) (debt-buyer placed account with debt collector but did not inform collector that consumer was represented by attorney); *Mullery v. JTM Cap. Mgmt., LLC*, No. 18-CV-549, 2018 WL 8332821, at *4 (W.D.N.Y. Nov. 30, 2018), *report and recommendation adopted*, 2019 WL 2135484 (W.D.N.Y. May 16, 2019) (same); *McCrobie v. Palisades Acquisition XVI, LLC*, No. 115-CV-00018, 2019 WL 4023367, at *4 (W.D.N.Y. Aug. 23, 2019) (defendant collected on debt it did not own); *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 516 (S.D.N.Y. 2013) (judgment procured based on a false affidavit of service in lawsuit), *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 258-59 (S.D.N.Y.2011) (primary actor was a "law firm" hired by a debt collector).

court in *CFPB v. Nat'l Collegiate Master Student Loan Tr*., "recognized that parties may be vicariously liable," under the CFPA. No. 1:17-CV-1323-SB, 2021 WL 5936404, at *4, (D. Del. Dec. 13, 2021). To the contrary, the *Nat'l Collegiate* court refused to decide the issue. *Id.* (stating only "Maybe so" regarding whether the substantial assistance provision displaces common-law vicarious liability). Thus, there is no authority on the instant issue, and this Court should look to the most analogous law interpreting the most analogous statute: the SEC Act.

Holding that the CFPA does not authorize vicarious liability outside its expressed scope is consistent with the Second Circuit's interpretation of similar securities provisions. The Second Circuit rejects vicarious liability in the context of Securities Act Section 20 violations. *SEC v. Lum's, Inc*., 365 F. Supp. 1046, 1063 (S.D.N.Y. 1973) (citing *Lanza v. Drexel & Co*., 479 F.2d 1277 (2d Cir. 1973) (en banc)). These courts have held that because the SEC Act expressed how third-party liability arises, common law applications are disallowed. *Id*. at 1062-64.

This Court should likewise reject common law third-party liability applications in the CFPA's "substantial assistance" provision because the SEC Act 20(e) is its model. As the Opposition correctly notes, because the CFPA's substantial assistance provision mirrors a parallel provision establishing aiding and abetting liability under the Securities Exchange Act (15 U.S.C § 78t(e)), courts look to securities cases for guidance in interpreting the CFPA's provision. Opp. at 25 (citing *Universal Debt*, 2015 WL 11439178, at *12). The FTC Act, in contrast, lacks a "substantial assistance" provision like that contained in the CFPA at 12 U.S.C. § 5536(a)(3).[8] Moreover, the CFPA is similar to the SEC Act because it also narrows those covered by the

[8] The CFPB points to the FTC Act, which allows vicarious liability. While the FTC Act may prohibit "deceptive" conduct, the FTC's authority is unlike the CFPB's because it is not limited to "covered persons" (or any types of persons other than those in commerce) and the FTC Act lacks a "substantial assistance" provision like that contained in the CFPA at 12 U.S.C. § 5536(a)(3). The FTC Act is therefore less analogous and instructive than the SEC Act.

statute. *Compare* 12 U.S.C. § 5481 (CFPA liability only for acts by "covered persons," or their "related persons"), with 15 U.S.C § 78t(a) ("control" or "controlled" persons). Accordingly, the CFPA should be read consistent with SEC Section 20, and the Court should reject common law vicarious liability under the CFPA.

Even more, the CFPB's deployment of vicarious liability should be rejected because it stretches further than *respondeat superior*. This is an "extraordinary" extension of common law that makes superfluous the substantial assistance provision and has multiple concomitant problems: standing, multiple recovery, and inconsistent judgments—which the Opposition did not address other than to ask for a delay. The Court, therefore, should dismiss with prejudice all counts in the FAC that turn on a vicarious liability theory: Counts I, IV, and V.

### B. The FAC Fails to Plead the Elements of the CFPB's Claims.

#### 1. The FAC Fails to Plausibly Allege the Agency Relationships between the Defendants and the Unnamed "Debt Collectors" Required for Vicarious Liability.

Even if a viable claim, the FAC does plead facts that show agency relationships. The Opposition clarified that Counts I, IV, and V do not derive from "the conduct of the Debt Collectors to whom [defendants] sold debt." Opp. at 46. But particularly regarding UHG, simply narrowing the claims to unnamed "Placement Debt Collectors" does not establish an agency relationship—or any relationship for that matter and Counts I, IV, and V can be dismissed.

First, the FAC alleges that some of the "Placement Debt Collectors," who are the primary violators, received placements from persons other than UHG:

- Placements before UHG was created and did business (Dkt. 30 at 6, 25);
- Placements from "downstream" Debt Collectors or "master servicers" (FAC ¶¶ 167, 171);
- Placements made by corporate co-defendants UDH or JTM (FAC ¶¶ 16, 29).

No plausible inferences from these facts make these primary violators agents of UHG.

Second, the CFPB does not—and cannot—allege that UHG or the individual defendants had relationships with the call agents who performed the predicate violations. Indeed, as the FAC recognizes, the corporate defendants did not employ call center employees. FAC ¶¶ 1.

Third, the term "agent" is conclusory. The Bureau has supplied no engagement agreements, no assignments, and no actual terms of retention between UHG and any third party. It merely states in its Opposition that an anonymous person collected "on behalf of" a defendant. Common-law agency requires that the agent affect the rights of the principal; nothing like this is alleged in the FAC. *See*, Dkt 30 at 25. Finally, the case cited, *Gomez v. Resurgent Cap. Servs., LP*, 129 F. Supp. 3d 147, 157 (S.D.N.Y. 2015), is inapposite because the "ground-level" debt collector here is not collecting on behalf of the account "assignee" (which is UHG), she collects on behalf of her employer, the collection call center. Indeed, the FAC alleges that the call center collects the entire amount from the consumer, and only later remits to UHG. FAC ¶ 100. While the Bureau *concludes* an agency relationship, the alleged facts do not *show* agency.

2. <u>The FAC Fails to Plausibly Allege Any, Let Alone All Three, Elements of Substantial Assistance under the CFPA.</u>

The Bureau agrees that a substantial assistance claim under CFPA § 5536(a)(3) (Counts II and III) requires: 1) a primary violation, (2) knowledge or reckless disregard of the violation, and (3) defendants' acts that substantially assist the primary violation. Opp. at 25. The CFPB cites one case where the court did not apply Rule 9(b) to substantial assistance claims. Opp. at 30. But, the *RD Legal Funding* case is a poor example because the CFPB actually pled the identity of the primary violators, the defendants' scienter, and the defendants' actions. *Infra* at 2. In any event, the FAC is so deficient, it fails to meet the more liberal 8(a) standard.

*a. There are no primary violations alleged against UHG or individual defendants by relation to UHG.*

The Bureau claims it pleaded predicate violations and cites FAC ¶¶ 138-152. These

paragraphs do not plead primary violations connected to UHG. First, the consumer complaint examples are about "debt that was sold by UDH or placed for collection by UDH." FAC ¶ 151. This excludes UHG and individual defendants via relation to UHG. The FAC does not identify any examples of phone calls concerning litigation threats about accounts owned by UHG. FAC ¶ 143. And the Debt Collectors who allegedly made representations about credit reporting are described disjunctively as, "Some of the Debt Collectors with which UDH, JTM, or UHG placed debt, or their downstream Debt Collectors…" FAC ¶ 147. The Bureau has thus failed to plead the first element of substantial assistance against UHG or the individual defendants by virtue of their relatedness to UHG. Counts II and III must be dismissed on this basis alone.

*b. The FAC pleads the wrong scienter and pleads facts disproving the applicable scienter.*

The FAC fails to plead the second substantial assistance element: knowledge or reckless disregard. The Opposition attempts to re-draft its pleading via memorandum to change how it alleged the requisite *scienter* element from the incorrect "knew or should have known" (*see* FAC ¶¶ 184, 189) to "knowledge or reckless disregard." This is not permitted under Federal Rules. *See Privado Mktg. Grp. LLC v. Eleftheria Rest Corp.*, No. 13-CV-3137-ER, 2014 WL 3377107, at *5, n. 10 (S.D.N.Y. July 7, 2014) ("[S]tatements contained in motion papers cannot be used to cure deficiencies in the pleadings.") (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). Counts II and III should therefore be dismissed for failure to plead a claim.

Even disregarding that the Bureau sought to plead its claims under an erroneous, less stringent standard, the FAC does not allege facts sufficient to establish the actual requirement that UHG knew about or had reckless disregard for misrepresentations. According to the FAC, UHG's supposed "knowledge" about the primary violations derives from *post hoc* consumer complaints about alleged threats of lawsuits and discussions about credit reporting. FAC ¶ 184.

In its Motion to Dismiss, UHG showed that complaints and calls are highly fact dependent and require context to assess whether a misrepresentation occurred. Dkt. 30 at 16-17. The FAC fails to allege such context or that UHG and individual defendants knew that context. *Id*. The CFPB responds that instead of requiring concrete facts, the Court should simply trust the Bureau's allegations that generally refute the truthfulness of the telephone calls. Opp. at 22. The FAC allegations cited, however, are both inadmissible hearsay by a non-witness (the CFPB) and conclusory. "Conclusory allegations do not support a strong inference of fraudulent intent." *SEC v. Espuelas*, 579 F. Supp. 2d 461, 474 (S.D.N.Y. 2008).

Finally, the Opposition does not show where in the FAC the knowledge of *past* acts equates to knowing about and facilitating a contemporaneous and reoccurring illegal practice. Opp. at 26-27. Even if misrepresentations happened, the facts here appear similar to those in *Espuelas*, 579 F. Supp. 2d at 484, where the court dismissed the substantial assistance claims because the defendants did not know the statements were incorrect before they were made and therefore could not have substantially assisted them.

*c. The FAC fails to plead that UHG and the individuals "facilitated" illegal conduct.*

The FAC fails to show UHG's motive to facilitate *illegal* collections versus *legal* collections. First, the Opposition fails to address UHG's arguments about facilitation, thus conceding the issue.[9] Second, even if the Court inferred a profit motive deriving from collection activity (legal or illegal), this is insufficient to support an inference of scienter to facilitate illegal conduct. *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 216 (S.D.N.Y.2008) ("Any corporation would be motivated to make a profit, to avoid bankruptcy, or to finance the

---

[9] Therefore, for purposes of this motion, that argument is conceded. *See Miles*, 2014 WL 1338808, at *3.

successful launch of a [] product. . . . These allegations do not support an inference of scienter.”).

Further, the CFPB has not proffered either in the FAC or its Opposition facts that allow evaluation of UHG’s asserted relationship to any primary violator and actions supposedly taken to further the violation, which is necessary to establish substantial assistance of a violation. The Second Circuit holds that these requisite facts consist of, “the alleged aider and abettor's knowledge of the primary violation, his intent to further it, and the actions supposedly undertaken to assist it, [which are] inherent in determining whether the defendant ‘in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, that he [sought] by his action to make it succeed.’” *Gracey v. J.P. Morgan Chase & Co. (In re Amaranth Natural Gas Commodities Litig.)*, 730 F.3d 170, 183 (2d Cir. 2013) (citing *SEC v. Apuzzo*, 689 F.3d 204, 212 (2d Cir. 2012)). In response to UHG’s argument that additional context is required to prove substantial assistance, the Opposition states, “[t]he Bureau is not required to plead this level of detail in order to adequately state a claim.” Opp. at 28. This stark position flies in the face of Second Circuit authority and suggests that a second amended complaint would be futile. Thus, the Court should dismiss Counts II and III with prejudice.

### C. <u>The CFPB’s Claims Also Fail because UHG and the Individual Defendants are Not “Covered Persons.”</u>

The FAC establishes that defendants are not “covered persons” under the CFPA, requiring dismissal of all claims under Rule 12(b)(1) and the CFPA claims under Rule 12(b)(6). In particular, as explained in JTM and UDH’s Reply, Congress did not intend for investors who “engage” “indirectly” in financial services to be covered persons. Dkt. 41 at 5-6.

### D. <u>The Claims Fail for Lack of Fair Notice and Violation of Due Process.</u>

The Fifth Amendment applies to all actions in which the federal government seeks to impose a penalty. *United States v. Halper*, 490 U.S. 435 (1989). Even if this Court concludes that

the CFPB has pleaded enough to state claims against defendants for unnamed third parties' bad acts, there is no precedent for the Bureau to obtain civil money penalties and a "permanent injunction" based on statements by another company's employees during isolated and unpredictable telephone calls over which defendants had no input. The Fifth Amendment guarantees that prior to being penalized for certain conduct, citizens are entitled to notice that such conduct is unlawful. Dkt. 30 at 29. This Court should mitigate this due process violation by dismissal without leave to amend.

## IV. THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED.

The Opposition makes several concessions concerning its claims against the individual defendants. First, the Bureau concedes that individual defendants did not participate in or direct any of the violations. Opp. at 33. Second, the claims against individual defendants exist solely from their roles as "related persons." Opp. at 32. Thus, if the corporate defendants are not "covered persons," and claims against the corporate defendants fail under Rules 12(b)(1) and 12(b)(6), derivative claims against Manseth, Turco, and Adamo must also be dismissed. *Cf.*, Opp. at 32. Third, the CFPB concedes that it has not alleged facts or a theory to pierce the corporate veil, establish successor liability, or common enterprise. Opp. at 32.

Notably, the CFPB does not respond to defendants' argument that the "control" test as set forth in *FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471 (S.D.N.Y. 2014) (citing *FTC v. Five–Star Auto Club*, 97 F. Supp. 2d 502, 535 (S.D.N.Y. 2000)), requires direct control over the primary violator in the absence of direct participation in the wrongful act. This concession is dispositive for the individual defendants since the FAC does not allege that individuals participated in telephone calls or even made tangential contributions, such as writing scripts or training. *See*, Opp. at 33. Individual defendants in this case are, by the Bureau's own allegations,

at least three steps removed from the primary violators. Therefore, they cannot be held individually liable for the acts of people they seemingly have never met and never controlled and all Counts against individual defendants, as applicable, should be dismissed.

## V. THE CFPB'S PLEA FOR REMEDIES IS IMPROPER.

The Bureau only addressed UHG's Rule 12(f) challenge in footnotes, and thus, the Bureau's objection should be ignored. *See Youngs v. Comm'r of Soc. Sec.*, No. 18-CV-119-FPG, 2019 WL 3083045; at *5, n. 6 (W.D.N.Y. July 15, 2019) ("[I]t is well-established that the Court need not consider arguments made only in footnotes."). The Bureau seeks relief in broad terms but did not plead facts supporting such relief. *Supra* at 3. Its prayers are thus immaterial and impertinent. Furthermore, broad obey-the-law injunctions are not allowed in this Circuit. *See Rapay v. Chernov*, 16-CV-4910(DLC), 2017 WL 892372, at *8 (S.D.N.Y. Mar. 6, 2017) (granting motion to strike requests for punitive damages and attorneys' fees, as both are unavailable as a matter of law). Striking the prayer for injunctive relief, in particular, will streamline the case and encourage early resolution.

## VI. CONCLUSION.

In sum, the eight defendants are not "covered persons," the CFPB lacks standing, it misstates the elements of its claims, its conclusory and vague allegations do not show facts that support the elements of the claims, and its legal theories are not cognizable or supported by Second Circuit precedent. Accordingly, the FAC must be dismissed against UHG and the individual defendants.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: S.J. Auchterlonie

Sarah J. Auchterlonie (pro hac vice)
410 Seventeenth Street
Suite 2200
Denver, CO 80202
Telephone: 303.223.1100
Facsimile: 303.223.1111
Email: sja@bhfs.com

LIPPES MATHIAS LLP

Brendan H. Little, Esq.
Richard M. Scherer, Jr., Esq.
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: 716-853-5100
Facsimile: 716-853-5199
Email: blittle@lippes.com
Email: rscherer@lippes.com

*Attorneys for UHG LLC, UHG I LLC, UHG II LLC, Manseth, Adamo, and Turco*