UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Consumer Financial Protection Bureau

Case No.: 1:22-cv-29-LJV

Plaintiff,

vs.

Craig Manseth, Jacob Adamo, Darren Turco, United Debt Holding, LLC, JTM Capital Management, LLC, UHG, LLC, UHG I, LLC (also known as United Holding Group) and UHG II, LLC (collectively holding themselves out as United Holding Group, United Holding Group, LLC and United Holdings Group, LLC),

Defendants.

**DEFENDANTS UNITED DEBT HOLDING LLC AND JTM CAPITAL MANAGEMENT, LLC'S JOINT REPLY MEMORANDUM IN SUPPORT OF THEIR MOTIONS TO DISMISS**

Defendants JTM Capital Management LLC ("JTM") and United Debt Holding LLC ("UDH") submit this Reply to Plaintiff's Opposition to Defendants' Joint Motions to Dismiss, docket item 37 ("Opposition" or "Opp."), related to the First Amended Complaint, docket item 16 ("FAC"), and JTM and UDH's Motion to Dismiss ("Dkt. 31."), docket item 31-1. Also, certain sections of this reply memorandum incorporate by reference the Reply filed by defendants UHG LLC, UHG I LLC, UHG II LLC, Manseth, Adamo, and Turco, docket item 40 ("UHG Reply").

Dated: Denver, Colorado
May 12, 2022

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**

Sarah J. Auchterlonie, Esq. (pro hac vice)
410 Seventeenth Street
Suite 2200
Denver, CO 80202
Telephone: 303.223.1100
Facsimile: 303.223.1111
Email: sja@bhfs.com

**LIPPES MATHIAS LLP**

Brendan H. Little, Esq.
Richard M. Scherer, Jr., Esq.
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: 716-853-5100
Facsimile: 716-853-5199
Email: blittle@lippes.com
Email: rscherer@lippes.com

*Attorneys for Defendants United Debt Holding LLC and JTM Capital Management, LLC*

# TABLE OF CONTENTS


TABLE OF CONTENTS .... i
TABLE OF AUTHORITIES .... ii
I. INTRODUCTION. .... 1
II. THE FAC DOES NOT ESTABLISH STANDING FOR THE CFPB'S CLAIMS. .... 1
A. Defendants are Not "Covered Persons." .... 1
B. The CFPB Fails to Plead Redressability. .... 5
C. The CFPB Fails to Plead Violations Traceable to UDH or JTM. .... 6
III. THE CFPB'S CLAIMS ARE NOT ACTIONABLE AS A MATTER OF LAW. .... 7
A. The CFPB's Vague Allegations of Illegal Omission Violate Due Process. .... 7
B. The CFPB Cannot Assert FDCPA or CFPA Vicarious Liability. .... 9
IV. THE FAC DOES NOT ALLEGE PLAUSIBLE FACTS SUFFICIENT TO STATE A CLAIM FOR RELIEF. .... 9
A. The FAC Does Not Allege Facts Establishing that JTM was a FDCPA-Debt Collector After 2019. .... 10
B. The FAC Fails to Allege Facts Sufficient to State Vicarious Liability Under the FDCPA. .... 11
C. The FAC Fails to Plausibly Allege Any, Let Alone All Three, Elements of Substantial Assistance under the CFPA. .... 11
1. The CFPB Fails to Allege a Predicate CFPA Violation or Scienter. .... 12
2. The CFPB Fails to Allege the Correct Scienter Standard. .... 12
3. The FAC Fails to Allege Facts Showing Intentional Facilitation of Illegal Conduct. .... 12
V. UDH AND JTM'S MOTION TO DISMISS FOR UNTIMELINESS. .... 13
A. The CFPB's Authority under the FDCPA is Exactly as Written. .... 13
B. The CFPB's Claims Accrued when it Received Consumer Complaints. .... 14
VI. CONCLUSION. .... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. McAlpin*,
699 F.2d 79 (2d Cir. 1983)....................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................9

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983)....................5, 6

*Bates v. United States*,
522 U.S. 23 (1997)....................3

*Bd. of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.*,
474 U.S. 361 (1986)....................4

*Bell Atlantic Corp. v. Twombly*,
550 U. S. 544 (2007)....................10

*Bodur v. Palisades Collection, LLC*,
829 F. Supp. 2d 246 (S.D.N.Y.2011)....................9

*Caputo v. Pfizer, Inc.*,
267 F.3d 181 (2d Cir. 2001)....................3

*CFPB v. Nat'l Collegiate Master Student Loan Tr*., Mem. Op.,
No. 17-1323, ECF No. 397 (D. Del. Feb. 11, 2022)....................3

*CFPB v. Nat'l Collegiate Master Student Loan Tr*.,
No. 1:17-CV-1323, 2021 WL 5936404 (D. Del. Dec. 13, 2021)....................3

*CFPB v. Nationwide Biweekly*,
No. 15-CV-02106-RS, 2017 WL 3948396 (N.D. Cal. Sept. 8, 2017)....................15

*CFPB v. Navient Corp.*,
3:17-CV-101, 2017 WL 3380530 (M.D. Pa. 2017)....................7, 8

*CFPB v. Ocwen Fin. Corp.*,
NO. 17-80495-CIV-MARRA/MATTHEWMAN, 2019 U.S. Dist. LEXIS 152336 (S.D. Fla. Sep. 5, 2019)....................13

*Christopher v. SmithKline Beecham Corp.*,
567 U.S. 142 (2012)....................9

*Coal. for a Level Playing Field, L.L.C. v. Autozone, Inc.*,
813 F. Supp. 2d 557 (S.D.N.Y. 2011)....................5, 7, 11

*Connecticut Nat'l Bank v. Germain*,
503 U.S. 249 (1992)....................3

*Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.*,
219 F. Supp. 3d 878 (S.D. Ind. 2015)....................14

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012)....................8

*Foman v. Davis*,
371 U.S. 178 (1962)....................7

*Frey v. Bekins Van Lines, Inc.*,
748 F.Supp. 2d 176 (E.D.N.Y.2010)....................12

*Gracey v. J.P. Morgan Chase & Co. (In re Amaranth Natural Gas Commodities Litig.)*, 730 F.3d 170 (2d Cir. 2013)....................13

*Janetos v. Fulton Friedman & Gullace, LLP*,
825 F.3d 317 (7th Cir. 2016)....................10

*Jones v. N.Y. State Div. of Military & Naval Affairs*,
166 F.3d 45 (2d Cir. 1999)....................5

*Lockhart v. United States*,
577 U.S. 347 (2016)....................2

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
616 F. App'x 442 (2d Cir. 2015)....................15

*McAdory v. M.N.S. & Assoc.*,
952 F.3d 1089 (9th Cir. 2020)....................10

*McCrobie v. Palisades Acquisition XVI, LLC*,
No. 115-CV-00018, 2019 WL 4023367 (W.D.N.Y. Aug. 23, 2019)....................9

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010)....................15

*Mullery v. JTM Cap. Mgmt., LLC*,
No. 18-CV-549, 2018 WL 8332821 (W.D.N.Y. Nov. 30, 2018), *report and recommendation adopted*, 2019 WL 2135484 (W.D.N.Y. May 16, 2019)....................9

*New Mexico v. McAleenan*,
450 F. Supp. 3d 1130 (D.N.M. 2020)....................2

*Okyere v. Palisades Collection, LLC*,
961 F. Supp. 2d 508 (S.D.N.Y. 2013)....................9

*Plummer v. Atl. Credit & Fin., Inc.*,
66 F. Supp. 3d 484 (S.D.N.Y. 2014)....................9

*Robert Stigwood Group Limited v. Hurwitz*,
462 F.2d 910 (2d Cir. 1972)....................6

*Schafer v. Allied Interstate L.L.C.*,
No. 1:17-cv-233, 2019 WL 2710272 (W.D. Mich. June 28, 2019)....................10

*Scott v. Jones*,
964 F.2d 314 (4th Cir. 1992)....................10

*UMG Recordings, Inc. v. Lindor*,
No. CV-05-1095(DGT), 2006 WL 3335048 (E.D.N.Y. Nov. 9, 2006)....................7

*United States v. Chea*,
No. 2:18-cr-00123-KJM-1, 2019 U.S. Dist. LEXIS 99583 (E.D. Cal. Jun. 12, 2019)....................2

*United States v. Halper*,
490 U.S. 435 (1989)....................7

*United States v. W. T. Grant Co.*,
345 U.S. 629 (1953)....................6

*Zanotti v. Invention Submission Corp.*,
18-CV-5893 (NSR), 2020 WL 2857304 (S.D.N.Y. June 2, 2020)....................6

**Statutes**

5 U.S.C. § 558(a-b)....................14

12 U.S.C. § 5481(6)....................2, 3

12 U.S.C. § 5481(15)....................2

12 U.S.C. § 5481(15)(A)(i)....................4

12 U.S.C. § 5481(15)(A)(iv)....................2

12 U.S.C. § 5481(15)(A)(x)....................2

12 U.S.C. § 5536....................12

18 U.S.C. § 2252(b)(2)....................2

CFPA § 5536(a)(3) ....................................................................................................11

FDCPA § 1692k......................................................................................................13

FDCPA § 1692l.......................................................................................................14

**Other Authorities**

CFPB, *What's the difference between a mortgage lender and a servicer?*, Consumer Education Blog (Sep. 4, 2020), https://www.consumerfinance.gov/ask-cfpb/whats-the-difference-between-a-mortgage-lender-and-a-servicer-en-198/ .......................................................4

Comm'te on Banking, Housing, and Urban Affairs U.S. Senate, 111th Cong. 1 (2009), *at https://tinyurl.com/mr2ujybk*....................................................................3

Comm'te on Fin. Serv. U.S. House of Rep., 111th, Cong. 1 (2009), *at* https://tinyurl.com/2s38zh9f ......................................................................................3

Cong. Rec. Vol. 155, No. 186, 111th, Cong. 1, December 11, 2009, H14770, *at* *https://tinyurl.com/mrxxbp3p*......................................................................................3

Cong. Rec. Vol. 156, No. 66, 111th, Cong. 2, May 5, 2010, S3228, *at* *https://tinyurl.com/2rpway28*......................................................................................3

Cong. Rec. Vol. 156, No. 80, 111th, Cong. 2, May 25, 2010, S4239, *at* https://tinyurl.com/2p9xp3s8 ..................................................................................3, 4

RESTAT. (THIRD) OF AGENCY § 1.01 (2006) ................................................................6

Rule 8(a)...........................................................................................................11, 13

Rule 9(b) ...................................................................................................................11

Rule 11 .....................................................................................................................15

Rule 12(b)(1)...............................................................................................................5

Rule 12(b)(6)...........................................................................................................7, 9

## I. INTRODUCTION.

Plaintiff, the Consumer Financial Protection Bureau ("CFPB" or "Bureau"), wants to penalize eight different defendants for acts by innumerable third parties that the FAC does not identify. It states that defendants should "access the complaints and calls themselves" to determine what the CFPB thinks was improper. Opp. at 51. The Bureau's tactic is unfair, flies in the face of the requirements of Rules 8, 9(b), and 12, and will unnecessarily drag-out and increase the cost of this case. As established in JTM and UDH's Motion to Dismiss and described further below, this Court should dismiss the FAC without leave to amend.

## II. THE FAC DOES NOT ESTABLISH STANDING FOR THE CFPB'S CLAIMS.

The CFPB asserts that it has Article III standing if each element of standing is "within the realm of possibility." Opp. at 9-10, 11. But that does not excuse it from alleging facts that are conceivably capable of proof. For example, a fact that was possible but also subject to proof was "Neil Armstrong walked on the moon." In contrast, the statement "a man walked somewhere extraordinary" is not a provable fact even if possible. Likewise, the FAC's allegations that an untold number of anonymous Debt Collectors associated with defendants infringed innumerable consumers' rights over a span of years is not a provable fact; it's a mere conclusion. Claims based only on conclusions fail to create a case or controversy.

### A. Defendants are Not "Covered Persons."

As an initial matter, the CFPB contends that, as part of the Executive Branch, it need not plead a concrete and particularized injury. Opp. at 11. But this is oversimplified. Indeed, the Bureau must show injury if it, for example, filed a motion to quash a third-party subpoena or

sued another sovereign.[1] The correct rule is that when an agency acts within the scope of its statutory enforcement authority, it need not prove injury to itself. Dkt. 31 at 3-4. Here, defendants are not within the scope of the CFPB's statutory authority and, therefore, injury cannot be presumed. *Id*. at 4-5. Without injury, there is no case or controversy.

The Bureau concedes that defendants are not "collecting debt," as defined at 12 U.S.C. § 5481(15)(A)(x). Opp. at 17. Rather, it argues that the entity defendants "engaged in" collecting debt, and thus, this indirect connection makes each entity a "covered person" and subject to CFPB authority. *Id.* This argument defies the CFPA's plain meaning and structure. The Bureau's interpretation causes the term "engage" to modify more than what Congress intended. Look to the statute's structure: "[t]he term 'covered person' means (A) any person that engages in offering or providing a consumer financial product or service[.]" 12 U.S.C. § 5481(6). In that sentence, "engages in" modifies the participles "offering or providing." The Bureau submits that "engages in," found at § 5481(6), modifies not only the two participles within that sub-paragraph 6, but also every definition in the list of products or services that appear 9 sub-paragraphs later at § 5481(15). The Supreme Court has rejected similar "series qualifiers" in statutes where the disputed provision "does not contain items that readers are used to seeing listed together or a concluding modifier that readers are accustomed to applying to each of them." *Lockhart v. United States*, 577 U.S. 347, 352 (2016) (quoting 18 U.S.C. § 2252(b)(2)).

Another reason to reject the expansive application of "engage" is that another definition of financial services explicitly uses the term "engaging." 12 U.S.C. § 5481(15)(A)(iv) (financial product or services means "engaging in deposit-taking activities"). In contrast, subsection

---

[1] *E.g., United States v. Chea*, No. 2:18-cr-00123-KJM-1, 2019 U.S. Dist. LEXIS 99583, at *6 (E.D. Cal. Jun. 12, 2019); *New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1147 (D.N.M. 2020) (U.S. arguing that New Mexico and Albuquerque lack Article III standing).

5481(15)(A)(x) simply says "collecting debt." Congress knew how to expand the definition to "engaging" if it intended to do so. *Cf.* Opp. at 18, n. 44.[2] And "where Congress includes particular language in one section of a statute but omits it in another[. . . ,] it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Bates v. United States*, 522 U.S. 23, 29 (1997).

The one unpublished case the CFPB cites in favor of its "engage" argument analogizes that, "if a dairy farmer contracts with a farmhand to milk his cows and never does that job himself, he is still employed in or in the business of milking cows." *CFPB v. Nat'l Collegiate Master Student Loan Tr*., No. 1:17-cv-1323, 2021 WL 5936404, at *4 (D. Del. Dec. 13, 2021). This case is not controlling and is unpersuasive. First, a livestock analogy is inapposite to investment in intangible account receivables. Second, *Nat'l Collegiate* did not consider the statutory construction of § 5481. Third, the Bureau failed to advise the Court that the Third Circuit certified this holding for interlocutory appeal.[3] Fourth, the case overlooked legislative history.

When promulgating the CFPA in 2009-2010, Congress hotly debated the definition of "covered person,"[4] and had multiple drafts of the definition.[5] Despite common knowledge of the

---

[2] *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 189 (2d Cir. 2001) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (citing *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).

[3] *CFPB v. Nat'l Collegiate Master Student Loan Tr*., Mem. Op. at 2, No. 17-1323, ECF No. 397 (D. Del. Feb. 11, 2022).

[4] Persp. on the Cons. Fin. Prot. Agency: Hr'ing before the Comm'te on Fin. Serv. U.S. House of Rep., 111th Cong. 1 (2009), *at* https://tinyurl.com/2s38zh9f at 46, Exam. Prop. to Enhance the Reg. of Credit Rating Agencies: Hr'ing before the Comm'te on Banking, Housing, and Urban Affairs U.S. Senate, 111th Cong. 1 (2009), *at* *https://tinyurl.com/mr2ujybk* at 104, 108.

[5] *E.g.*, Cong. Rec. Vol. 156, No. 66, 111th Cong. 2, May 5, 2010, S3228, *at* *https://tinyurl.com/2rpway28* , Cong. Rec. Vol. 155, No. 186, 111th Cong. 1, December 11, 2009, H14770, *at* *https://tinyurl.com/mrxxbp3p* , Cong. Rec. Vol. 156, No. 80, 111th Cong. 2, May 25, 2010, S4239, *at* https://tinyurl.com/2p9xp3s8.

impact that investors had on consumer finance markets, Congress did not express intent to include debt or securities investors in the covered person definition.[6] Indeed, to avoid overinclusion of indirect participants, including investors, Congress rejected and redrafted a December 2009 CFPA version that referred to "engag[ing]" "indirectly." H14770 Cong. Rec.-House (Dec. 11, 2009) ("The term "covered person" means— (i) any person who engages directly or indirectly in a financial activity, in connection with the provision of a consumer financial product or service.") Therefore, including debt or securities investors who engage only *indirectly* in financial services would be contrary to both the express CFPA language and deliberate Congressional intent. *See Bd. of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp*., 474 U.S. 361, 374 (1986) ("Congress may be unanimous in its intent to stamp out some vague social or economic evil; however, because its Members may differ sharply on the means for effectuating that intent, the final language of the legislation may reflect hard-fought compromises. Invocation of the 'plain purpose' of legislation at the expense of the terms of the statute itself takes no account of the processes of compromise, and, in the end, prevents the effectuation of congressional intent.").

Finally, the Bureau cites allegations that the entity defendants "collected debt" to assert that it meant to plead that defendants were "servicing loans," so the allegations would fit into the definition at § 5481(15)(A)(i) ("extending credit and servicing loans"). But defendants do not service loans.[7] And the FAC did not plead that defendants "serviced loans." FAC ¶ 16. Instead,

---

[6] Cf., Cong. Rec. Vol. 156, No. 80, 111th Cong. 2, May 25, 2010, S4239, available at https://tinyurl.com/2p9xp3s8 (excluding investors or debt buyers from list of potential covered persons).

[7] *See* CFPB, *What's the difference between a mortgage lender and a servicer?*, Consumer Education Blog (Sep. 4, 2020), https://www.consumerfinance.gov/ask-cfpb/whats-the-difference-between-a-mortgage-lender-and-a-servicer-en-198/ (explaining the typical role of a mortgage loan servicer).

the CFPB pleaded that defendants buy debt and place it for collection by third parties, or they buy debt and then sell the debt. Neither practice involves loan servicing by defendants.

The CFPB's failure to plead enforcement authority over "covered persons" is dispositive under Article III because the Bureau did not plead a concrete and particularized injury. Dkt. 30 at 5. Lack of statutory enforcement authority is not, as Plaintiffs asserts a "jurisdictional question." Opp. at 11. It just removes the shortcut that allows a federal agency to avoid pleading injury, and since the Bureau does not plead injury, it has no standing. *Id*. Because the FAC and Opposition establish that the Bureau could not plead particularized injury, amendment would be futile and the Court should not grant leave to amend when dismissing on this basis.[8]

**B. The CFPB Fails to Plead Redressability.**

The Court must dismiss monetary and injunctive relief claims against both UDH and JTM under Rule 12(b)(1) because the CFPB fails to show that the alleged harms are redressable. To supports its monetary relief claim, the CFPB suggests in the Opposition that the Court should "infer that the Debt Collectors paid UDH, JTM, and UHG as part of [a debt sale]." Opp. at 15. In doing so, the CFPB asks the Court to jump to the questionable conclusion (which would be improper) that all debt collectors who violated the FDCPA/CFPA also paid their bills to defendants. Courts, however, cannot assume that a plaintiff can prove facts beyond those alleged in the complaint. *See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Likewise, the FAC omits facts to support any permanent injunctive relief against UDH, JTM, or the individual defendants who owned or worked for these two firms. The Opposition

[8] "Amendment is futile where the 'proposed amended complaint would be subject to immediate dismissal.'" *Coal. for a Level Playing Field, L.L.C. v. Autozone, Inc.*, 813 F. Supp. 2d 557, 565 (S.D.N.Y. 2011) (quoting *Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999)).

claims that there is a possibility of recurrence, but this is not alleged in the FAC. Opp. at 13. And it cannot be assumed. *See Assoc. Gen. Contractors*, 459 U.S. at 526. Further, the Bureau's arguments against mootness are unnecessary because defendants did not raise mootness. Rather, defendants argue that the FAC fails to plead a cognizable danger that is "something more than the mere possibility which serves to keep the case alive." *Robert Stigwood Group Limited v. Hurwitz*, 462 F.2d 910, 913 (2d Cir. 1972) (citing *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953)). The FAC does not point to a practice by any defendant that is more likely to lead to a future illegal action than a legal action. Nor does the Bureau allege in the FAC a real risk that UDH or JTM will resume purchasing and placing accounts for collection, much less a risk they will harm consumers once they do. Thus, the Court lacks jurisdiction over the Bureau's demands for monetary and injunctive relief, and these claims should be dismissed.

**C. <u>The CFPB Fails to Plead Violations Traceable to UDH or JTM.</u>**

The Bureau responds to defendants' argument that alleged injuries are not fairly traceable to defendants by saying defendants' unnamed agents caused injury as they collected on defendants' behalf. Opp. at 12. But collection by unnamed agents "on their behalf" is conclusory and only part of the consideration. Agency requires that the agent have "power to affect the legal rights and duties of the other person." RESTAT. (THIRD) OF AGENCY § 1.01 (2006). The FAC does not allege that call agents or "Debt Collectors" had such power over defendants' rights. *See* Dkt. 31 at 22. Vague allegations about anonymous third parties doing wrong are mere conclusion and cannot support standing. *Zanotti v. Invention Submission Corp.*, 18-CV-5893 (NSR), 2020 WL 2857304, at *8 (S.D.N.Y. June 2, 2020) ("Plaintiffs' broad allegations of conspiracy with no factual underpinning are nothing more than conclusory assertions that cannot give rise to Article III standing."). Moreover, the CFPB's argument ignores Debt Collectors to whom defendants sold but did not place debt. As to the "buyer" Debt Collectors, the Bureau

argues that merely pleading "aiding and abetting" confers standing. Not only does it cite two inapposite cases,[9] but the phrase "aiding and abetting" does not even appear in the FAC.

## III. THE CFPB'S CLAIMS ARE NOT ACTIONABLE AS A MATTER OF LAW.

As a threshold issue, the fact that UDH and JTM are not "covered persons" under the CFPA is also dispositive under Rule 12(b)(6). *See*, Opp. at 16, Dkt. 40 at 3,7. Because amending the FAC would be futile, the Court may also dismiss the Bureau's claims under Rule 12(b)(6) with prejudice. "Amendment is futile where the 'proposed amended complaint would be subject to immediate dismissal.'" *Coal. for a Level Playing Field*, 813 F. Supp. 2d at 565. Ultimately, "[t]he decision to grant or deny a motion to amend lies within the sound discretion of the district court." *UMG Recordings, Inc. v. Lindor*, No. CV-05-1095(DGT), 2006 WL 3335048, at *1 (E.D.N.Y. Nov. 9, 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In either event, no trick of pleading can make defendants "covered persons."

### A. The CFPB's Vague Allegations of Illegal Omission Violate Due Process.

In addition, the FAC should be dismissed with prejudice under Rule 12(b)(6) because the causes of action violate the Fifth Amendment. *United States v. Halper*, 490 U.S. 435, 448 (1989) ("a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment."). Prior to this lawsuit, defendants had no fair notice from the CFPB that they might face a government penalty—including a permanent ban from their business—because each allegedly failed to do something "meaningful," to prevent violations by others. The Bureau cites *CFPB v. Navient Corp.*, 3:17-CV-101, 2017 WL 3380530 (M.D. Pa. 2017), for the proposition that substantive due process does not require the Bureau to spell out every action that could violate the CFPA.

[9] Docket Item 40 at 3 (May 12, 2022) ("UHG Reply") incorporated as if fully set forth herein.

Opp. at 36. But that's not what *Navient* says. The *Navient* court ruled on whether "the CFPB may, among other things, commence a civil action 'to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law.'" *Navient*, 2017 WL 3380530 at *5. Here, defendants did not deceive anyone. FAC ¶ 16. Nor are they "covered persons." *Supra*, 8.

Defendants' argument does not turn on the FAC's meaning of "deceptive." Rather, the due process violation arises because defendants do not know what each should have done to avoid a penalty when <u>other parties</u> caused the alleged deceptions. As emphasized in UDH and JTM's Motion, what could be more meaningful than liquidating one's business and hiring a better-resourced firm to manage the remaining affairs? *See* FAC ¶¶ 112-115.

The Bureau's citation to the CFPA's substantial assistance provision is unavailing because substantial assistance does not create a duty to prevent illegal conduct. "Inaction on the part of the alleged aider and abettor ordinarily should not be treated as substantial assistance, except when it was designed intentionally to aid the primary fraud or it was in conscious and reckless violation of a duty to act." *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983). The Opposition and FAC do not assert intentional design or violation of a duty to act.

Indeed, the FAC points out that defendants acted to <u>prevent</u> violations by putting a compliance system in place. Dkt. 31 at 25-26, Opp. at 33. On the one hand, the Opposition calls this evidence of "control," which supports strict vicarious liability for every unnamed Debt Collector's foot-fault. Opp. at 33. On the other hand, the compliance system is a "veneer" and not a "meaningful" action that prevented theretofore unknown deceptive acts. Opp. at 27. This is the type of damned-if-you-do/damned-if-you-don't arbitrary application of law that violates due process. "Th[e] requirement of clarity in regulation is essential to the protections provided by the

Due Process Clause of the Fifth Amendment." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see also Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012). The FAC has failed to state a Constitutionally valid claim and, thus, must be dismissed.

### B. The CFPB Cannot Assert FDCPA or CFPA Vicarious Liability.

The CFPB's third-party claims must fail as a matter of law, and be dismissed with prejudice, because neither the FDCPA nor the CFPA authorize the FAC's attenuated version of vicarious liability. Dkt. 40 at 6-9. This is not the case of *respondeat superior,* or one where any defendant set into motion a circumstance that would likely result in unlawful collection conduct.[10] Further, the CFPB does not refute the serious concerns about standing, multiple recovery, or inconsistent judgments attendant to its vicarious liability claims. Opp. at 45.

## IV. THE FAC DOES NOT ALLEGE PLAUSIBLE FACTS SUFFICIENT TO STATE A CLAIM FOR RELIEF.

Rule 12(b)(6) requires dismissal if a pleading alleges facts that establish nothing more than that a defendant engaged in conduct that is equally consistent with lawful acts and unlawful acts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009). Here, once the Court strips the FAC of its conclusory allegations, the fact remains that only 0.00002196 percent of phone calls about

---

[10] While the Bureau cites some authority where district courts found vicarious liability in private FDCPA lawsuits, these cases can be distinguished because the alleged "principal" had performed a negligent act that led to the harm or the primary violator was the attorney for defendant. *Plummer v. Atl. Credit & Fin., Inc*., 66 F. Supp. 3d 484, 493 (S.D.N.Y. 2014) (debt-buyer placed account with debt collector but did not inform collector that consumer was represented by attorney); *Mullery v. JTM Cap. Mgmt., LLC*, No. 18-CV-549, 2018 WL 8332821, at *4 (W.D.N.Y. Nov. 30, 2018), *report and recommendation adopted*, 2019 WL 2135484 (W.D.N.Y. May 16, 2019) (same); *McCrobie v. Palisades Acquisition XVI, LLC*, No. 115-CV-00018, 2019 WL 4023367, at *4 (W.D.N.Y. Aug. 23, 2019) (defendant collected on debt it did not own); *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 516 (S.D.N.Y. 2013) (judgment procured based on a false affidavit of service in lawsuit), or the primary actor was an attorney representing the alleged principal); *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 258-59 (S.D.N.Y.2011) (primary actor was a "law firm" hired by a debt collector).

defendants' accounts resulted in consumer complaints.[11] Dkt. 30 at 32, n. 11. The FAC thus establishes that defendants' acts were more consistent with lawful acts than with illegal conduct, requiring dismissal. *Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 567-70 (2007) (holding that, because the well-pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an unlawful agreement, plaintiffs' complaint must be dismissed). Beyond the CFPB's general failure to plead plausible and non-conclusory wrongdoing by defendants, its claims must also be dismissed because it does not—and cannot—plead the claims' requisite elements.

### A. <u>The FAC Does Not Allege Facts Establishing that JTM was a FDCPA-Debt Collector After 2019.</u>

All parties agree that *if* any defendant is a FDCPA "debt collector" it must be exclusively under the "principal purpose" prong of the statutory definition. Opp. at 38. Courts look to a variety of factors to assess principal purpose,[12] but no cases hold that a company not placing accounts for collection still qualifies under this definition. The Opposition's semantic acrobatics do not change the FAC's allegations that, "[i]n May 2017, JTM and UHG signed a written agreement obligating UHG to handle all or almost all of JTM's business affairs in exchange for all or most of the profit derived from JTM's ongoing affairs," (FAC ¶ 114) and that the FAC does not allege JTM did business in the year 2020 or after. Inferring that JTM continued to do business after 2019 is implausible in light of the allegation at FAC ¶ 114.

Even if this Court entertained a government-pled FDCPA vicarious liability theory, other Courts only sustain the theory when the predicate actor and the defendant are both FDCPA "debt

---

[11] Recall, however, as discussed in JTM and UDH's Motion (dkt. item 31-1), consumer complaints do not correspond perfectly to violations. Dkt. 31 at 31.

[12] *See McAdory v. M.N.S. & Assoc.*, 952 F.3d 1089, 1091 (9th Cir. 2020); *Scott v. Jones*, 964 F.2d 314, 316 (4th Cir. 1992) (70–80% of lawyer's legal fees related to debt collection); *Schafer v. Allied Interstate L.L.C.*, No. 1:17-cv-233, 2019 WL 2710272, at *1 (W.D. Mich. June 28, 2019) (99% of revenues came from debt collection performed by others on its behalf).

collectors." *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016). Therefore, at minimum, all FDCPA claims against JTM that accrued after it ceased doing business after 2019 must be dismissed. Any amendment of the pleading that includes such claims would be futile and should not be allowed. *Coal. for a Level Playing Field, supra.* n. 8.

### B. The FAC Fails to Allege Facts Sufficient to State Vicarious Liability Under the FDCPA.

The Bureau concedes that the FAC does not allege *respondeat superior* to establish vicarious liability. Opp. at 47. Rather, it relies upon apparent authority, saying that a "Placement Debt Collector merely has to appear to be acting on its principal's behalf because of Defendants' actions or words." Opp. at 48. Apparent authority, however, cannot arise from the agent's acts—it must arise from the principal's act. Dkt. 31 at 20. Yet, defendants had no routine contact with consumers or call agents. FAC ¶ 16. If they received consumer complaints, "they often forwarded them to the Debt Collector serving as master servicer or to the Debt Collectors referenced in the complaints." FAC ¶ 155. In such situations, defendants are disavowing a principal/agent relationship. The CFPB's assertion that "Debt Collectors acted with apparent and actual authority," is conclusory and does not give rise to an actionable claim. Thus, Counts IV and V must be dismissed.

### C. The FAC Fails to Plausibly Allege Any, Let Alone All Three, Elements of Substantial Assistance under the CFPA.

The Bureau agrees that Substantial Assistance under CFPA § 5536(a)(3) (Counts II and III) requires: 1) a primary violation, (2) knowledge or reckless disregard of the violation, and (3) substantial assistance in the violation by the defendant. Opp. at 25. It disputes that Rule 9(b) applies to its substantial assistance claims. Its arguments are addressed in the UHG Reply. Dkt. 40. In any event, the FAC is so deficient, it fails to meet the more liberal Rule 8(a) standard.

1. The CFPB Fails to Allege a Predicate CFPA Violation or Scienter.

There can be no "substantial assistance" without a primary violation. 12 U.S.C. § 5536. The Bureau claims it pleads deception concerning threats of lawsuits, and refutes the importance of factual context by listing a series of conclusory allegations. Opp. at 21. But the FAC's improper nouns followed by adjectives are not provable facts. They are conclusions. Furthermore, the conclusions fail in the face of actual and contradictory facts from other cases (which the Court may judicially notice)[13] showing that attorneys did, indeed, file lawsuits on UHG and JTM accounts.

2. The CFPB Fails to Allege the Correct Scienter Standard.

The FAC alleges the wrong *scienter* standard for the CFPA's "substantial assistance" provision. FAC ¶¶ 184, 189. The FAC states defendants should be liable because they "knew or should have known" about the predicate violations. FAC ¶¶ 8, 61, 76, 94, 157, 160, 166, 167, 184, 189. This is another conclusion unsupported by facts. And is also not the standard. Dkt. 31 at 23. The FAC fails to allege the express statutory requirement: "knowingly" or "recklessly" and does not plead facts that any defendant knew a violation was impending or ongoing.

3. The FAC Fails to Allege Facts Showing Intentional Facilitation of Illegal Conduct.

Despite the Bureau's arguments to the contrary, the FAC does not plead facts showing that violations were "recurrent." *Cf.*, Opp. at 27. Rather, the FAC alleges a total of seven potential violations over seven years. FAC ¶¶ 143, 151. Even if the Court entertained the idea that more similar telephone calls existed, the FAC does not state how many, or what UDH or JTM did to cause violations. In fact, the Opposition does not address JTM and UDH's arguments

[13] *See*, Dkt. 30-1 at 16, n. 7 (citing numerous collection filings in Texas initiated by UHG).

about facilitation at all, thus conceding the issue.[14] Instead, without support, it asserts that the companies' compliance efforts were "veneer" and "shell game." Opp. at 27. If the FAC had facts showing that defendants acted to "bring about" illegal telephone calls, perhaps the veneer theory would suffice. But the Second Circuit requires allegations of "the actions supposedly undertaken to assist" violations. *Gracey v. J.P. Morgan Chase & Co. (In re Amaranth Natural Gas Commodities Litig.)*, 730 F.3d 170, 183 (2d Cir. 2013). Without such facts alleged, Counts II and III must be dismissed.

## V. UDH AND JTM'S MOTION TO DISMISS FOR UNTIMELINESS.

Consistent with its vague allegations throughout the FAC, the Bureau omitted dates of the handful of violations it alleges to avoid a statute of limitations defense. While this renders the FAC deficient under Rule 8, the Bureau's legal arguments regarding the timeliness of its Complaint are also flawed.

### A. The CFPB's Authority under the FDCPA is Exactly as Written.

Contrary to the Bureau's argument, the FDCPA § 1692k does not expand the statute of limitations for government agencies from one year to three. Opp. at 54. The Bureau alleges that the "Civil Liability" provision that establishes the one-year limitation governs only private actions, but § 1692k's plain language defies this interpretation. The text lacks attributions to "private plaintiff," "consumer" or "individual." 15 U.S.C. § 1692k. The limitation thus applies to everyone, including the CFPB. The Opposition's cited cases do not say that enforcement actions are entitled to a longer statute of limitations. Opp. at 54, n. 212. Indeed, the Bureau cites a single non-controlling case for the proposition that its FDCPA claims are entitled to a three-year statute of limitations. But that court declined to rule that § 1692k applied singularly to private plaintiffs

[14] *Frey v. Bekins Van Lines, Inc.*, 748 F.Supp. 2d 176, 182 (E.D.N.Y.2010).

—saying only that the extension was "arguable." *CFPB v. Ocwen Fin. Corp.*, NO. 17-80495-CIV-MARRA/MATTHEWMAN, 2019 U.S. Dist. LEXIS 152336, *68 (S.D. Fla. Sep. 5, 2019) ("'Civil Liability' makes no reference to any governmental plaintiff and *arguably* applies only to private causes of action.") (emphasis added).

The Bureau asserts that FDCPA § 1692l, which covers "Administrative Enforcement," has no time limit and that this silence means no limitation on government action exists. Alternatively, it argues that a violation of the FDCPA is deemed to be a violation of the CFPA. Both arguments fail. First, silence in the "Administrative Enforcement" section, coupled with the lack of limiting language in the "Civil Liability" section illustrates that Congress intended for the Bureau to be subject to the same time limitations as any other plaintiff. *See Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 923 (S.D. Ind. 2015) (concluding that, under principles of statutory construction, the Bureau was subject to the one-year statute of limitations in the TILA and dismissing the Bureau's claims as time-barred). Second, the plain language of § 1692l(c) says that FDCPA violations are deemed to be CFPA violations only "[f]or the purpose of the exercise by any agency [listed above] of its powers." The phrase *exercise of its powers* comes from the Administrative Procedure Act's limit on federal agency authority, 5 U.S.C. § 558(a-b), which says, "(a) This section applies, according to the provisions thereof, to the *exercise of a power or authority*. (b) A sanction may not be imposed or a substantive rule or order issued except within jurisdiction delegated to the agency *and* as authorized by law." (emphasis added). Thus, the provision at § 1692l(c) *limits* the Bureau's authority to bring actions consistent with the FDCPA; it's not an expansion.

### B. <u>The CFPB's Claims Accrued when it Received Consumer Complaints.</u>

On the question of claim accrual under the CFPA, courts are divided as to whether the CFPA's statute of limitations runs from when the CFPB's enforcement office "actually"

discovered the violation, or from when a reasonably diligent plaintiff would have discovered it. Opp. at 56. The Second Circuit has long held in SEC Act cases that the "date of discovery" is either when the plaintiff *discovers* the violation or when a reasonably diligent plaintiff *would have discovered* the violation. *In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x 442, 447 (2d Cir. 2015) (citing *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010)). The SEC rulings are authoritative here, where the substantial assistance statutes mirror one another. Dkt. 40 at 8.

The Bureau also argues that the action does not accrue even if the Bureau has actual notice of facts when it received a consumer complaint. Opp. at 57. It cites *CFPB v. Nationwide Biweekly*, No. 15-cv-02106-RS, 2017 WL 3948396, at *10 (N.D. Cal. Sept. 8, 2017), which held that the CFPB needs more time because it would be a Rule 11 violation to bring a case solely on the basis of complaints. *Id*. The Bureau's argument and reliance on *Nationwide Biweekly* is two-faced, however. From one side of its mouth it states, the "Amended Complaint does not provide any basis for [Defendants'] assumption" that the FAC relies on consumer complaints. Opp. at 57. From the other side, it states that defendants got notice of the claims because defendants have "the ability to access the complaints and calls themselves." Opp. at 51. In light of this assertion, the Court should rule that the CFPA actions accrued when the Bureau received the consumer complaints or telephone call recording, whichever is earlier.

## VI. <u>CONCLUSION.</u>

Several issues herein justify dismissing the FAC with no leave to amend. If the CFPB is allowed to amend its complaint, however, defendants respectfully request an order requiring a second amended complaint to specify the dates of the predicate violations, the identities of the primary violators, the violation by the violator, and the relationship of each primary violator to each defendant.

Dated: Denver, Colorado
May 12, 2022

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ S.J. Auchterlonie

Sarah J. Auchterlonie
sja@bhfs.com
410 Seventeenth Street
Suite 2200
Denver, CO 80202
Telephone: 303.223.1100
Facsimile: 303.223.1111

LIPPES MATHIAS LLP

Brendan H. Little, Esq.
Richard M. Scherer, Jr., Esq.
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: 716-853-5100
Facsimile: 716-853-5199
Email: blittle@lippes.com
Email: rscherer@lippes.com

*Attorneys for Defendants United Debt Holding LLC and JTM Capital Management, LLC*