UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Consumer Financial Protection Bureau                Case No.: 1:22-cv-29-LJV

     Plaintiff,

vs.

Craig Manseth, Jacob Adamo, Darren Turco,
United Debt Holding, LLC, JTM
Capital Management, LLC, UHG, LLC, UHG I, LLC
(also known as United Holding Group) and
UHG II, LLC (collectively holding themselves
out as United Holding Group, United Holding Group,
LLC and United Holdings Group, LLC),

     Defendants.

### DEFENDANTS' BRIEF REGARDING UNAVAILABILITY OF VICARIOUS LIABILITY UNDER THE CONSUMER FINANCIAL PROTECTION ACT

Defendants submit their Brief Regarding the Unavailability of Vicarious Liability under

the Consumer Financial Protection Act ("CFPA") as follows:

### I.    BACKGROUND

No court has ever held that a plaintiff can plead both a statutory substantial assistance claim

and a common law vicarious liability claim for the same violation under the same law. There is no

reason for this Court to be the first. The Bureau vaguely argues that the CFPA incorporates tort

theories, including vicarious liability, but cannot cite to any apposite or persuasive authority.

Notably, the citation it gave during oral argument concerned a case litigated *before* Congress

enacted the first federal substantial assistance provision.[1] Congress's inclusion of the substantial

assistance provision in the CFPA expressly addresses secondary liability and thus limited vicarious

liability predicated on a statutory consumer protection violation. In this matter of first impression

---

[1] Private Securities Litigation Reform Act of 1995, Public Law No: 104-67 § 104, 109 STAT. 757 (Dec. 22, 1995).

within the Second Circuit, the Court should look to the plain language of the CFPA's *substantial assistance* and *related person* provisions, coupled with caselaw surrounding its model statute, Securities Exchange Act of 1934 ("SEC Act") § 20(e), to determine that the Bureau <u>may not</u> assert secondary liability under the CFPA based on principles of common law vicarious liability.

The CFPA has two unique definitions that overlap with common law secondary liability. First, it defines a "related person" and establishes the relationships creating secondary liability:

> The term ''related person'' . . . means— (i) any director, officer, or employee charged with managerial responsibility for, or controlling shareholder of, or agent for, such covered person; (ii) any shareholder, consultant, joint venture partner, or other person, as determined by the Bureau (by rule or on a case by-case basis) who materially participates in the conduct of the affairs of such covered person; and (iii) any independent contractor (including any attorney, appraiser, or accountant) who knowingly or recklessly participates in any— (I) violation of any provision of law or regulation; or (II) breach of a fiduciary duty.

12 U.S.C. § 5481(25). This related persons definition overlaps with common law's *respondeat superior*, which generally holds an employer or principal legally responsible for the wrongful acts of an employee or agent, if such acts occur within the scope of the employment or agency.[2] The FAC does not allege that defendants are related persons of the "Debt Collectors."

Likewise, the CFPA defines the actions and scienter that can create secondary liability specifically for CFPA violations:

> It shall be unlawful for . . . any person to knowingly or recklessly provide substantial assistance to a covered person or service provider in violation of the provisions of section 5531 of this title, or any rule or order issued thereunder, and notwithstanding any provision of this title, the provider of such substantial assistance shall be deemed to be in violation of that section to the same extent as the person to whom such assistance is provided.

12 U.S.C. 5536(a)(3). This definition overlaps with common law vicarious liability: "liability

---

[2] *See Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs., LLP*, No. 1:17-cv-1235-GHW, 2018 WL 1627266, at * 20 (S.D.N.Y. Mar. 30, 2018); *Marbury Mgmt, Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir. 1980); *see also* Restatement (Second) of Agency §§ 228, 229, 257, 258, 261, 262, 265.

that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) based on the relationship between the two parties."[3]

Given that the CFPA expressly establishes both the special relationship in the related persons definition, and the scienter and actions necessary to place liability for an injury on a person who did not cause the injury, the question arises whether these provisions subsume and/or preclude *respondeat superior* and vicarious liability at common law. If so, the Bureau's vicarious liability claims in the First Amended Complaint at Counts I and V should be dismissed as a matter of law.

Importantly, no cases have held that a plaintiff may simultaneously assert both substantial assistance liability and common law vicarious liability under the same statute. More specifically, and as the Bureau admitted during oral argument, no case to date has established that claims for vicarious liability may be brought under the CFPA.[4] Rather, the Bureau insists that the Federal Trade Commission (FTC) Act is a better guide than other identically worded statutes.

## II.    **ANALYSIS**

When interpreting the breadth and scope of statutes, the court "necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." *United States* v. *Maynard*, 743 F.3d 374, 381 (2d Cir. 2014) (quoting *Dobrova* v. *Holder*, 607 F.3d 297, 301 (2d Cir. 2010)). "In conducting such an analysis, [the court will] review the statutory text, considering the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme." *Id.* (quoting *Dobrova*, 607 F.3d at 301). This includes whether a proposed interpretation would yield unreasonable results. *United*

---

[3] *Vicarious Liability*, BLACK'S LAW DICTIONARY (11th ed. 2019).
[4] As discussed at oral argument, *CFPB v. Nat'l Collegiate Master Student Loan Tr.* did not unequivocally establish any right to pursue vicarious liability under the CFPA. 575 F. Supp. 3d 505 (D. Del. 2021), *motion to certify appeal granted*, No. 1:17-CV-1323-SB, 2022 WL 548123 (D. Del. Feb. 11, 2022). In fact, the court noted that the statutory language in question could displace common law, but elected not to answer the question. *Id.* at 510. In any case, that matter was recently certified for appeal at the Third Circuit. *Id.*, *appeal certified*, No. 22-1864 (3d Cir. 2022).

*States v. McCray*, 346 F. Supp. 3d 363, 367 (W.D.N.Y. 2018), *aff'd*, 7 F.4th 40 (2d Cir. 2021). As set forth below, the plain meaning of the CFPA excludes vicarious liability and requires dismissal of Counts I and V of the First Amended Complaint.

### A.    The CFPA's Plain Meaning Excludes Vicarious Liability

The Court should be guided by the CFPA's express definitions of the types of relationships, scienter, and actions required to impose secondary liability on a CFPA covered person. "When interpreting the meaning of a statute . . . the starting point of inquiry is of course the language of the statute itself." *Panjiva, Inc. v. United States CBP*, 975 F.3d 171, 176 (2d Cir. 2020) (quoting *In re Edelman*, 295 F.3d 171, 177 (2d Cir. 2002)). "If the meaning is plain, the inquiry ends there." *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016). Here, the CFPA unambiguously provides a sole theory of secondary liability.

### 1.    CFPA Section 5536 is Different than Vicarious Liability.

Section 5536 plainly says that to hold an individual secondarily liable, the individual must have acted with *knowledge* or *recklessness* and facilitated the bad conduct. In contrast, common law vicarious liability can apply to knowing, reckless, or <u>negligent</u> conduct. *See, e.g., Barnes v. Andrews*, 298 F. 614, 616 (S.D.N.Y. 1924) (holding an allegation that a director failed to devote adequate attention to his company's affairs stated a cause of action in tort where proper attention would have avoided loss). Further, the CFPA does not mention vicarious liability or suggest secondary liability other than as set forth in §§ 5481(25) and 5536(a)(3). Nor would implying vicarious liability be required to, for example, hold a manager responsible for her employee's conduct; the definition of related person supplants the need for common law *respondeat superior*.

### 2.    CFPA Section 5536 Plainly Excludes Negligence and Negligent Omissions.

When reading a statute, "nothing is to be added to what the text states or reasonably implies . . . [t]hat is, a matter not covered is to be treated as not covered." ANTONIN SCALIA & BRYAN A.

GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 87 (2012). Similarly, expression of one thing necessarily implies the exclusion of others. *Id.* at 96. Substantial assistance requires both a scienter component—knowing or reckless—and facilitation of the challenged activity.[5] Vicarious liability requires neither. Where Congress has expressed its intent that secondary liability be based upon the "substantial assistance" standard, the omission of any different or lower threshold to liability, such as vicarious liability, is presumed intentional.[6] Thus, the Court must presume that the CFPA was purposefully enacted to exclude common law vicarious liability.

Indeed, other courts have held that the "recklessness" standard precludes lower scienter standards. In *CFPB v. Universal Debt & Payment Solutions, LLC*, the Bureau asserted that, for a substantial assistance claim, it only needed to meet the lower, common law scienter standard. No. 1:15-cv-0859-RWS, 2019 WL 1295004, at *6 (N.D. Ga. Mar. 21, 2019). Rejecting the Bureau's argument, the court—like various courts before it—held that when analyzing a § 20(e) claim, the proper scienter was the higher "recklessness" standard.[7]

3.  CFPA Vicarious Liability renders the Statute Meaningless.

"Statutes should be interpreted to avoid untenable distinctions and unreasonable results

---

[5] *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 771–72 (S.D.N.Y. 2018), *aff'd in part and rev'd in part*, 828 Fed. App. 68 (2020).
[6] Few federal statutes set forth a "substantial assistance" standard for imposing secondary liability. First, Congress inserted substantial assistance into the SEC Act in 1995. Private Securities Litigation Reform Act of 1995, § 104, 109 STAT. 757. Then, in 2010, the Federal Trade Commission established the substantial assistance standard in the Telemarketing Sales Rule, which implemented the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101–08, as amended. 75 Fed. Reg. 48519 (Aug. 10, 2010) (to be codified at 16 C.F.R. 310.3(b)) ("It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 of this Rule."). Finally, in 2010 the Dodd-Frank Wall Street Reform Act included this provision in the newly-established CFPA and amended SEC Act § 20(e), adding a "recklessly" scienter, to mirror the exact same language that appears at CFPA § 5536(a)(3). *See* Pub. L. 111-203, 124 Stat. 1376, 1862 (2010).
[7] *See also SEC v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 511 (S.D.N.Y. 2018); *SEC v. Ripple Labs, Inc*., No. 20CIV10832ATSN, 2022 WL 762966, at *6 (S.D.N.Y. Mar. 11, 2022) ("After the Dodd-Frank Act took effect in 2010, the SEC may also satisfy the "knowledge" requirement by showing that the defendant was "reckless" in relation to the primary party's violation.").

whenever possible." *McCray*, 346 F. Supp. 3d at 367 (quoting *American Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982)). Here, Congress established the special relationship, the scienter, and the actions required for secondary liability when parties are not related persons. These provisions create causes of action against a wide array of persons who were not the predicate actor. To allow the Bureau to pursue vicarious liability predicated on a third-party's violation of the CFPA would render the culpability and relationship requirements of the statute meaningless.

**B.    Legislative History**

While the statute's plain meaning establishes the standards for secondary liability under the CFPA, legislative history fortifies defendants' understanding of the text.  "[W]hen a statute is ambiguous[,] . . . deals with especially complex matters," or otherwise gives a court reason "to corroborate and fortify [its] understanding of the text," the court considers relevant legislative history. *Dig. Realty Tr., Inc.* v. *Somers*, 138 S. Ct. 767, 783 (2018) (Sotomayor, J., concurring). The 2010 Dodd-Frank Wall Street Reform Act ("Dodd-Frank") established both the CFPA and the Bureau. *See* Pub. L. 111-203, 124 Stat. 1376 (2010). Additionally, this sweeping legislation amended SEC Act § 20(e), adding a "recklessly" scienter, to mirror the exact same language that appears at CFPA § 5536(a)(3). *See Id.*, 124 Stat. 1862. Dodd-Frank's legislative history does not discuss the rationale for the CFPA's § 5536; however, there is no question that SEC Act § 20(e) is, as amended by Dodd-Frank, identical in wording. Thus, the Court should look at the interpretation of the identically worded SEC Act for guidance in interpreting the CFPA.

1.   CFPA Section 5536 Mirrors SEC Act Section 20(e), as amended.

Courts applying CFPA § 5536(a)(3) have recognized that it is modeled after SEC Act § 20(e) and, as already noted above, have thus drawn on interpretations of § 20(e) for their understanding of the CFPA. *See* 15 U.S.C. § 78t(e); *Universal Debt*, 2019 WL 1295004 at *6 (quoting *SEC v. Apuzzo*, 689 F.3d 204, 212 (2d Cir. 2012) (affirming reliance on § 20(e)'s "similar

substantial-assistance provision" to require that under the CFPA, "the CFPB must establish 'that [the defendant] in some sort associated [themselves] with the venture, that the defendant participated in it as in something that [they] wished to bring about, and that [they] sought by [their] action to make it succeed'"); *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 771–72 (S.D.N.Y. 2018) (adopting the same understanding that § 20(e) sheds light on the proper interpretation of 12 U.S.C. § 5536(a)(3)), *aff'd in part and rev'd in part*, 828 Fed. Appx. 68 (Oct. 30, 2020). This Court should similarly look to SEC Act § 20(e) for guidance in this instance.

2.  SEC Act § 20(e) was Needed to Give the SEC Aiding-and-Abetting Authority.

The 1995 Private Securities Litigation Reform Act (the "PSLRA"), which codified § 20(e), created the SEC's ability to bring aiding and abetting claims for securities act violations. Before the PSLRA, federal courts had allowed private aiding-and-abetting actions under SEC Act § 10(b). The first and leading case to impose the liability was *Brennan v. Midwestern United Life Ins. Co*., 259 F. Supp. 673 (N.D. Ind. 1966), *abrogated by Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, (1994). The *Brennan* court reasoned that "[i]n the absence of a clear legislative expression to the contrary, the statute must be flexibly applied so as to implement its policies and purposes." *Id.* at 680–81. In 1994 however, the Supreme Court held the opposite. *See Central Bank*, 511 U.S. at 175, 191. It rejected the *Brennan* justification for an expansive reading of the statute and instead prescribed a strict statutory construction approach to determining liability under the SEC Act. *Id.* at 175. Afterward, Congress affirmed the Court's commitment to statutory text, but recognizing the need for the SEC to bring aiding and abetting cases, it passed the PSLRA.

The PSLRA added § 20(e) to the SEC Act to "clarify[] the ability of the SEC to bring aiding and abetting claims." S. Rep. No. 104-98, at 7 (1995). In doing so, Congress said that overturning *Central Bank* would have run "contrary to [the PSLRA's] goal of reducing meritless

securities litigation." S. Rep. No. 104-98, at 19. Thus, as originally drafted and passed, § 20(e) "consist[ed] of three elements: (1) a securities law violation by a primary wrongdoer, (2) 'knowledge' of the violation by the defendant, and (3) substantial assistance by the aider-abettor in the primary violation." David S. Slovick, *Scienter and Section 20(e): A New Consensus on Aiding and Abetting Liability in SEC Enforcement Actions*, 36 Sec. Reg. L. J. 317, 319 (2008) (citing *SEC v. Cedrick Kushner Promotions*, Inc., 417 F. Supp. 2d 326, 334 (S.D.N.Y. 2006)).

The legislative history also confirms that the scienter and "substantial assistance" elements were drafted with intention. The Senate Banking Committee's Report on the PSLRA supports the language by explaining that, "most courts required that . . . the aider and abettor gave substantial assistance to the fraud." S. Rep. No. 104-98, at 49.[8] Additionally, in Dodd-Frank, Congress broadened the scienter element in § 20(e) to add "recklessly." *Supra* at 6. Legislative history thus demonstrates that Congress considered what it had left out of § 20(e) in 1995 and fixed the issue in 2010. Notably, it did not add "negligently" to make the statute equivalent to vicarious liability. Therefore, implying a "negligence" standard into either the SEC Act or CFPA substantial assistance provision would contradict Congressional intent.

### C.    The Bureau's Cited Support is Outdated, Distinguishable, and Misconstrued

In its briefing on the Motion to Dismiss, the Bureau failed to cite any cases saying that it can bring claims for vicarious liability based on a predicate violation of the CFPA. Instead, the Bureau argued that all statutes are legislated against a background of common law tort theory.[9] Dkt. No. 37 at 41. This argument is hollow. Dkt. No. 40 at 7–9. At oral argument, the Bureau cited

---

[8] *See, e.g.*, *ITT v. Cornfield*, 619 F.2d 909, 922 (2nd Cir. 1980)) *abrogated on other grounds by* 561 U.S. 247 (2010) (noting that aiding and abetting cases generally require three prerequisites: violation, knowledge, and substantial assistance by the aider and abettor).

[9] The Bureau's cited authority concedes that "courts may take it as a given that Congress has legislated with an expectation that the [common law] principle will apply except when a statutory purpose to the contrary is evident." Dkt. No. 37 at N. 153 (emphasis added). Here, the inclusion of a substantial assistance provision, with a clear scienter requirement, evidences a statutory purpose contrary to the Bureau's common law vicarious liability claims.

two cases in support of its position on vicarious liability. Neither case applies to SEC Act § 20(e), and one case holds contrary to what the Bureau asserted at oral argument.

First, the Bureau cited the forty-two year old case *Marbury Mgmt., Inc. v. Kohn* for the assertion that it can bring a claim for vicarious liability under the CFPA.[10] 629 F.2d 705 (2d Cir. 1980). As a threshold matter, this case was decided 15 years before Congress amended the SEC Act to include § 20(e), and before the Supreme Court ruling in *Central Bank*. *See* 511 U.S. 164. Further, *Marbury* only discusses vicarious liability as it related to an inapposite section of the SEC Act—§ 20(a)—which establishes control person liability, a claim not at issue here.

Second, the Bureau cited *SEC v. Reil* in support of its position. 282 F. Supp. 3d 499 (N.D.N.Y. 2017). But the words "vicarious liability" appear nowhere in *Reil*. Instead, *Reil* considers whether the actions of the sole member of a single-member LLC could be imputed to the defendant entity LLC for purposes of establishing the predicate violation. *Id*. at 524–25.[11] The SEC was not asserting simultaneous theories of substantial assistance and vicarious liability. Reliance on *Reil* is thus entirely misplaced and inapplicable to the issues at hand.

Finally, in 2018 the Southern District of New York squarely rejected the application of common law *respondeat superior* under § 20(a) for reasons persuasive here. *Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs., LLP*, No. 1:17-cv-1235-GHW, 2018 WL 1627266, at * 20–21 (S.D.N.Y. Mar. 30, 2018). In *Alpha Capital*, plaintiffs argued that defendant was liable

---

[10] Notably, every case cited by the Bureau in support of its CFPA vicarious liability claims was issued in the 1980s and 1990s, long before the substantial assistance provision was added to the SEC Act. As noted above, the additional statutory language addressed the issue of secondary liability, limiting vicarious liability predicated on a statutory securities law violation of everything occurring after codification. This explains why there are no cases after 1995 that include the expansive language relied on by the Bureau.

[11] The CFPA already provides a statutory provision to address employment relationships. *See* 12 U.S.C. § 5481(25) ("related persons" provision). Here, the Bureau is attempting to stretch their vicarious liability claims well beyond traditional *respondeat superior*. Plaintiff seeks to hold individual defendants liable for actions taken by completely unrelated individuals and unnamed debt collectors with whom the individual defendants' employers may or may not have done business at some unknown point in time.

for violations of § 20(a) of the SEC Act under a theory of vicarious liability. The court ultimately held that plaintiffs' theory would grossly expand liability to include conduct beyond that proscribed by the clear language of the SEC Act:

> The theory advanced by Plaintiffs, that an employer may be liable under Section 20(a) solely on the grounds of *respondeat superior*, would render pointless the requirement of culpable participation. It would also open the door to substantial liability by employers who may play no role in the fraud perpetrated by their employees, liability that is beyond the scope of that expressly provided for by the Exchange Act.

*Id.* at 21. While the Bureau may point to vague language in *Alpha Capital* that the "rights and remedies provided by the '34 Act" are "in addition to" those existing in law or equity, *id.* at 20 (citing *Marbury*, 629 F.2d at 716), any such argument is out of context and flies against the final holding. Applying the Southern District's logic to SEC Act § 20(e) and its CFPA equivalent, § 5536(a)(3), it follows that the CFPB's vicarious liability theory would grossly expand liability to include conduct beyond that proscribed by the clear language of the CFPA.

## III.   <u>CONCLUSION</u>

While the availability of common law vicarious liability under the CFPA is a matter of first impression, this Court is guided by jurisprudence applicable to the CFPA's model provision, § 20(e) of the SEC Act. The Bureau cannot point to a single case establishing the availability of vicarious liability under either the CFPA or the SEC Act. This is because in both statutes, Congress expressed its intent through the inclusion of a substantial assistance provision that now requires either knowledge or recklessness—to the exclusion of negligence. Accordingly, permitting vicarious liability claims would run afoul of Congress's intent and this Court should find that the Bureau is limited to pursuing only those claims expressly provided in the statute.

Dated: Denver, Colorado
January 26, 2023

BROWNSTEIN HYATT FARBER SCHRECK, LLP


*S.J. Auchterlonie*

_____

Sarah J. Auchterlonie, Esq. (pro hac vice)
410 Seventeenth Street
Suite 2200
Denver, CO 80202
Telephone: 303.223.1100
Facsimile: 303.223.1111
Email: sja@bhfs.com

LIPPES MATHIAS LLP


Brendan H. Little, Esq.
Richard M. Scherer, Jr., Esq.
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: 716-853-5100
Facsimile: 716-853-5199
Email: blittle@lippes.com
Email: rscherer@lippes.com


Attorneys for Defendants