UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Craig Manseth, Jacob Adamo, Darren Turco, United Debt Holding LLC, JTM Capital Management, LLC, UHG, LLC, UHG I LLC (also known as United Holding Group), and UHG II LLC (collectively holding themselves out as United Holding Group, United Holding Group, LLC, and United Holdings Group, LLC)<br><br>Defendants. | Case No. 1:22-cv-00029-LJV |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' POST-ARGUMENT BRIEF**

When Congress enacted the Consumer Financial Protection Act (CFPA) in 2010, it incorporated the long-established common law doctrine of vicarious liability. The history of vicarious liability under the Federal Trade Commission Act (FTCA)—the statute on which Congress based the relevant CFPA liability provision and its closest analogue—as well as the text and stated purpose of the CFPA demonstrate that vicarious liability exists under the CFPA. Moreover, contrary to Defendants' arguments, the CFPA's "related person" and "substantial assistance" provisions supplement rather than foreclose the availability of vicarious liability. Count I alleges violations of the CFPA by all Defendants for false threats of lawsuits and false statements about credit reporting by debt collectors with which they had placed consumer debt.[1] Because vicarious liability applies under the CFPA, the Court should deny Defendants' motion to dismiss Count I.

---

[1] Doc. 16 at 26-27. Counts II and III rely on substantial assistance liability, *id*. at 28-29; Count IV alleges violations of the Fair Debt Collection Practices Act (FDCPA), *id*. at 30-32; and Count V alleges violations of the CFPA arising from FDCPA violations, *id*. at 32.

1

## I. Congress relied on FTCA in enacting relevant CFPA liability provision.

In the wake of a worldwide banking and financial crisis, Congress enacted the CFPA and established the Consumer Financial Protection Bureau (CFPB) as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 to, among other things, "protect consumers from abusive financial services practices."[2] Prior to the enactment of the CFPA, the FTCA provided the primary general statutory protection against misconduct in consumer financial markets since its enactment in 1914, and the FTC had been the primary enforcer of its prohibition on "unfair" and "deceptive" practices.[3] The CFPA and FTCA were "both designed to protect the public from practices that unfairly exploit the imbalance of power between the individual consumer and the corporation" and both "empower watchdog agencies—like the CFPB and FTC—to enforce their standards through investigation and litigation."[4]

Congress specifically "reli[ed] on the FTCA in crafting the CFPA," expressly incorporating the FTCA's prohibitions on "unfair" and "deceptive" conduct into the CFPA's liability provision.[5] The FTC and the courts had already fleshed out the meaning of these terms in "a century's worth of legislative and judicial guidance," and Congress

---

[2] Pub.L. 111–203, 124 Stat 1376 (July 21, 2010). *See also CFPB v. TCF Nat'l Bank*, No. CV 17-166 (RHK/DTS), 2017 WL 6211033, at *2 (D. Minn. Sept. 8, 2017) (banking and financial crisis).
[3] *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 254 (D.D.C. 2014) (FTC was "federal agency with principal responsibility for protecting consumers from deceptive and unfair trade practices"); *FTC v. AT&T Mobility LLC*, 883 F.3d 848, 851 (9th Cir. 2018) (leading federal consumer protection agency).
[4] *CFPB v. NDG Fin. Corp.*, No. 15-CV-5211 (CM), 2016 WL 7188792, at *16 (S.D.N.Y. Dec. 2, 2016); *see also CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 904 (S.D. Ind. 2015) (CFPB, like FTC, authorized to regulate and litigate).
[5] *NDG Fin. Corp.*, 2016 WL 7188792, at *6; *CFPB v. D&D Mktg.*, No. 15-cv-9692, 2016 WL 8849698, at *6-7 & n.3 (C.D. Cal. Nov. 17, 2016) (application of CFPA relied on court decisions giving "shape to the meaning of [FTCA] ban" on unfair or deceptive practices).

intentionally "tapped into [this] existing body of law in framing the CFPA."[6] In light of Congress's use of parallel language in the CFPA, courts have repeatedly looked to the language of the FTCA, the case law interpreting the FTCA, and the interpretive guidance of the FTC, to define and interpret the CFPA.[7] This Court should do the same.

**II. Congress intended vicarious liability to apply under CFPA.**

It is axiomatic that Congress "legislates against a background of common-law adjudicatory principles,"[8] and statutory enactments should be "construed in the light of common-law principles" unless expressly abrogated.[9] Among those well-established principles are those of agency liability or vicarious liability, which provide theories under which one person may be held liable for the acts of another, such as principal-

---

[6] *CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 904 (S.D. Ind. 2015); *see also NDG Fin. Corp.*, 2016 WL 7188792, at *6 (CFPA use of FTCA terms "unfair" and "deceptive" presumptively incorporated "cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.") (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)).

[7] *Id.*; *see also NDG Fin. Corp.*, 2016 WL 7188792, at *6 (CFPA use of FTCA terms "unfair" and "deceptive" intentional use of "terms of art") (citation omitted); *D&D Mktg.*, 2016 WL 8849698, at *6-7 & n.3 (adopting long-established definitions unfair and knowing definitions from FTC and FTCA case law); *ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 904 (adopting FTCA definition of unfair); *CFPB v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1370 (N.D. Ga. 2015) (applying FTCA case law to construe CFPA's prohibition on "deceptive" conduct); *CFPB v. Gordon*, 819 F.3d 1179, 1193 & n.7 (9th Cir. 2016) (adopting definition of "deceptive" from FTCA); *CFPB v. Mortg. L. Grp., LLP*, 196 F. Supp. 3d 920, 939 (W.D. Wis. 2016).

[8] *Minerva Surgical, Inc. v. Hologic, Inc.*, 141 S. Ct. 2298, 2307 (2021) (alterations omitted) (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991)).

[9] *Rehberg v. Paulk*, 566 U.S. 356, 362–63 (2012) (Congress intended § 1983 remedial statute to be "construed in the light of common-law principles" (quoting *Kalina v. Fletcher*, 522 U.S. 118, 123 (1997)).

3

agent liability, *respondeat superior*, corporate liability for its employees, and common enterprise liability.[10]

When drafting the CFPA, Congress intentionally included the FTCA's prohibition of unfair and deceptive conduct and thus invoked the clearly established practice under FTCA precedent of applying these well-established principles of vicarious liability.[11] Courts have long held that corporations and principals are liable under the FTCA for the acts of their employees or agents acting within the scope of their actual or apparent authority, despite the fact that the FTCA does not contain an express vicarious liability provision.[12] Similarly, courts have held inextricably interrelated companies liable for the actions of other companies in their "common enterprise."[13] As several courts have

---

[10] *Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment.").
[11] *Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 108 ("[W]here a common-law principle is well established . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident") (citations and quotations omitted); *see also Briscoe v. LaHue*, 460 U.S. 325 (1983) (common law immunity from liability).
[12] *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 527 (S.D.N.Y. 2000) ("The law is clear that under the FTC Act, a principal is liable for misrepresentations made by his/her agents (i.e., those with the actual or apparent authority to make such representations)") (citing *Standard Distribs. v. FTC*, 211 F.2d 7, 13 (2d Cir. 1954)); *FTC v. Crescent Pub. Grp., Inc.*, 129 F. Supp. 2d 311, 324 (S.D.N.Y. 2001) (principals liable for conduct of corporations where they were in position to control conduct); *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 320 (S.D.N.Y. 2008) (company liable for the misrepresentations of its third-party telemarketer); *FTC v. Stefanchik*, 559 F.3d 924, 930 (9th Cir. 2009) (principal is liable for the misrepresentations of his agent acting within the scope of the agent's actual or apparent authority); *United States v. Dish Network L.L.C.*, 954 F.3d 970, 976 (7th Cir. 2020) ("A principal that learns of illegal behavior committed by its agents, chooses to do nothing, and continues to receive the gains, is liable for the agent's acts.") (citation omitted); *United States v. Johnson*, 541 F.2d 710, 712 (8th Cir. 1976) (principal liable for actions of agent which are within the scope of authority).
[13] *FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014) (under FTCA, interrelated companies jointly and severally liable for other's deceptive acts).

4

noted, a "corporation can only act through its agents" and liability often "cannot be imposed without reference to agency principles."[14] Thus, where a statute provides for the liability of corporations and principals, or for acts carried out by more than one person, such a statute intentionally invokes these longstanding principles of agency and vicarious liability, as Congress did when it enacted the CFPA.

### III. CFPA's "related person" provision does not annul vicarious liability.

There is no merit to Defendants' contention that the Act's "related person" provision reveals congressional intent to displace common law vicarious liability.[15] Defendants misrepresent the statutory role of the related person provision (defining who is subject to the Act) and vicarious liability (establishing when one person can be held liable for the acts of another). Defendants also misrepresent the well-established presumption that common law principles apply to statutes unless Congress clearly states otherwise, and they overlook Congress's inclusion of terms that intentionally invoke and necessarily depend on vicarious liability.

To understand the role of the CFPA's related person provision, the Court must first look to the definition of a "covered person." A "covered person" is one who "engages in offering or providing a consumer financial product or service,"[16] and may be either an individual or an entity, such as a company or an association.[17] Because companies can only

---

[14] *Am. Tel. & Tel. Co. v. Winback & Conserve Prog., Inc.*, 42 F.3d 1421, 1430-31 (3d Cir. 1994); *see also Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) (liability against a corporation must be proven by culpable act of agent with required mental state that is attributable to corporation).
[15] Doc. 52 at 2-3.
[16] 12 U.S.C. § 5481(6)(A). A "covered person" also includes a service provider affiliated with a covered person. *Id.* § 5481(6)(B), (26).
[17] 12 U.S.C. § 5481(19) (defining "person" as "individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity").

5

do business through the acts of their employees or agents, the covered person definition alone indicates that at least some form of common-law liability—such as an employer's liability for the acts of its employees—must be available under the CFPA.[18] The CFPA then broadens its coverage, by providing that a "related person" is to be deemed a "covered person," and defines a related person to include, among others, "any director, officer, or employee charged with managerial responsibility for, or controlling shareholder of, or agent for" a covered person.[19] The coverage provisions identify those subject to all of the CFPA's varied rules and requirements, including but not limited to supervision and rulemaking, not just enforcement.[20]

Contrary to Defendants' unsupported assertions, there is nothing in the CFPA's related person provision that evinces congressional intent to supplant vicarious liability; related persons and vicarious liability are distinct concepts that serve different functions.[21] The related person provision applies at the outset to help identify which parties are subject to *all of* the CFPA's rules and requirements, not just the liability for "unfair" and "deceptive" practices.[22] Vicarious liability, on the other hand, addresses when an individual or entity can be held responsible for the acts of another.[23] In fact, Congress's inclusion in the related

---

[18] *See Am. Tel. & Tel. Co.*, 42 F.3d at 1430-31.
[19] 12 U.S.C. § 5481(25)(C)(i). The definition of "related person" also includes "any shareholder, consultant, joint venture partner, or other person, as determined by the Bureau (by rule or on a case-by-case basis) who materially participates in the conduct of the affairs of such covered person; and any independent contractor (including any attorney, appraiser, or accountant) who knowingly or recklessly participates in any" violation or breach of fiduciary duty. *Id.* § 5481(25)(C)(ii)-(iii).
[20] *Id.* § 5481(25)(B).
[21] Doc. 52 at 4-5.
[22] See 12 U.S.C. § 5481 (definitions for purposes of entire Act).
[23] *Am. Tel. & Tel. Co.*, 42 F.3d at 1430-31.

6

person provision of terms such as "employee" or "agent" without further definition indicates a reliance by Congress on longstanding common law definitions and principles.[24]

Defendants misrepresent the default principle: that Congress is presumed to incorporate these long-standing common law principles unless it expressly states otherwise.[25] Instead, Defendants would have the court presume, without specific evidence, that Congress's silence should be assumed to abrogate centuries of common law precedent.[26] Had Congress actually intended to make a clear statement of its intent to foreclose use of vicarious liability for unfair or deceptive acts, it would have done so in its liability provision for those acts, not *sub silentio* in a coverage provision that applies to all the Act's rules and requirements.

### IV. CFPA's "substantial assistance" liability does not annul vicarious liability.

There is similarly no merit to Defendants' contention that Congress's inclusion of substantial assistance liability must indicate its intent to preclude vicarious liability, and their citation to SEC case law is misplaced and unavailing.[27] Defendants ignore the distinction recognized by numerous courts between vicarious liability and substantial assistance, which are neither co-extensive nor mutually exclusive.[28]

The CFPA provides that any person, regardless of whether they are otherwise covered by the CFPA, is liable if they "knowingly or recklessly provide substantial

---

[24] *United States v. Turley*, 352 U.S. 407, 411 (1957) (where statute uses common-law term of established meaning without defining it, term is given common-law meaning).
[25] *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013) (common law presumed incorporated "absent an indication to the contrary in the statute itself").
[26] *See* Doc. 52 at 5 (presuming that statutory omission is intentional rejection).
[27] Doc. 52 at 8.
[28] *Cf. NDG Fin. Corp.*, 2016 WL 7188792, at *15-16 (rejecting contention that Congress intended "related person" and "substantial assistance" provisions to replace common enterprise liability, which was available under CFPA as under FTCA).

7

assistance to a covered person" in violation of the prohibition on unfair, deceptive, or abusive act or practices.[29] Thus, the substantial assistance provision extends liability to an actor based on the actor's *facilitation* of the primary violation without regard to the actor's relationship to the primary violator.[30] Vicarious liability, on the other hand, imposes liability on a person based on the *relationship* to the violator.[31] The theories are thus complementary, applying to different situations and based on different criteria.

Although the CFPA and the SEC Act differ substantially in their purpose and frameworks, securities case law is instructive on one point relevant here: namely, that the inclusion of a "substantial assistance" provision in a statute does not replace or foreclose the availability of common law vicarious liability.[32] Indeed, Defendants rely nearly exclusively on SEC case law to support their argument that the existence of a substantial assistance provision precludes the application of common law vicarious liability.[33] But a more fulsome look at the SEC case law belies Defendants' contentions.

After the Supreme Court held that private plaintiffs could not recover on a theory of aiding and abetting liability under the SEC Act, Congress added an explicit provision

---

[29] 12 U.S.C. § 5536(a)(3).
[30] *See* William H. Kuehnle, *Secondary Liability Under the Federal Securities Laws- Aiding and Abetting Conspiracy, Controlling Person, and Agency: Common-Law Principles and the Statutory Scheme*, 14 J. Corp. L. 313, 318-19 & n. 28 (1989) (vicarious liability refers to liability based on relationship, such as principal/agent, while "aiding and abetting" or substantial assistance refers to liability based on conduct).
[31] *See Am. Tel. & Tel. Co.*, 42 F.3d at 1430-32 (concluding, based on detailed comparison of aiding and abetting liability and agency liability, that *Central Bank* did not preclude the latter).
[32] To be clear, because Congress drew language for the CFPA from multiple sources, the Court should not, as Defendants imply, apply SEC precedent when interpreting all provisions in the CFPA but should cabin any such consideration to provisions which clearly draw on the SEC Act, such as the "substantial assistance" provision.
[33] Doc. 52 at 7-10.

empowering the SEC to pursue substantial assistance claims.[34] In the years since, courts have consistently held that the availability of aiding and abetting liability had no effect on the continued availability of vicarious liability under the Act.[35] Indeed, the majority of the courts to have considered the issue have consistently applied vicarious liability in SEC Act cases based on common law agency principles regardless of the inclusion of substantial assistance.[36]

Defendants err in their simplistic criticism of the Bureau's reliance on *SEC v. Riel* because, they contend, the case fails to use the words "vicarious liability."[37] The court in *Riel* found the company liable for the securities violations of its sole owner/employee under *respondeat superior*, and found the individual defendant substantially assisted the company's violations under the SEC Act's substantial assistance provision.[38] *Riel* is

---

[34] *See* Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995) (restoring "aiding and abetting" authority to the SEC after *Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164 (1994)).
[35] *See, e.g.*, *SEC v. Conaway*, No. 2:05-CV-40263, 2009 WL 902063, at *12-13 (E.D. Mich. Mar. 31, 2009) (describing consensus rule that vicarious liability may attach for certain misrepresentations in violation of SEC Act); *SEC v. Currency Trading Int'l, Inc.*, No. 02-cv-05143, 2004 WL 2753128, at *11 (C.D. Cal. Feb. 2, 2004) (principals and supervisors were liable for violations of employees under "agency theory").
[36] *See, e.g., Suez Equity Inv., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001) (*Central Bank* did not shield business entities from being held liable for misstatements of their agents)*; Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 225-28 (S.D.N.Y. 2013) (plaintiff adequately pleaded vicarious liability for agent's acts, a theory not addressed nor foreclosed by *Central Bank*); *In re Parmalat Sec. Litig.*, 474 F. Supp. 2d 547, 550-51 (S.D.N.Y. 2007) (*respondeat superior* "untouched" by *Central Bank*, necessary to hold corporations liable for securities fraud by employees); *Cromer Fin. Ltd. v. Berger*, 2002 WL 826847 at *7 (S.D.N.Y. 2002) (*Central Bank* does not undermine application "agency law to hold principals responsible for the misstatements and omissions of their agents"). *But see In re Fidelity/Micron Sec. Litig.*, 964 F. Supp. 539, 543-44 (D. Mass. 1997) (querying *respondeat superior* viability after *Central Bank*).
[37] Doc. 52 at 9.
[38] *SEC v. Riel*, 282 F. Supp. 3d 499, 525 (N.D.N.Y. 2017).

consistent with the consensus among the courts interpreting the SEC Act that vicarious liability and substantial assistance liability are not mutually exclusive.[39]

Finally, Defendants' reliance on *Alpha Capital* is misplaced.[40] That case did not involve substantial assistance but rather so-called "control person" liability under SEC Act § 20(a), which "requires, through the affirmative defense, a defendant to disprove certain wrongful conduct on its part."[41] The *Alpha Capital* court held that the plaintiffs could not utilize the theory of vicarious liability in connection with a claim under § 20(a).[42] The CFPA does not include a "control person" liability provision, so the analysis is not relevant here. And in any event, courts have almost uniformly rejected the argument that the SEC Act's inclusion of a "control person" provision indicates congressional intent to preclude the application of common-law vicarious liability in securities cases.[43] Similarly here, Congress did not indicate its intent to supplant vicarious liability with the CFPA's substantial assistance provision, only that it intended the provision to supplement other bases, such as vicarious liability.

## CONCLUSION

For these reasons, the Court should conclude that vicarious liability is applicable to claims under the CFPA, and should decline to dismiss Count I.[44]

---

[39] *See id*.

[40] Doc. 52 at 9-10 (citing *Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs., LLP*, No. 1:17-cv-1235-GHW, 2018 WL 1627266, at *20-21 (S.D.N.Y. Mar. 30, 2018)).

[41] *Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 722 (11th Cir. 2008). *See Alpha Cap.*, 2018 WL 1627266, at 19-21.

[42] *Alpha Cap.*, 2018 WL 1627266, at *21.

[43] *See Laperriere*, 526 F.3d at 725 (collecting cases) (noting "consensus in the circuit courts that section 20(a) was intended to supplement, not to supplant the common law theory of *respondeat superior*" as basis for vicarious liability under the Act).

[44] The court should also deny Defendants' challenge to Count V for alleging CFPA liability for FDCPA violations. Doc. 52 at 3-4. As explained in the Bureau's Opposition, vicarious liability is also available under the FDCPA. *See* Doc. 37 at 41-42.

Dated: February 9, 2023

Respectfully submitted,

Eric Halperin
Enforcement Director

Richa S. Dasgupta
Deputy Enforcement Director

Timothy M. Belsan
Assistant Litigation Deputy

/s/ Stephanie C. Brenowitz
Enforcement Attorney
Stephanie C. Brenowitz
E-mail: Stephanie.Brenowitz@cfpb.gov
Telephone: 202-435-9005

Vanessa Buchko    Vanessa.Buchko@cfpb.gov
Shirley Chiu      Shirley.Chiu@cfpb.gov
Stephanie Garlock Stephanie.Garlock@cfpb.gov

Counsel for Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Fax: 202-435-7722