02:16PM

1

**UNITED STATES DISTRICT COURT**

2

**WESTERN DISTRICT OF NEW YORK**

3
_____

**CONSUMER FINANCIAL PROTECTION BUREAU,**

4                                          Case No. 1:22-cv-29
                    Plaintiff,                      (LJV)

5    vs.
                                        October 12, 2023

6    **CRAIG MANSETH,**
     **JACOB ADAMO,**

7    **DARREN TURCO,**
     **UNITED DEBT HOLDING LLC,**

8    **JTM CAPITAL MANAGEMENT, LLC,**
     **UHG, LLC,**

9    **UHG I LLC,** a/k/a United Holding Group
     **UHG II LLC,** Collectively holding

10     themselves out as United Holding
       Group, United Holding Group, LLC

11     and United Holdings Group, LLC

12                  Defendants.
     _____

13

14      **TRANSCRIPT OF ORAL ARGUMENT – via ZOOM FOR GOVERNMENT**
            **BEFORE THE HONORABLE LAWRENCE J. VILARDO**

15                  **UNITED STATES DISTRICT JUDGE**

16
     **APPEARANCES:**            **CONSUMER FINANCIAL PROTECTION BUREAU**

17                          **BY: STEPHANIE C. BRENOWITZ, ESQ.**
                                **VANESSA ANNE BUCHKO, ESQ.**

18                              **STEPHANIE B. GARLOCK, ESQ.**
                                **CHRISTOPHER D. JACKSON, ESQ.**

19                          1700 G Street, NW
                            Washington, D.C.  20552

20                          For the Plaintiff

21

22

23

24

25

```
 1                         LIPPES MATHIAS LLP
                           BY: BRENDAN H. LITTLE, ESQ.
 2                         50 Fountain Plaza
                           Suite 1700
 3                         Buffalo, New York 14202
                              And
 4                         BROWNSTEIN HYATT FARBER SCHRECK, LLP
                           BY: MATTHEW C. ARENTSEN, ESQ.
 5                              SARAH J. AUCHTERLONIE, ESQ.
                           675 Fifteenth Street
 6                         Suite 2900
                           Denver, Colorado 80202
 7                         For the Defendant Craig Manseth

 8   LAW CLERK:            CHELSEA R.C. THOMEER, ESQ.

 9   COURT DEPUTY CLERK:   COLLEEN M. DEMMA

10   COURT REPORTER:       ANN M. SAWYER, FCRR, RPR, CRR
                           Robert H. Jackson Courthouse
11                         2 Niagara Square
                           Buffalo, New York 14202
12                         Ann_Sawyer@nywd.uscourts.gov

13

14

15

16

17

18

19

20

21

22

23

24

25
```

CFPB v Craig Manseth - Oral Argument - 10/12/23

3

| | | |
|---|---|---|
| 02:40PM | 1 | (Proceedings commenced at 2:40 p.m.) |
| 02:40PM | 2 | THE COURT:  Can everybody hear me? |
| 02:40PM | 3 | MR. LITTLE:  Good afternoon, Judge. |
| 02:40PM | 4 | THE CLERK:  I'll call the case, Judge. |
| 02:40PM | 5 | The United States District Court for the Western |
| 02:40PM | 6 | District of New York is now in session, the Honorable |
| 02:40PM | 7 | Lawrence J. Vilardo presiding. |
| 02:40PM | 8 | 22-CV-29, Consumer Financial Protection Bureau versus |
| 02:40PM | 9 | Manseth, et al. |
| 02:40PM | 10 | Attorneys Stephanie Brenowitz, Vanessa Buchko, |
| 02:41PM | 11 | Stephanie Garlock, and Christopher Jackson, appearing on |
| 02:41PM | 12 | behalf of the plaintiff. |
| 02:41PM | 13 | Attorneys Matthew Arentsen, Sarah Auchterlonie, and |
| 02:41PM | 14 | Brendan Little, appearing on behalf of the defendants. |
| 02:41PM | 15 | All parties are appearing by Zoom videoconference, |
| 02:41PM | 16 | and this is the date set for an oral argument. |
| 02:41PM | 17 | THE COURT:  Okay.  Good afternoon, everybody.  Let me |
| 02:41PM | 18 | start by saying what I've been saying at the beginning of all |
| 02:41PM | 19 | these conferences that we've done by phone or by Zoom, and |
| 02:41PM | 20 | that is that no one is to record or rebroadcast this in any |
| 02:41PM | 21 | way.  That's under penalty of contempt and the sanctions that |
| 02:41PM | 22 | might go along with it. |
| 02:41PM | 23 | So who's going to argue on behalf of the defendants? |
| 02:41PM | 24 | MR. LITTLE:  I am, Judge. |
| 02:41PM | 25 | THE COURT:  Okay.  And who's going to argue on behalf |

CFPB v Craig Manseth - Oral Argument - 10/12/23

4

| | | |
|---|---|---|
| 02:41PM | 1 | of the plaintiff? |
| 02:41PM | 2 | MS. GARLOCK:  I am, Your Honor. |
| 02:41PM | 3 | THE COURT:  Ms. Garlock? |
| 02:41PM | 4 | MS. GARLOCK:  Yes. |
| 02:41PM | 5 | THE COURT:  Okay.  So, Mr. Little, I guess it's your |
| 02:41PM | 6 | motion for a stay, so the floor is yours to begin. |
| 02:41PM | 7 | MR. LITTLE:  Thank you, Judge. |
| 02:41PM | 8 | May it please the Court, I think the five factors are |
| 02:41PM | 9 | well briefed before the Court, and the rationale.  I'm not |
| 02:42PM | 10 | gonna repeat my brief on that.  I think those factors are well |
| 02:42PM | 11 | settled. |
| 02:42PM | 12 | I'd like to go right into the CFPB's arguments why a |
| 02:42PM | 13 | stay is not warranted, if I could, to expedite this process. |
| 02:42PM | 14 | THE COURT:  Yep. |
| 02:42PM | 15 | MR. LITTLE:  The first, the CFPB argued that |
| 02:42PM | 16 | originally the defendants did not argue about the |
| 02:42PM | 17 | constitutionality of the existence of the CFPB, and that is |
| 02:42PM | 18 | entirely accurate.  We moved in early 2022, long before the |
| 02:42PM | 19 | 5th Circuit found it being unconstitutional, I think there was |
| 02:42PM | 20 | a mistake or a typo in the opposition brief saying we did not |
| 02:42PM | 21 | mention it in oral argument in March 2023.  There was not an |
| 02:42PM | 22 | argument in 2023, it was in January of '23.  The U.S. Supreme |
| 02:42PM | 23 | Court granted cert in February of 2023. |
| 02:42PM | 24 | So, at the time, yes, we raised the 5th Circuit's |
| 02:42PM | 25 | existence or the case of -- with the Court, but did not |

CFPB v Craig Manseth - Oral Argument - 10/12/23

5

02:42PM    1    advocate for a stay.  It is not until the Supreme Court

02:43PM    2    ultimately granted cert and, of course, has heard argument

02:43PM    3    already.

02:43PM    4         THE COURT:  Let me -- let me tell you -- let me cut

02:43PM    5    to the quick even a little more.  The argument that the

02:43PM    6    plaintiffs make that turns my head a bit, Mr. Little, is the

02:43PM    7    prejudice to them from, you know, memories fading and not

02:43PM    8    being able to conduct some discovery within the next eight

02:43PM    9    months.  What's the reason that we should stay this altogether

02:43PM   10    and not just perhaps impose a schedule that would allow some

02:43PM   11    but not exhaustive discovery to take place in the next eight

02:43PM   12    months?  Why aren't they entitled to at least preserve what

02:43PM   13    they want to preserve in connection with the litigation?

02:43PM   14         MR. LITTLE:  Judge, because before this litigation

02:43PM   15    was filed, they did two years worth of discovery to the CID

02:43PM   16    process.  We, the defendants, have turned over terabytes of

02:43PM   17    information, which is supposedly the basis for the amended

02:43PM   18    complaint.  That's where they got all of the supposed

02:44PM   19    recordings and information, et cetera.

02:44PM   20         So unlike a traditional, you know, plaintiff versus

02:44PM   21    defendant lawsuit, the government has availed themselves of

02:44PM   22    their opportunity to serve the CIDs and, you know, hundreds if

02:44PM   23    not --

02:44PM   24         THE COURT:  Have -- have they taken depositions?

02:44PM   25         MR. LITTLE:  They have not taken -- they have not --

CFPB v Craig Manseth - Oral Argument - 10/12/23

6

| | | |
|---|---|---|
| 02:44PM | 1 | they have sat for some information, but they have not taken |
| 02:44PM | 2 | depositions of the individual defendants. |
| 02:44PM | 3 | THE COURT:  So, so, and I think that that's what |
| 02:44PM | 4 | they're talking about when they talk about, you know, memories |
| 02:44PM | 5 | fading, that there are things that they'd like to preserve |
| 02:44PM | 6 | now.  And so, again, my question to you is:  What -- what is, |
| 02:44PM | 7 | you know, I understand what the harm is.  The harm is that you |
| 02:44PM | 8 | may not have to do any of this if the Supreme Court decides |
| 02:44PM | 9 | that the 5th Circuit was right.  But -- |
| 02:44PM | 10 | MR. LITTLE:  And -- |
| 02:44PM | 11 | THE COURT:  -- but we don't know that that's going to |
| 02:44PM | 12 | be the case.  And, you know, so it seems to me that there is |
| 02:44PM | 13 | at least some interest on the plaintiff's part that there not |
| 02:45PM | 14 | be a complete stay, but as I say, perhaps, you know, |
| 02:45PM | 15 | scratching the itch that they say they have with respect to |
| 02:45PM | 16 | preserving memories, preserving evidence that might be lost as |
| 02:45PM | 17 | memories fade.  I understand that. |
| 02:45PM | 18 | MS. AUCHTERLONIE:  If I may, Your Honor, I've |
| 02:45PM | 19 | represented the defendants in the CID process, and there have |
| 02:45PM | 20 | been three investigational hearings which are like a |
| 02:45PM | 21 | deposition, however they're under the administrative |
| 02:45PM | 22 | authority, two former employees and one of the owner, Craig |
| 02:45PM | 23 | Manseth.  So they do have that testimony preserved. |
| 02:45PM | 24 | THE COURT:  Okay.  Thank you. |
| 02:45PM | 25 | MR. LITTLE:  Thank you, Sarah.  Yeah. |

CFPB v Craig Manseth - Oral Argument - 10/12/23

7

02:45PM    1        And, Judge, it's also the cost, right?  I mean, you

02:45PM    2   know, we've spent hundreds of thousands of dollars already in

02:45PM    3   the CID process, and so, you know, all of the, quote, unquote,

02:45PM    4   evidence that's out there is really not in the possession of

02:45PM    5   the defendants, these are these supposed, you know, consumers

02:46PM    6   that are out there or the agencies that have been making the

02:46PM    7   telephone calls.

02:46PM    8        Remember, Judge, this is not about what -- UHG's

02:46PM    9   conduct, this is about UHG supposedly ignoring the conduct of

02:46PM   10   third parties.

02:46PM   11        THE COURT:  Right.

02:46PM   12        MR. LITTLE:  So this has nothing to do with, per se,

02:46PM   13   UHG's conduct.  So that -- and they have the information

02:46PM   14   already, that's supposedly the basis for the amended complaint

02:46PM   15   when they got to the CID process.  And then we have the cost

02:46PM   16   of this, argument was already had.  I get that, you know, some

02:46PM   17   of these denials were out there, because, hey, we don't even

02:46PM   18   know if the Supreme Court's gonna take this.  Okay.  Then they

02:46PM   19   have taken it.  Oh, we don't even have an argument yet.  The

02:46PM   20   argument's already happened.  I mean, this is kind of a unique

02:46PM   21   scenario when in making an application for a stay, the

02:46PM   22   argument has already taken place.  So we're talking about a

02:46PM   23   short delay.  We're talking about --

02:46PM   24        THE COURT:  Well, it could be, I mean, you say

02:46PM   25   "short."  The Supreme Court often has a flurry of opinions in

CFPB v Craig Manseth - Oral Argument - 10/12/23

8

02:46PM   1   May and June, right?  So we could be talking nine months.

02:46PM   2         MR. LITTLE:  Sure.  But it's not -- I agree, Judge,

02:47PM   3   but it's, you know, in a typical fashion, sometimes we're

02:47PM   4   asking for an 18-month stay, right?

02:47PM   5         THE COURT:  Yeah.

02:47PM   6         MR. LITTLE:  Because they just had granted cert,

02:47PM   7   briefings done, arguments had.  Yes, I'll grant it, six months

02:47PM   8   is six months.  But, you know, in the grand scheme of things

02:47PM   9   of Supreme Court litigation, six months is, I guess, rather

02:47PM  10   quick.

02:47PM  11         THE COURT:  Yeah.  Let me ask Ms. Garlock, what do

02:47PM  12   you need?  Why -- why should -- well, let me -- let me ask

02:47PM  13   another question first.

02:47PM  14         The way -- it seems to me that the weight of the

02:47PM  15   authority seems to be in favor of granting the stay.

02:47PM  16         You've got a couple Massachusetts cases and an

02:47PM  17   Illinois case on the District Court level.  You don't have

02:47PM  18   anything from the 2nd Circuit, at least I don't see anything

02:47PM  19   cited from courts in the 2nd Circuit that have denied stays.

02:47PM  20         Would you agree with me that the weight of the

02:47PM  21   authority seems to be in favor of staying?

02:47PM  22         MS. GARLOCK:  I wouldn't agree that the weight of the

02:47PM  23   authority is in favor of staying, in part because there are

02:47PM  24   decisions on both sides.  The bureau has consistently opposed

02:48PM  25   a stay and has -- and courts have continued to move forward,

02:48PM   1   including even courts evaluating the merits of the

02:48PM   2   constitutional argument which, again, this is something this

02:48PM   3   Court doesn't have to do since it's --

02:48PM   4           THE COURT:  Right.

02:48PM   5           MS. GARLOCK:  -- not before -- before you now.

02:48PM   6           So, I mean, I think, you know, courts across the

02:48PM   7   country are dealing with relatively similar sets of concerns,

02:48PM   8   although obviously applying them in different cases.

02:48PM   9           Here we have quite significant showing of ongoing

02:48PM  10   consumer harm, the same exact kind of consumer harm evidence

02:48PM  11   that the District Court in Illinois found in TransUnion.  And

02:48PM  12   so while we don't have cases in the 2nd Circuit, we also would

02:48PM  13   again point to some of the discussion of why I think the

02:48PM  14   Credit Acceptance Corp. and MoneyGram courts were faced with a

02:48PM  15   little bit of a different decision than Your Honor has --

02:48PM  16           THE COURT:  Do you have any decisions -- so I've

02:48PM  17   noted two Massachusetts cases, one from the Illinois court,

02:48PM  18   Northern District, I think, of Illinois.  And then the only

02:49PM  19   other case I think you cite is a Surrogate's Court case from

02:49PM  20   the 9th Circuit.  Are there any other cases that you have?

02:49PM  21           MS. GARLOCK:  So those are the cases denying stays.

02:49PM  22   But there are also of court cases that are just moving forward

02:49PM  23   where there might have been other procedural hurdles, but

02:49PM  24   where courts have -- I know the bureau has won at summary

02:49PM  25   judgment several times since the Supreme Court granted cert in

CFPB v Craig Manseth - Oral Argument - 10/12/23

10

02:49PM  1  CFSA.  So there are certainly zero enforcement actions moving

02:49PM  2  forward across the country.

02:49PM  3      I have one other case I'd like to draw your attention

02:49PM  4  to which might be a little bit of a model here, which is --

02:49PM  5  and it's not cited in our papers since much of this was a

02:49PM  6  discussion in a hearing.  Let me pull it up.  It's the Bureau

02:49PM  7  of Litigation against Fifth Third in the Southern District of

02:49PM  8  Ohio, that's 21-cv-262.  There was a hearing on pleadings in

02:49PM  9  that case, but discovery was ongoing.  And the district court

02:50PM  10  at a hearing in the spring indicated, you know, it was an

02:50PM  11  extensive discovery hearing, it took all day, and the Court

02:50PM  12  decided that it wanted to move forward on deciding a motion

02:50PM  13  for judgment on the pleadings to the extent there were

02:50PM  14  nonconstitutional grounds.  And so we think that is -- could

02:50PM  15  be a model here, not that there is a pending motion raising

02:50PM  16  the constitutional issue, but for many of the same reasons

02:50PM  17  allowing the Bureau to continue to pursue discovery

02:50PM  18  notwithstanding that there is obviously some open

02:50PM  19  constitutional question.  And we think --

02:50PM  20      THE COURT:  So let me ask you this.  When you talk

02:50PM  21  about the cases that are ongoing where there has not been a

02:50PM  22  decision made, I assume that's because the defendants have not

02:50PM  23  asked for a stay.

02:50PM  24      MS. GARLOCK:  So in some of them they didn't ask for

02:50PM  25  a stay.  There was -- there was one of the cases cited in our

02:50PM 1 brief, Credit -- sorry, Consumer Advocacy Center in the

02:50PM 2 Central District of California, there was a summary judgment

02:51PM 3 case and the defendant made the motion on the merits.  He --

02:51PM 4 or, he didn't oppose that the Bureau's summary judgment motion

02:51PM 5 on the merits, raising the funding issue is also in a footnote

02:51PM 6 said you also could stay this litigation, the Court didn't see

02:51PM 7 the need to stay the litigation, and decided summary judgment

02:51PM 8 in favor of the Bureau, and that case is now on appeal in the

02:51PM 9 9th Circuit.

02:51PM 10          THE COURT:  Okay.  But let --

02:51PM 11          MS. GARLOCK:  So there's a variety of different

02:51PM 12 things, but we think that TransUnion is also -- you know, the

02:51PM 13 Northern District of Illinois case is possibly the most

02:51PM 14 helpful to you.

02:51PM 15          THE COURT:  No, I understand, and I'm not -- and I'm

02:51PM 16 not -- I'm not trying to -- to look at the quality of the

02:51PM 17 decisions, I just want to look at the quantity of the

02:51PM 18 decisions.  And in your -- and you seem to be fighting me on

02:51PM 19 numbers that -- that doesn't seem like it's a fight you're

02:51PM 20 gonna win because Mr. Little cites, you know, I don't know, a

02:51PM 21 dozen cases maybe, and you've given me three.

02:52PM 22          MS. GARLOCK:  Sorry, Your Honor.  I would just say, I

02:52PM 23 don't think it's a dozen cases.  There are, you know, there

02:52PM 24 are of course the two cases in the Southern District of

02:52PM 25 New York, which we've explained why we think they're

02:52PM  1   distinguishable.  I just don't think the numbers are 12 versus

02:52PM  2   three.

02:52PM  3           THE COURT:  Okay.

02:52PM  4           MS. GARLOCK:  But, you know, we're happy to -- we

02:52PM  5   don't think it's really ultimately a numbers game, it's more

02:52PM  6   about, you know, it's the evaluation of this case.

02:52PM  7           THE COURT:  Yep.  Okay.  So, what do you need to --

02:52PM  8   tell me, so, a question that I -- that I often ask myself when

02:52PM  9   I have to decide things like this is what if I'm wrong.

02:52PM  10  What's the harm -- what's the harm that's going to occur if

02:52PM  11  I'm wrong.

02:52PM  12          And I understand -- and by "wrong" here, I mean,

02:52PM  13  there's no wrong, right, it's a discretionary decision on my

02:52PM  14  part.  But by "wrong" I mean the Supreme Court ends up

02:52PM  15  deciding, affirming the 5th Circuit in the case that's pending

02:52PM  16  in the Supreme Court, I forget the name of it.  That means

02:52PM  17  that we've now wasted a lot of money in discovery that didn't

02:53PM  18  need to have happened, and Mr. Little's clients are out a

02:53PM  19  substantial sum of money.

02:53PM  20          If -- if -- if the Supreme Court reverses and the

02:53PM  21  case -- this case proceeds, I understand your argument is that

02:53PM  22  we'll have lost, you know, eight months, or six months, or

02:53PM  23  five months, or whatever, of memory of some people.  And --

02:53PM  24  and Ms. Auchterlonie says that you've gotten some depositions.

02:53PM  25          What do you need -- I mean, is there -- is there a

CFPB v Craig Manseth - Oral Argument - 10/12/23

13

02:53PM   1   limited stay that I can impose here, and say, okay, here's

02:53PM   2   what we can do, the defendants will answer by a certain date

02:53PM   3   and you can take, you know, two depositions, and otherwise the

02:53PM   4   case is stayed.  Is there some middle ground like that that

02:53PM   5   might solve the problem from your perspective?

02:54PM   6          MS. GARLOCK:  So I think first we would, just to very

02:54PM   7   briefly hitch on no stay at all, you know, I -- I would point

02:54PM   8   the Court also to the harm beyond our ability to litigate this

02:54PM   9   case which is any amount, you know, we've -- we've obviously

02:54PM   10  covered that in our papers, the harm to consumers, and getting

02:54PM   11  them the relief they need.  But so --

02:54PM   12         THE COURT:  But tell me what the -- what's the real

02:54PM   13  harm there?  Tell me what the real harm is there.  I

02:54PM   14  understand this kind of esoteric harm, metaphysical harm,

02:54PM   15  but -- but tell me what the real issue is in delaying this

02:54PM   16  five or six or eight months in that regard.

02:54PM   17         I mean, I understand the reality of the harm in terms

02:54PM   18  of people not remembering today, what -- or, not remembering

02:54PM   19  in six months what they remember today.  As I get older, I

02:54PM   20  understand more and more exactly that.

02:54PM   21         But -- but I'm not really grasping what the -- the

02:55PM   22  real harm is with respect to the delay and consumers

02:55PM   23  generally.  Tell me -- tell me more about that.

02:55PM   24         MS. GARLOCK:  I'm sorry, Your Honor, I was just

02:55PM   25  trying to very briefly, you know, make a pitch for the fact

CFPB v Craig Manseth - Oral Argument - 10/12/23

02:55PM    1    that pitching this back six months might push back final

02:55PM    2    judgment.

02:55PM    3                THE COURT:  Yeah.  Okay.

02:55PM    4                MS. GARLOCK:  We allege ongoing harm, we allege --

02:55PM    5                THE COURT:  Yeah.  I get it.

02:55PM    6                MS. GARLOCK:  So that was a brief pitch.

02:55PM    7                THE COURT:  And it's a good argument, it's just not

02:55PM    8    one that really turns my head.  I'm a practical -- I like to

02:55PM    9    think of myself, anyway, as a practical guy.  I practiced law

02:55PM   10    for 35 years and so, you know, I think I have a pretty good

02:55PM   11    sense of what's important, what's not important.  And things

02:55PM   12    like this, while I'm not saying it's not important, it's

02:55PM   13    just -- there's not a real practical meat-and-potatoes injury

02:55PM   14    that you're talking about.

02:55PM   15                So tell me about -- so tell me about a -- perhaps a

02:55PM   16    middle ground that might solve the issue.

02:55PM   17                MS. GARLOCK:  So we do also think that, you know, a

02:56PM   18    middle ground could be certainly requiring the defendants to

02:56PM   19    answer and then beginning discovery.  And my colleague,

02:56PM   20    Stephanie Brenowitz, who's also here today and has been, you

02:56PM   21    know, more involved in some of the investigative stages of

02:56PM   22    this case might have a little bit of a better sense of, you

02:56PM   23    know, on a very specific level of, you know, which depositions

02:56PM   24    we might need, how many, you know, we're concerned both about

02:56PM   25    the witnesses on the -- on the part of the defendants and on

02:56PM   1    the part of the third-party debt collectors that they work

02:56PM   2    with, and consumers who we regularly have consumer witnesses

02:56PM   3    in our cases.  I don't know whether we would decide to want to

02:56PM   4    have those here, but they are also people who might, you know,

02:56PM   5    over time not -- their memories would fade too.  But of course

02:56PM   6    my colleague Ms. Brenowitz could -- could add anything more

02:56PM   7    specific.

02:56PM   8            THE COURT:  Ms. Brenowitz.

02:56PM   9            MS. BRENOWITZ:  Yes, good afternoon, Your Honor.  We

02:56PM   10   would certainly be willing to consider a middle ground.  As

02:57PM   11   Ms. Auchterlonie already said, we did take testimony from

02:57PM   12   Mr. Manseth.  That was several years ago at this point.

02:57PM   13           And at that point, the Bureau had little, if any,

02:57PM   14   knowledge about one of the defendants in this case.  The

02:57PM   15   United group, UHG, sorry, United Holding Group.

02:57PM   16           THE COURT:  That's okay.

02:57PM   17           MS. BRENOWITZ:  And so we had limited information.

02:57PM   18           Since that time, defendants are now contending that

02:57PM   19   both UDH and JTM are out of business, which is another issue

02:57PM   20   in terms of being able to obtain that evidence, documents,

02:57PM   21   witnesses, former employees.  These are all things that have

02:57PM   22   changed since that testimony was taken.  So certainly, we

02:57PM   23   would want to be able to depose the defendants and to be able

02:58PM   24   to conduct some third-party discovery which should really be

02:58PM   25   no cost to defendants.  And that --

CFPB v Craig Manseth - Oral Argument - 10/12/23

16

| | | |
|---|---|---|
| 02:58PM | 1 | THE COURT:  Well, except -- except they're going to |
| 02:58PM | 2 | have to, I mean, they need a lawyer there, right? |
| 02:58PM | 3 | MS. BRENOWITZ:  For depositions, yes.  But in terms |
| 02:58PM | 4 | of obtaining -- |
| 02:58PM | 5 | THE COURT:  Oh, document discovery, you mean? |
| 02:58PM | 6 | MS. BRENOWITZ:  Yes. |
| 02:58PM | 7 | THE COURT:  Okay. |
| 02:58PM | 8 | MS. BRENOWITZ:  You know, interviewing and obtaining |
| 02:58PM | 9 | declarations.  And I would also just like to briefly mention |
| 02:58PM | 10 | that the ongoing harm here is also the fact that, as |
| 02:58PM | 11 | Mr. Little mentioned, this is the conduct of third parties in |
| 02:58PM | 12 | addition to the conduct of defendants that is continuing to |
| 02:58PM | 13 | impact consumers every day.  We are still receiving complaints |
| 02:58PM | 14 | from people who have received phone calls and are paying, you |
| 02:58PM | 15 | know, on these debts that are being collected unlawfully, and |
| 02:58PM | 16 | that's nine months of consumers continuing to be impacted by |
| 02:59PM | 17 | this harm, plus whatever the rest of the litigation is beyond |
| 02:59PM | 18 | that, that is going to put out just that much longer until |
| 02:59PM | 19 | those consumers receive the relief of not having to be, you |
| 02:59PM | 20 | know, the victims of the defendant's misconduct by entering |
| 02:59PM | 21 | that kind of a stay. |
| 02:59PM | 22 | THE COURT:  Okay.  Mr. Little, what do you think |
| 02:59PM | 23 | about this proposal of some sort of middle ground where we |
| 02:59PM | 24 | allow some discovery to go forward but otherwise -- so -- so |
| 02:59PM | 25 | we slow the case down, but we don't stop it. |

CFPB v Craig Manseth - Oral Argument - 10/12/23

17

02:59PM  1        MR. LITTLE:  It's somewhat problematic, Judge,

02:59PM  2   because I hear the Bureau saying, hey, look, we want to talk

02:59PM  3   to third-party debt collectors, we want to talk to the

02:59PM  4   consumers.  They had that opportunity during the CID process

02:59PM  5   and could have done that as part of their investigation.  They

02:59PM  6   didn't need to start this lawsuit in order to make sure to

03:00PM  7   preserve those memories.

03:00PM  8        So if they didn't do that investigation long before

03:00PM  9   they started this lawsuit, that's on them.  Right?

03:00PM  10        THE COURT:  Well, I mean, yes and no.  I mean, that

03:00PM  11   doesn't mean that they should be precluded now because of

03:00PM  12   another case that may call into question their authority to do

03:00PM  13   what they're doing.  I mean, that doesn't mean, you know, I --

03:00PM  14   I -- I -- they didn't know that this was going to happen.

03:00PM  15   They had no way of knowing that there was going to be a motion

03:00PM  16   to stay.  And it's kind of unfair, I think, to say to a

03:00PM  17   litigator, well, you should have done this three years ago,

03:00PM  18   and you didn't do it three years ago, so you can't do it now.

03:00PM  19   Well, I thought I was gonna be able to do it now, I didn't

03:00PM  20   think I was gonna need to do it three years ago.

03:00PM  21        MR. LITTLE:  Fair, Judge.  Fair.

03:00PM  22        But I guess the point I want to make is absent -- I

03:00PM  23   mean, I guess I could say common ground, yes, we could file

03:00PM  24   answers.  But otherwise, if Your Honor recalls, as part of our

03:00PM  25   motion to dismiss there was no specific factual allegations in

03:01PM 1    the complaint, saying some consumers got these calls, they

03:01PM 2    didn't identify the third-party debt collectors.  I can't in

03:01PM 3    good conscience and be a good lawyer allow my clients to sit

03:01PM 4    for depositions when I don't even have the factual basis for

03:01PM 5    the lawsuit.

03:01PM 6          So I have to go and conduct the $100,000 worth of

03:01PM 7    discovery from the Bureau to get those recordings, to

03:01PM 8    understand who these consumers are that have these harms.

03:01PM 9          I don't have any factual basis to say, okay, this

03:01PM 10   consumer was called by this collection agency on this date,

03:01PM 11   and this is what was said or was not said.

03:01PM 12         I need all that information in advance so I can

03:01PM 13   prepare my clients and have them set down for depositions.  So

03:01PM 14   I can't say oh, we can do one deposition of the defendant, or

03:01PM 15   two depositions of the defendant.  I don't have any of the

03:01PM 16   discovery.

03:01PM 17         And so I would have to go spend, you know, tens if

03:01PM 18   not hundreds of thousands of dollars, and we're gonna get a

03:01PM 19   lot of data coming back, and there's gonna be a lot of

03:01PM 20   discovery costs coming here with third-party vendors in

03:01PM 21   processing all of this, and so I have an extreme cost.  I

03:01PM 22   can't in good conscience let my client sit for a deposition

03:02PM 23   without seeing the evidence that's against us.  So --

03:02PM 24         THE COURT:  So you're saying -- you're saying --

03:02PM 25   you're saying that even if there were no stay, the depositions

CFPB v Craig Manseth - Oral Argument - 10/12/23

19

03:02PM    1    are still a ways off because you need lots of documents and

03:02PM    2    lots of prep before those depositions can go forward?

03:02PM    3          MR. LITTLE:  Absolutely, Judge.

03:02PM    4          THE COURT:  Ms. Brenowitz, Ms. Garlock, why isn't he

03:02PM    5    right about that?

03:02PM    6          MS. BRENOWITZ:  Your Honor, the documents and the

03:02PM    7    recordings that Mr. Little's referring to in this case, mostly

03:02PM    8    have come from the defendants.  All of the recordings of

03:02PM    9    consumer phone calls have come from the defendants.  They have

03:02PM   10    had them, they have much better access and organization to be

03:02PM   11    able to listen to those calls.

03:02PM   12          We've had to painstakingly piece together which call

03:02PM   13    belongs to which consumer, belongs to which paper documents.

03:02PM   14    So they have access to that, they've always had access to

03:02PM   15    that.  We'd be more than happy to provide everything to them

03:03PM   16    again, but the documents in this case are mostly from

03:03PM   17    defendants.

03:03PM   18          And that is part of the reason why we would like to

03:03PM   19    proceed with third-party discovery as well.  And we're more

03:03PM   20    than happy to provide that to the defendants but, again, most

03:03PM   21    of the evidence in this case has come from the documents that

03:03PM   22    defendants have provided to us of their limited supervision of

03:03PM   23    the debt collection agencies, of what the debt collection

03:03PM   24    agencies have provided to them over the years.  And so they

03:03PM   25    have all -- all the same arguments run to what they could have

03:03PM  1   been doing with that information over the last several years.

03:03PM  2           Plus, there is the information that we couldn't have

03:03PM  3   obtained, haven't obtained, ongoing harm, the current

03:03PM  4   corporation that we barely knew about at the time of that

03:04PM  5   investigation, and all of that information that we had no

03:04PM  6   ability to obtain prior to the beginning of this lawsuit.

03:04PM  7           THE COURT:  So --

03:04PM  8           MS. BRENOWITZ:  And --

03:04PM  9           THE COURT:  -- here's what I'd like to do.  First of

03:04PM  10  all, I'm going to extend the defendant's time to answer or do

03:04PM  11  what they need to do with respect to responding to the

03:04PM  12  complaint.

03:04PM  13          Mr. Little, 30 days?  Is that -- is that reasonable

03:04PM  14  for that?

03:04PM  15          MR. LITTLE:  It is, Judge.

03:04PM  16          THE COURT:  Okay.  So, 30 days for the defendants to

03:04PM  17  answer.

03:04PM  18          And then I want both sides to submit to me a

03:04PM  19  proposal.  And the proposal can be, you know, Mr. Little you

03:04PM  20  can say, look it, Judge, we just think that any discovery

03:04PM  21  taking place right now is harmful to us and we don't want to

03:04PM  22  do any.

03:04PM  23          I'm not saying I'm going to decide the stay in the

03:04PM  24  way that I'm suggesting that I'm thinking about deciding it, I

03:04PM  25  may deny it altogether, I may grant it altogether.  I want

03:05PM    1    to -- I want to think about it some more, but I would like the

03:05PM    2    benefit of proposals from both sides as to what might be

03:05PM    3    palatable to them.  So, you know, more or less a discovery

03:05PM    4    schedule between now and, let's say, next June, since I think

03:05PM    5    we're probably going to have a decision by then.

03:05PM    6            So, let's say a discovery schedule between now and

03:05PM    7    next June that -- that you can live with.  And if the two

03:05PM    8    sides want to talk about it and submit one proposal that I

03:05PM    9    don't have to break a tie on, I'm happy to, you know, I'd love

03:05PM   10    that.  But I think that that's probably unlikely.  So you can

03:05PM   11    each submit something to me, and I, as I say, I will do

03:05PM   12    something in -- I'm not going to stay the time to answer.  The

03:05PM   13    answer is due now 30 days.  But I will give some thought and,

03:05PM   14    you know, make some decision with respect to somewhere on the

03:06PM   15    spectrum from complete stay to no stay, something -- and

03:06PM   16    there's lots of things in between.  And I'll give some thought

03:06PM   17    to that.

03:06PM   18            Is that fair enough?  Does that sound like a -- does

03:06PM   19    everybody understand what I'm saying, first of all?

03:06PM   20            MS. BRENOWITZ:  Yes, Your Honor.

03:06PM   21            THE COURT:  Mr. Little?

03:06PM   22            MR. LITTLE:  Yes.

03:06PM   23            THE COURT:  Okay.  And does that -- anybody have a

03:06PM   24    strong objection to proceeding that way?

03:06PM   25            And let me know, folks.  I second guess myself all

CFPB v Craig Manseth - Oral Argument - 10/12/23

22

03:06PM    1    the time, so if you folks disagree with it, tell me.

03:06PM    2            MR. LITTLE:  No, Judge, I'm happy to try to confer

03:06PM    3    with the Bureau, just give us some common ground, and if not

03:06PM    4    we'll submit our own proposal.

03:06PM    5            THE COURT:  Great.

03:06PM    6            MR. LITTLE:  And we'll cross that bridge when we get

03:06PM    7    there.

03:06PM    8            THE COURT:  What do you think, Ms. Garlock, what do

03:06PM    9    you think is a reasonable time to allow you folks to talk and

03:06PM   10    then to submit a plan?

03:06PM   11            MS. GARLOCK:  Off the top of my head, 14 days?  You

03:06PM   12    know, if Your Honor wants it sooner we, of course, can talk

03:06PM   13    more quickly.

03:06PM   14            THE COURT:  No, I think 14 days sounds reasonable to

03:07PM   15    me.  Mr. Little, does that sound reasonable to you?

03:07PM   16            MR. LITTLE:  It does, Judge.

03:07PM   17            THE COURT:  Okay.  So 14 days for that.  So 14 days

03:07PM   18    from today -- let's say from tomorrow.  So let's say the 27th,

03:07PM   19    since that's a Friday for that.

03:07PM   20            And then let's say -- what's 30 days from today?

03:07PM   21    It's probably a Saturday, I think, because today is a

03:07PM   22    Thursday, right?

03:07PM   23            THE CLERK:  Yes, Judge.

03:07PM   24            THE COURT:  So what's the following Monday?

03:07PM   25            THE CLERK:  It's the 13th of November.

CFPB v Craig Manseth - Oral Argument - 10/12/23

23

03:07PM   1         THE COURT:  Okay.  So, the 13th of November.  That's

03:07PM   2   not a holiday, is it?  Or is it?

03:07PM   3         THE CLERK:  No.  No, Friday is.  The 10th.

03:07PM   4         THE COURT:  Okay.  The 13th of November for either a

03:07PM   5   joint submission or dueling submissions.  Okay?  And I'll

03:07PM   6   reserve the decision.

03:07PM   7         Anything else anybody wants to say to me before we

03:07PM   8   sign off today?

03:07PM   9         MR. LITTLE:  Judge, the only thing --

03:07PM  10         THE COURT:  Go ahead.  Go ahead.

03:07PM  11         MR. LITTLE:  The only thing I wanted to address in

03:07PM  12   response to the Bureau's argument with respect to the Illinois

03:07PM  13   case, the Northern District of Illinois case, there the

03:08PM  14   ongoing harm, there was a consent order in place, and so the

03:08PM  15   Court said, look, forget about the constitutionality of the

03:08PM  16   Bureau, we have a consent order in place.  And so you need to

03:08PM  17   follow the order of the Court, or you're alleged to be not

03:08PM  18   following the order of the Court.  So that's why I need to

03:08PM  19   address the ongoing harm.  So, I know Ms. Garlock has

03:08PM  20   repeatedly said that that case is somewhat similar to this

03:08PM  21   case.  There, of course, is no consent order in place, and

03:08PM  22   that is the stark difference in that case.  I just wanted to

03:08PM  23   bring that to the Court's attention.

03:08PM  24         MS. AUCHTERLONIE:  And if I may Your Honor?  I also

03:08PM  25   wanted to bring to the Court's attention the Bureau has in

03:08PM    1    fact conducted third-party discovery on a number of the

03:08PM    2    agencies who were in the past working with defendants.  And so

03:08PM    3    we are aware of both investigational hearings and significant

03:08PM    4    document requests propounded upon those third parties already.

03:08PM    5             THE COURT:  Okay.  So let me say this.  What you

03:08PM    6    folks are doing right now makes me think I -- that just

03:08PM    7    submitting the proposals two weeks from now may not give you

03:09PM    8    folks enough to submit to me, so why don't we say in addition

03:09PM    9    to the proposals, you can submit a memorandum no more than

03:09PM   10    five pages in support of why your position is the better

03:09PM   11    position.  And you can deal with things like the Illinois case

03:09PM   12    if you want to, Mr. Little, in that.  Ms. Garlock, you can say

03:09PM   13    why Mr. Little is wrong about the Illinois case and why it

03:09PM   14    really is closer factually to what we're doing here.  I'll

03:09PM   15    take whatever you guys want.  But five pages, tops.

03:09PM   16             You've done a good job of briefing it already, I

03:09PM   17    don't want reinventing the wheel, I just want why.  And,

03:09PM   18    again, I want to talk about the practicalities of this.

03:09PM   19    What's the real harm that's going to happen if we stay, if we

03:09PM   20    don't stay.  That's what I want to get to.  Okay?

03:09PM   21             MR. LITTLE:  Thank you, Judge.

03:09PM   22             THE COURT:  Okay.  Thank you, all, very much.  I look

03:09PM   23    forward to receiving, and I'll reserve decision.  Thanks.

03:09PM   24             MS. BRENOWITZ:  Thank you, Your Honor.

03:09PM   25             (Proceeding concluded at 3:09 p.m.)

1

2                         **CERTIFICATE OF REPORTER**

3

4                   In accordance with 28, U.S.C., 753(b), I

5    certify that these original notes are a true and correct

6    record of proceedings in the United States District Court for

7    the Western District of New York on October 12, 2023.

8

9

10                         s/ Ann M. Sawyer
                           Ann M. Sawyer, FCRR, RPR, CRR
11                         Official Court Reporter
                           U.S.D.C., W.D.N.Y.
12

13

14

15

16

17

18

19

20

21

22

23

24

25