UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CONSUMER FINANCIAL PROTECTION
BUREAU,

    Plaintiff,

  v.

CRAIG MANSETH, *et al.*,

    Defendants.

22-CV-29-LJV
DECISION & ORDER

---

  On January 10, 2022, the Consumer Financial Protection Bureau (the "CFPB") commenced this action under the Consumer Financial Protection Act ("CFPA") and the Fair Debt Collection Practices Act ("FDCPA") against United Debt Holding LLC; JTM Capital Management, LLC; UHG, LLC; UHG I LLC; and UHG II LLC; and three executives of those companies: Jacob Adamo, Craig Manseth, and Darren Turco.  *See* Docket Item 1 (complaint); *see also* Docket Item 16 (amended complaint).

  After this Court denied the defendants' motions to dismiss on August 22, 2023, Docket Item 60, the defendants moved for a stay pending the Supreme Court's decision in *Community Financial Services Association of America, Ltd.*[1] *v. CFPB*, 51 F.4th 616 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (Feb. 27, 2023) (Case No. 22-448), *and cert. denied sub nom. CFSA v. CFPB*, 143 S. Ct. 981 (Feb. 27, 2023), Docket Item 61. The defendants say that because that case raises an issue about whether the CFPB's

---

[1] The Court refers to Community Financial Services Association of America, Ltd., as "CFSA" throughout this decision and also uses that acronym to refer to proceedings in both the Fifth Circuit and the Supreme Court.

funding structure violates the United States Constitution's Appropriations Clause, it calls into question "whether the CFPB may prosecute the present action." Docket Item 61-1 at 5-6. The parties fully briefed the motion, *see* Docket Item 65 (CFPB's response in opposition); Docket Item 66 (defendants' reply), and on October 12, 2024, the Court held oral argument, Docket Item 72.

At oral argument, the Court asked the parties to file supplemental briefing on the stay and on possible discovery schedules for the Court to consider if it denied the motion. *See id.* Both sides did that, *see* Docket Items 74 and 74-2 (CFPB's memorandum and interim discovery plan); Docket Item 75 (defendants' memorandum), and on January 17, 2024, the CFPB filed a notice of supplemental authority alerting the Court to three recent rulings on requests for stays in CFPB actions, Docket Item 84.

The Court has considered the parties' submissions and denies the defendants' motion to stay.

## **PROCEDURAL BACKGROUND**

In its 2022 decision in *CFSA*, the Fifth Circuit held that "Congress's decision to abdicate its appropriations power under the Constitution . . . [by] ced[ing] its power of the purse to the Bureau[] violates the Constitution's structural separation of powers." *CFSA*, 51 F.4th at 623. It further found that because the "the Bureau's unconstitutional funding structure . . . literally effected the promulgation of the [Payday Lending R]ule" challenged in the litigation, that rule had to be "vacate[d] . . . as the product of the [CFPB's] unconstitutional funding scheme." *Id.* at 643 (emphasis omitted). The CFPB petitioned for certiorari, and on February 27, 2023, the Supreme Court granted that petition, *see CFSA*, 143 S. Ct. at 978. Oral argument was held on October 3, 2023. *Id.*,

2

Case No. 22-448 (Oct. 3, 2023).  A decision is expected by the end of the Court's current term this summer and may come sooner.  *See* Docket Item 61-1 at 5; Docket Item 65 at 8.

The Fifth Circuit's decision broke from the holdings of "every [other] court" that had considered the constitutionality of the CFPB's funding structure.  *CFSA*, 51 F.4th at 641 & n.15 (collecting cases); *see also CFPB v. TransUnion*, 641 F. Supp. 3d 474, 483 (N.D. Ill. 2022) (noting that "[u]ntil the Fifth Circuit's decision . . . , courts confronted with the issue had uniformly upheld the [CFPB]'s funding structure"), *motion to certify appeal denied*, 2023 WL 3602685 (N.D. Ill. May 23, 2023).  The Second Circuit has since joined the majority, "respectfully declin[ing] to follow the Fifth Circuit's decision" and upholding the CFPB's funding structure as constitutional.  *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 181-83 (2d Cir. 2023).

Nonetheless, in the wake of the petition for certiorari in *CFSA*, several courts, including some in this circuit and the Second Circuit itself, have granted motions to stay actions involving the CFPB.  *See, e.g.*, *CFPB v. L. Offs. of Crystal Moroney, P.C.*, Case No. 20-cv-3471, Docket Item 165 (2d Cir. June 28, 2023) (granting motion to stay mandate); *CFPB v. MoneyGram Int'l, Inc.*, 2022 WL 17547438, at *3 (S.D.N.Y. Dec. 9, 2022) (granting motion to stay pending Supreme Court's decision in *CFSA*); *CFPB v. Credit Acceptance Corp.*, 2023 WL 5013303, at *5 (S.D.N.Y. Aug. 7, 2023) (same); *CFPB v. Noh*, 2023 WL 4680912, at *1 (C.D. Cal. Mar. 6, 2023) (same); *CFPB v. MoneyLion Technologies Inc.*, 2023 WL 8644377 (S.D.N.Y. Dec. 1, 2023) (same).  Other courts have denied motions to stay or otherwise allowed CFPB actions to proceed over the objections of parties who have asked for delay until the decision in

3

*CFSA*.[2]  *See, e.g.*, *CFPB v. TransUnion*, 2023 WL 3605995, at *2 (N.D. Ill. Apr. 13, 2023) (denying motion to stay); *CFPB v. Freedom Mortg. Corp.*, 2024 WL 158393, at *1 (S.D. Fla. Jan. 12, 2024) (same); *Consumer Fin. Prot. Bureau v. Carnes*, 2023 WL 6143307, at *14 (D. Kan. Sept. 20, 2023) (same); *CFPB. v. Consumer Advoc. Ctr. Inc.*, 2023 WL 5162392, at *15 (C.D. Cal. July 7, 2023) (granting CFPB's motion for partial summary judgment with one exception related to requested relief over defendants' alternative request for stay pending *CFSA*); *see also id.*, Case No. 19-cv-1998, Docket Item 440, at 14 n.2 (C.D. Cal. Mar. 27, 2023).

Not surprisingly, the defendants ask this Court to follow the lead of the first group, *see* Docket Item 61-1 at 6-10, while the CFPB counsels the Court to take its cue from the second, *see* Docket Item 74 at 1-3.  The parties also disagree about whether they could engage in some limited discovery pending the Supreme Court's decision.

The CFPB says that the Court should either deny the stay "entirely" or "craft a compromise" by "permitting limited discovery."  *Id.* at 3.  Under its proposed interim discovery plan, the CFPB would conduct a four-hour deposition of each defendant; serve fifty interrogatories, one hundred requests for admission, and twenty document requests; take three third-party depositions and five depositions of consumers; and issue an unlimited number of third-party subpoenas.  Docket Item 74-2 at 2-4.  And the

---

[2] While the Court has reviewed the decisions cited by both parties, it notes that the decision of whether to stay a case is a "case-by-case determination" that turns on the particular facts and posture of the individual case.  *See Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996).

defendants collectively would be allowed twenty-five interrogatories, fifty requests for admission, and ten document requests.[3]

In contrast, the defendants argue that the "CFPB's [interim discovery] proposal undermines the entire purpose of a stay." Docket Item 75 at 5. They say that "even limited paper discovery would serve only to impose enormous discovery costs" on the defendants because, in light of "the vague nature of the CFPB's pleadings and the enormous volume of data at issue, [the] [d]efendants could not engage in discovery by halves." *Id.* Accordingly, they declined to submit a separate discovery proposal, instead repeating their request that the Court stay the case entirely. *Id.*

## **LEGAL PRINCIPLES**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). But precisely "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. In effecting that balance, district courts in the Second Circuit typically consider five factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant[s]; (3)

---

[3] The CFPB's proposed plan also provides that the parties would not be "obligated to exchange the initial disclosures required under Federal Rule of Civil Procedure 26(a)(1)" and would collectively determine "the scope of production of electronically stored information." Docket Item 74-2 at 4.

5

the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.[4]

*Nelson v. G.Skill USA, Inc.*, 2023 WL 3300408, at *4 (W.D.N.Y. May 8, 2023) (quoting *Kappel*, 914 F. Supp. at 1058); *see also Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 621 (S.D.N.Y. 2012) (same). How those considerations—known as the *Kappel* factors—are applied depends on the particular context of the case. *Nelson*, 2023 WL 3300408 at *4 ("Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." (quoting *Kappel*, 914 F. Supp. at 1058)).

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *see also Novartis Pharma AG v. Regeneron Pharms., Inc.*, 582 F. Supp. 3d 26, 46 (N.D.N.Y. 2022) ("The party seeking the stay bears the burden of demonstrating that it is entitled to one."). "That is, the proponent 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [the proponent] prays will work damage to [someone] else.'" *Homeland Ins. Co. of Delaware v. Indep. Health Ass'n, Inc.*, 2023 WL 5214697, at *3 (W.D.N.Y. Aug. 15, 2023) (quoting *Landis*, 299 U.S. at 255).

## **DISCUSSION**

The defendants argue that their motion should be granted because all five *Kappel* factors—that is, the interests of the plaintiff, the defendants, the courts, third

---

[4] This test is generally employed by district courts in this circuit, but the Second Circuit—while not disclaiming the use of such factors—has declined to grant any test its seal of approval. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99-100 (2d Cir. 2012). Instead, recognizing the broad discretion of district courts to decide motions for stays, the Second Circuit has stated that "[e]ven if we were to choose or formulate a test and apply it, we would not be able to reverse the district court solely because we disagreed with its application of the test." *Id.* at 99.

parties, and the public—support granting a stay here. *See* Docket Item 61-1 at 10-16; *see also Kappel*, 914 F. Supp. at 1058. But for the reasons explained below, the Court finds that the defendants have not met their burden to establish that a stay is warranted. *See Clinton*, 520 U.S. at 708. And that is especially so because—as the Court indicated at oral argument, *see* Docket Items 72 and 73—discovery may be limited in the interim so as to serve the CFPB's interest in proceeding expeditiously while minimizing the burden on defendants and third parties. *See Kappel*, 914 F. Supp. at 1058.

I. **CONSIDERATION OF THE *KAPPEL* FACTORS**

   A. **Plaintiff's Interests**

The Court first considers the interests "of the [CFPB] in proceeding expeditiously with the civil litigation as balanced against the prejudice to the [CFPB] if delayed." *Kappel*, 914 F. Supp. at 1058. The defendants argue that the CFPB has little if any interest in "proceeding expeditiously" with this litigation because it—like "[a]ll parties" here—has "an interest in determining the extent and authority of the CFPB to bring this action." Docket Item 61-1 at 11. And they say that the CFPB will not be prejudiced by the delay. *Id.* at 12.

The defendants have not shown that this factor favors granting a stay here. As other courts have recognized, the CFPB has an interest in its ability to enforce consumer protection laws expeditiously and efficiently—an interest that may be prejudiced by a stay. *See TransUnion*, 2023 WL 3605995, at *2 (finding that the CFPB had "persuasively argue[d] . . . that a stay would unduly prejudice its ability to safeguard the public interest"); *Freedom Mortg. Corp.*, 2024 WL 158393, at *1 (stating that the

CFPB is "[f]or now . . . a valid agency that is entitled to enforce the consumer finance laws"); *MoneyGram*, 2022 WL 17547438, at *3 (granting defendants' request for stay pending *CFSA* but nonetheless recognizing that both the CFPB and the public "undoubtedly have an interest in moving [the] case forward"); *MoneyLion*, 2023 WL 8644377, at *2 (finding that "both the CFPB and the public certainly have a legitimate interest in this case proceeding at an appropriate pace" but that "under the facts presented . . . a stay would not unduly prejudice the CFPB's interests"). Whatever the Supreme Court eventually may hold, the CFPB's funding structure clearly is constitutional under *current* Second Circuit precedent. *See L. Offs. of Crystal Moroney*, 63 F.4th at 183. And so the agency retains an interest in enforcing the law.[5] *See Freedom Mortg. Corp.*, 2024 WL 158393, at *1.

Moreover, the CFPB persuasively argues that its interest would be prejudiced by a delay here because a stay would "halt[] this case on the eve of discovery," allowing

---

[5] The defendants argue that any interest the CFPB has in enforcing the consumer protection laws is necessarily subsumed by its greater interest in determining whether it has the authority to enforce those laws at all. Docket Item 61-1 at 7-8. But the agency has that authority under the current law in this circuit. *See L. Offs. of Crystal Moroney*, 63 F.4th at 183.

Moreover, while it is true that the Supreme Court's decision in *CFSA* might implicate the agency's ability to prosecute this case, it also might not—even if the Supreme Court finds that the agency's funding structure violates the Appropriations Clause. That is because *CFSA* concerns the CFPB's power to promulgate a specific rule, not necessarily its ability to bring—or to have brought—enforcement actions more broadly. *See CFSA*, 51 F.4th at 635-644. Indeed, in their brief before the Supreme Court, CFSA and its co-respondents themselves argue that a decision in their favor would not automatically invalidate all of the CFPB's actions. *See* Brief for Respondents at 49-50, *CFSA*, Case No. 22-448, 2023 WL 4400760 (July 3, 2023). And while the defendants argue that the CFPB has "conceded" that "if the Supreme Court agrees with the Fifth Circuit, dismissal is required," Docket Item 61-1 at 11 (citing statement that the Fifth Circuit's reasoning "threatens the validity of all past CFPB actions" (quoting Brief for Petitioners at 2, *CFSA*, Case No. 22-448, 2023 WL 3385418 (May 8, 2023)), the CFPB disputes that contention, Docket Item 65 at 8.

memories to fade and risking the loss of evidence.  Docket Item 65 at 6.  The agency says that the potential loss of evidence is "a particular concern here" because—as alleged in the amended complaint—the defendants have a history of "changing names and corporate forms to obscure their identities."  *Id.*; *see also* Docket Item 16.  So, the CFPB argues, "[t]he more time passes, the more opportunity [the d]efendants and relevant third parties will have to shut down operations or change the name(s) under which they operate, making it more difficult to track down and serve the appropriate corporate entities and to ensure they have retained relevant documents and information."  Docket Item 65 at 6.

The defendants argue that because the Supreme Court is expected to decide *CFSA* by this summer—if not sooner—any prejudice caused by the delay will be minimal.  Docket Item 61-1 at 12.  And they say that the CFPB's insistence that "a stay would impact the quality of evidence available" is meritless because (1) the defendants already "made voluminous productions of data" during the CFPB's enforcement investigation; (2) the defendants still will have an "obligation[] to preserve potentially relevant documents"; and (3) any suggestion that a stay will allow the defendants to hide or destroy evidence is "both unsupported and speculative."  Docket Item 66 at 8-9.

The potentially limited delay and the preservation obligations of the parties may indeed limit the harm imposed by a stay.  Nonetheless, in light of the CFPB's interest in enforcing the consumer protection laws—and, in particular, the concerns that it raises about the loss of evidence—the Court finds that the interests of the plaintiff weigh against staying this case.

### B. Interests of the Defendants

The Court next considers "the private interests of and burden on the defendants." *Kappel*, 914 F. Supp. at 1058. The defendants argue that "a stay of proceedings will prevent [them] from being forced to participate in costly litigation" that will be rendered pointless "if the Supreme Court agrees with the Fifth Circuit." Docket Item 61-1 at 12-13 (noting that in that event, "all litigation [will] have been wasted"). They further argue that "[d]ue to the vague and high-level allegations in the [a]mended [c]omplaint, [they] lack knowledge as to the specific conduct and identities of the [c]ollectors that the CFPB bases its conclusory claims upon." Docket Item 75 at 1-2. And so, the defendants say, "to meaningfully participate in *any* discovery, [they] would be required to serve extensive paper discovery as well as review and analyze hundreds of thousands of pages of documents and recordings of telephone calls just to speculate [on] what the CFPB may use to support its conclusions." *Id.* at 2 (bolding omitted).

The defendants' interest in "avoid[ing] unnecessary litigation costs" is certainly an important factor that weighs in favor of a stay here. *See Credit Acceptance Corp.*, 2023 WL 5013303, at *3; *see also Readick v Avis Budget Grp., Inc.*, 2014 WL 1683799, at *5 (S.D.N.Y. Apr. 28, 2014) (noting defendants' interest in avoiding "potentially duplicative and costly discovery" when resolution of another case might "dispose[] of some or all of [the] claims [at issue]"). But this Court is skeptical of the defendants' claim that *any* discovery would be unduly burdensome. *See* Docket Item 75 at 1-2.

As just noted, the defendants base that argument largely on their assertion that the CFPB's claims are "conclusory" and do not provide the defendants with sufficient notice. *Id.* But that issue was addressed at the motion to dismiss stage, when this Court rejected the defendants' arguments that the CFPB's amended complaint "[did] not

10

adequately allege[] any underlying violations or demonstrate[] how any defendant could be liable for the debt collectors' conduct." Docket Item 60 at 21. Contrary to the defendants' argument in support of a stay, this Court found that the amended complaint had "adequately alleged" that the defendants violated the CFPA and FDCPA. *Id.* at 49; *see also id.* at 21-49. And the Court declines to revisit that finding here.

So while the defendants clearly have an interest in avoiding unnecessary litigation costs—and that interest weighs in favor of a stay—they have not shown that any discovery before *CFSA* is decided would be unduly burdensome.

### C.     Interests of the Courts

Third, the Court weighs "the interests of the courts." *Kappel,* 914 F. Supp. at 1058.

The defendants argue that a stay here would serve those interests by "promoting judicial efficiency and minimizing the possibility of conflicts between different courts." Docket Item 61-1 at 14 (citation and internal quotation marks omitted). And they argue that "[i]t is well established that [c]ourts in the Second Circuit will stay a proceeding when issues tending to impact the case are being considered by a higher court." *Id.*

It is true that "a court may . . . properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action." *Sikhs for Just.*, 893 F. Supp. 2d at 622. That is especially so when "that decision may not settle every question of fact and law before th[e] [c]ourt, but in all likelihood it will settle many and simplify them all." *Id.* (citation and internal quotation marks omitted). And at least three courts in this circuit have found that judicial interests were served by staying cases brought by the CFPB pending a decision in *CFSA*. *See MoneyGram*, 2022 WL

11

17547438, at *2; *Credit Acceptance Corp.*, 2023 WL 5013303, at *3; *MoneyLion*, 2023 WL 8644377, at *4.

But a court also has a "well-recognized interest in disposing 'of the causes on its docket with economy of time and effort for itself.'" *Louis Vuitton Malletier*, 676 F.3d at 104 (quoting *Landis*, 299 U.S. at 254); *see also id.* (finding that district court "had reason to proceed forthwith based on [that] interest" and concluding that the court "did not abuse its discretion in denying the stay"). Moreover, in the three cases cited above, the courts issued stays rather than decide pending motions to dismiss that argued—among other things—that the CFPB's funding structure was unconstitutional. *See Moneygram*, 2022 WL 17547438, at *2 (holding "that the interests of the courts and judicial efficiency would be served by staying a decision on the motion to dismiss"); *see also id.*, Case No. 22-cv-3256, Docket Items 30 and 31 (S.D.N.Y. Aug. 4, 2022) (motion to dismiss and supporting memorandum raising Appropriations Clause argument); *Credit Acceptance Corp.*, 2023 WL 5013303, at *3 (noting that "[i]f the Court denied [the] request for a stay and adjudicated the pending motion to dismiss, it would need to decide [the d]efendant's constitutional challenge to the CFPB's authority to pass and enforce the laws directly implicated by the three federal claims in th[e] case"); *MoneyLion*, 2023 WL 8644377, at *3 (stating that "[w]ith a decision from the Supreme Court expected in relatively short order, and mindful of the binding effect that decision will have on this Court, it would be inefficient to decide the pending motion to dismiss" that raised an argument that the CFPB's funding structure was unconstitutional).

Here, in contrast, this Court already has addressed—and denied—the defendants' motions to dismiss, which, as the CFPB observes, did not argue that the

12

agency's funding structure was unconstitutional. Docket Item 65 at 11-12; *see also* Docket Items 30-1 and 31-1 (memoranda in support of motions to dismiss). In fact, after the CFPB petitioned the Supreme Court for certiorari in *CFSA*, the defendants filed a letter arguing that the petition did not require a stay of this case. *See* Docket Item 47 at 3. And while the defendants did include the possible unconstitutionality of the CFPB as an affirmative defense in their respective answers, *see* Docket Item 76 at 30; Docket Item 77 at 28; Docket Item 78 at 25; Docket Item 79 at 26; Docket Item 80 at 25; Docket Item 81 at 24; Docket 82 at 24; Docket Item 83 at 24, that does not require staying the entire case at this stage.

Finally, as this Court has already explained, *see supra* at 8 n.5, it is not clear that the Supreme Court's decision will necessarily "settle" or "simplify" the issues in this case, even if the Court affirms the Fifth Circuit, *see Sikhs for Just.*, 893 F. Supp. 2d at 622; *see also Freedom Mortg. Corp.*, 2024 WL 158393, at *1 (finding that the moving party had "not demonstrated that an adverse ruling regarding the funding structure will necessarily result in a dismissal of th[at] case" and denying motion for stay).[6]

For all those reasons, the defendants have not shown that the judicial interest weighs in favor of a stay here.

---

[6] In *MoneyGram*, the court stated that "[t]he instant case . . . may dramatically change if the Supreme Court affirms the Fifth Circuit's decision, as CFPB rules and regulations are integral to nearly all of [the CFPB's] claims." *MoneyGram*, 2022 WL 17547438, at *2. But this case, unlike that one, involves assertions that the defendants violated two statutes—the CFPA and the FDCPA—not any CFPB-promulgated rules and regulations. *See* Docket Item 16.

### D.     Interests of Third Parties and the Public

Finally, the Court considers "the interests of persons not parties to [this case]" and "the public interest."[7]  *Kappel*, 914 F. Supp. at 1058.

The defendants argue that those interests weigh in favor of a stay because pausing the proceedings would save "any third parties who might be impacted" from the burden of litigation costs, "including . . . [those stemming from] unnecessary or inefficient discovery."  Docket Item 61-1 at 14-15 (citation and internal quotation marks omitted).  And they argue that the public also "would be served by restricting the CFPB's power during the pendency of the *CFSA* decision" because "[a]s noted in the amici briefs in support of [CFSA's position], the CFPB's aggressive tactics are a concern for states and financial institutions."  *Id.* at 15.

This Court finds that the interests of some third parties in avoiding ultimately unnecessary litigation costs may weigh in support of a stay here.  But because the defendants do not elaborate upon what kinds of costs might be incurred by which third parties, *see id.* at 14-15, it is not inclined to find that factor dispositive here, especially when discovery can be limited to contain those potential costs.

Because the plaintiff here is the CFPB—a government agency—consideration of the public interest "overlap[s] significantly" with that of the plaintiff's interest.  *See MoneyLion*, 2023 WL 8644377, at *2.  And as this Court explained above, the CFPB is, at present, a valid agency tasked with the enforcement of the nation's consumer protection laws.  *See supra* at 7-8; *see also Freedom Mortg. Corp.*, 2024 WL 158393, at *1.  And as another court has noted, "[a]s a general matter, the public has a strong

---

[7] Both sides' briefs considered the last two *Kappel* factors together.  Docket Item 61-1 at 14-16; Docket Item 65 at 12-15.  This Court does the same.

14

interest in the vigorous enforcement of consumer protection laws." *TransUnion*, 2023 WL 3605995, at *2 (citation and internal quotation marks omitted).  That some amici in *CFSA* regard the agency as overly aggressive is not enough to establish that preventing the CFPB from enforcing consumer protection laws is in the public interest.

Accordingly, the Court finds that the defendants have not met their burden to show that the public interest weighs in favor of a stay here.

### E.     Whether a Stay is Warranted Here

As the party moving for a stay, the defendants "bear[] the burden of establishing its need."  *Clinton*, 520 U.S. at 708.  The defendants have not met that burden here.  Instead, the Court finds that while one consideration—the interests of the defendants in avoiding unnecessary litigation costs—weighs in favor of granting a stay, several others counsel against it.

The Court believes that the interests of both sides are best served by less drastic means—namely, by allowing limited discovery until *CFSA* is decided.  *See Degen v. United States*, 517 U.S. 820, 826 (1996) (noting that district courts have "authority to manage discovery in a civil suit"); *SEC v. Ahmed*, 72 F.4th 379, 394 (2d Cir. 2023) (characterizing that authority as "broad"); *see also* Fed. R. Civ. P. 26(c).  The Court finds that such a measure is appropriate here until the Supreme Court decides *CFSA* and accordingly declines to exercise its discretion to stay the case.

The parties need not engage in the somewhat robust discovery proposed by the CFPB's interim discovery plan.  *See* Docket Item 74-2.  But given the interests weighing against granting a stay in this case, some meaningful discovery should proceed.  The Court leaves the scope of that discovery to the magistrate judge assigned below.

**CONCLUSION**

For the reasons explained above, the defendants' motion for a stay is DENIED.

Pursuant to 28 U.S.C. § 636(b)(1)(A), all pre-trial matters in this case are referred to United States Magistrate Judge H. Kenneth Schroeder, Jr., including but not limited to: (1) conducting a scheduling conference and entering a scheduling order under Fed. R. Civ. P. 16, (2) hearing and deciding all non-dispositive motions or applications, (3) supervising discovery, and (4) supervising all procedural matters involving the above or involving the preparation of the case or any matter connected with the case for consideration by this Court. Judge Schroeder shall not hear and report upon dispositive motions for the consideration of this Court under 28 U.S.C. § 636(b)(1)(B) and (C) unless further ordered by this Court.[8]

The parties shall file a status report with Judge Schroeder within 14 days of the Supreme Court's decision in *CFSA* addressing how, if at all, that decision impacts further proceedings in this case.

---

[8] All motions or applications shall be filed with the Clerk and made returnable before Judge Schroeder. The parties are encouraged to consider the provisions of 28 U.S.C. § 636(c) governing consent to either partial or complete disposition of the case, including trial if necessary, by Judge Schroeder. Consent forms are available from the office of the Magistrate Judge or the office of the Clerk of Court.

SO ORDERED.

Dated:   February 26, 2024
         Buffalo, New York


                                             */s/ Lawrence J. Vilardo*
                                             LAWRENCE J. VILARDO
                                             UNITED STATES DISTRICT JUDGE